UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SABLE NETWORKS, INC.** AND **SABLE IP, LLC,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**RIVERBED TECHNOLOGY, INC.,**<br><br>*Defendant.* | Civil Action No. 6:21-cv-00175-ADA<br><br>**JURY TRIAL DEMANDED** |
| **SABLE NETWORKS, INC.** AND **SABLE IP, LLC,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CLOUDFLARE, INC.,**<br><br>*Defendant.* | Civil Action No. 6:21-cv-00261-ADA<br><br>**JURY TRIAL DEMANDED** |

### JOINT MOTION FOR ENTRY OF SCHEDULING ORDER

Plaintiffs Sable Networks, Inc. and Sable IP, LLC (collectively, "Sable" or "Plaintiffs") and defendants Riverbed Technology, Inc. ("Riverbed") and Cloudflare, Inc. ("Cloudflare") (Riverbed and Cloudflare, collectively, "Defendants") hereby submit this Joint Motion for Entry of Scheduling Order in Civil Action Nos. 6:21-cv-00175-ADA and 6:21-cv-00261-ADA. Despite best efforts over multiple meet-and-confers, substantial disputes remain.

The parties respectfully request the Court's assistance in resolving these disputes, and request entry of their respective proposed scheduling orders. A comparison of the Parties' proposed scheduling orders are attached hereto as **Exhibit A**. Plaintiffs' Proposed Scheduling

Order is attached hereto as **Exhibit B**. Defendants' Proposed Scheduling Order is attached hereto as **Exhibit C**.

### Plaintiffs' Positions

Sable respectfully requests the Court enter its Proposed Scheduling Order, which is attached as **Exhibit B** and incorporates the *Markman* Hearing and Trial dates set by this Court's June 16, 2021 Amended Standing Order and mirrors the Court's default Scheduling Order contained in this Court's Order Governing Proceedings – Patent Cases Version 3.4. Despite the fact that (1) this case is no more complex than those that routinely proceed in this Court on the Court's default schedule, and (2) Plaintiffs—at Defendants' request—have agreed to reduce the number of asserted claims to 45 claims before claim construction exchanges begin, Defendants request radical departures from the Court's default Schedule, which the Court Ordered the Parties to incorporate into the Proposed Scheduling Order. No good cause exists for Defendants' request to deviate from the Court's default Scheduling Order.

### A. Defendants' Requested Scheduling Extensions Are Designed To Gain An Unfair Tactical Advantage In Co-Pending *Inter Partes* Review Proceedings

Defendant Cloudflare has filed four *Inter Partes* Review ("IPR") Petitions—one for each of the four patents-in-suit asserted against Cloudflare—with the USPTO's Patent Trial and Appeal Board (PTAB). In those IPR Petitions, Cloudflare relies on the fact the Court had not yet set a trial date at the time the Petitions were filed in an effort to avoid discretionary denial of its petition under 35 U.S.C. § 314(a) and the PTAB's precedential decision in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (designated precedential May 5, 2020).[1]

---

[1] *See Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-00909, Paper 1 at 77 (PTAB May 7, 2021) (arguing against discretionary denial of the *Inter Partes* Review Petition "because no trial date has been scheduled in [the instant case]"); *Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-00969, Paper 1 at 70 (PTAB May 21, 2021) (same); *Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-01005, Paper 1 at 79 (PTAB May 28, 2021) (same);

Under the PTAB's *Apple v. Fintiv* decision, the PTAB can deny institution based on the "proximity of the court's trial date to the Board's projected statutory deadline for a final written decision." IPR2020-00019, Paper 11, at 6. The PTAB explained that this factor weighs against instituting the IPR if "the court's trial date is earlier than the projected statutory deadline [for the PTAB'S Final Written Decision]." *Id.* at 9. The statutory deadline for the Final Written Decision in two of Cloudflare's four IPR Petitions falls after the December 7, 2022 date the Court's default schedule provides for the trial of this action, and in one of Cloudflare's Petitions, the Final Written Decision deadline falls exactly on December 7, 2022.[2] Whether the trial date set by this Court falls before or after December 7, 2022 could potentially carry significant weight in the PTAB's decision whether or not to institute Cloudflare's IPR petitions.

Defendants' request for sweeping departures from the Court's default schedule omits any mention of the fact that the significant changes they seek to the Court's default scheduling order would significantly benefit them in a collateral proceeding. To the extent Defendants request extensions to the Court's default schedule "to gain tactical advantage" in its proceedings before the PTAB, such ulterior motive is an example of "an improper purpose." *See Fink v. Gomez*, 239

---

*Cloudflare, Inc. v. Sable Networks, Inc.*, No. IPR2021-01067, Paper 1 at 59 (PTAB June 14, 2021) (same).
[2] *Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-00969, Paper 4 (PTAB June 7, 2021) (Notice of Filing Date Accorded mailed June 7, 2021, which leads to a Final Written Decision deadline of December 7, 2022);*Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-01005, Paper 4 (PTAB June 16, 2021) (Notice of Filing Date Accorded mailed on June 16, 2021, which leads to a Final Written Decision deadline of December 16, 2021); *Cloudflare, Inc. v. Sable Networks, Inc.*, No. IPR2021-01067, Paper 3 (PTAB June 23, 2021) (Notice of Filing Date Accorded mailed on June 23, 2021, which leads to a Final Written Decision deadline of December 23, 2021). The Final Written Decision deadlines were calculated by adding 18 months to the mail date of the Notice of Filing Date Accorded in each IPR Petition. The Patent Owner has three months after the mailing date of the Notice of Filing Date Accorded in which to file a Preliminary Response. 37 C.F.R. § 42.107. The PTAB then has three months to issue an institution decision. 35 U.S.C. § 314(b). If instituted, the PTAB then has 12 months to issue its Final Written Decision. 35 U.S.C. § 316(a)(11).

F.3d 989, 994 (9th Cir. 2001). At a minimum, Defendants' improper purpose highlights the lack of good cause to deviate from the Court's default schedule.

### B. Defendants Cannot Show Good Cause To Deviate From The Court's Default Schedule

"Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge.' The good cause standard requires the 'party seeking relief to show that the deadline cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters. v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting Fed. R. Civ. P. 16(b), 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)).

Here, the Court entered its Amended Standing Order Regarding Notice of Readiness for Patent cases on June 16, 2021. Case No. 6:21-cv-00175, Dkt. 14; Case No. 6:21-cv-00261, Dkt. 21. That Order stated that "In all cases, the *Markman* hearing shall be initially scheduled for twenty-three (23) weeks after the CMC and should be included in the parties' proposed Scheduling Order in accordance with the Court's Order Governing Proceedings." *Id.* at 2 (emphasis added). Accordingly, Defendants must show "good cause" as to why the Court should deviate from the schedule it Ordered the Parties to submit—*i.e.*, the Court's default schedule "in accordance with the Court's Order Governing Proceedings." *Id.*

Defendants request significant departures from the Court's default schedule. *First*, Defendants seek 15 weeks from the CMC—***more than double*** the Court's default—to prepare invalidity contentions. *Second*, Defendants seek a ***further*** four week extension to the Court's default for the *Markman* Hearing. So, before fact discovery even opens, ***Defendants are proposing the Court extend its default schedule by nearly five months***. Defendants do not (and cannot) show good cause for the lengthy extensions they seek to the Court's default schedule.

4

### 1. This case is no more complex than those routinely governed by the Court's default schedule.

After meeting and conferring with Defendants, Sable has agreed to reduce the number of asserted claims to 45 before the *Markman* process begins in each of these cases. This Court has already entered scheduling orders that incorporate the Court's default schedule with this exact process in previous cases brought by Plaintiffs involving nearly identical sets of patents. *See Sable Networks, Inc., et al. v. Juniper Networks, Inc.*, No. 6:20-cv-524-ADA, Dkt. 54 (W.D. Tex.).

Further, pursuant to the Court's guidance, Sable's agreed-to reduction in asserted claims confirms that no deviation from the Court's default schedule is necessary. *See May 2020: Scheduling for large number of asserted claims*, JUDGE ALBRIGHT PATENT FAQ, *available at*: https://www.txwd.uscourts.gov/for-attorneys/judge-albright-courtroom-faq/ (stating that "[i]f Plaintiff asserts a large number of claims, e.g., 50-60 . . . Plaintiff can either reduce the number of claims or . . . the Court will extend the schedule to provide extra time for the parties to adequately brief and prepare for the Markman hearing."). Consistent with the Court's guidance, Sable elected to "reduce the number of claims" for claim construction to a number below the Court's example of a "large number." Defendants ignore the Court's guidance and ask the Court to force Sable to **both** reduce its number of asserted claims before claim construction **and** dramatically extend the case schedule.

This Court has entered Scheduling Orders consistent with its default schedule in cases more complicated than here, including cases involving the same patents-in-suit here. *See, e.g.*, *Sable Networks, Inc., et al. v. Cisco Sys., Inc.*, No. 6:20-cv-288-ADA, Dkt. 32 (W.D. Tex. Aug. 11, 2020) (entering Scheduling Order consistent with the Court's default schedule in a case involving 118 asserted claims from six patents-in-suit). Earlier this month, defendants in *ACQIS LLC v. ASUSTek Computer, Inc.*, No. 6:20-cv-966-ADA, Dkt. 25 (W.D. Tex. July 2, 2021), argued the

5

Court should deviate from its default schedule in part because the plaintiff was "asserting 15 patents and 129 claims against 11 consolidated Defendants (most of whom are foreign corporations located in Asia. . .)." No. 6:20-cv-966, Dkt. 25 at 5-6.  Even in *ACQIS*—a case far more complex than this one—the Court entered a Scheduling Order consistent with its default schedule.  *See* No. 6:20-cv-966, Dkt. 26 (entering a Scheduling Order that rejected Defendants' proposed departures from the Court's default schedule).

This case is not uniquely complex; there is certainly not good cause for a five-month departure from the Court's standard schedule.

### 2. Defendants attempt to mislead the Court by mischaracterizing schedules from previous Sable cases.

Defendants argue the Scheduling Orders in previous Sable cases provided for "between 24 and 29 weeks from the CMC to the *Markman* hearing (versus the 23-week default)."  What Defendants ignore is the time between filing and the *Markman* Hearing.  Defendants cite Sable's cases against Dell, Juniper, and Cisco.[3]  These earlier cases, however, predated the Court's current CRSR Related Case practice, as defined in the Court's Amended Standing Order Regarding Notice of Readiness for Patent Cases.  Defendants ignore the relevant time period before the *Markman* Hearing in those previous Sable cases—*i.e.*, the time from the filing of the case until the *Markman* Hearing.

To accept Defendants' suggestion that the relevant time is simply the delta between the Case Management Conference (CMC) and the *Markman* Hearing date assumes that the Defendants did nothing to analyze the case and prepare their defenses from the time the case was filed until the CMC.  That is clearly not the case.  Since these cases were filed, Cloudflare prepared and filed

---

[3] Defendants also cite the Case Nos. 6:20-cv-00808 (against Nokia), 6:21-cv-00190-ADA (against SonicWall), and 6:21-cv-00241 (against Forcepoint); however, each of these cases were resolved before a Scheduling Order was entered.

four IPR Petitions and Cloudflare's General Counsel prepared a lengthy blog post demonizing Sable and Sable Networks' predecessors. *See* Doug Kramer, *Project Jengo Redux: Cloudflare's Prior Art Search Bounty Returns*, THE CLOUDFLARE BLOG (April 26, 2021), *available at*: https://blog.cloudflare.com/project-jengo-redux-cloudflares-prior-art-search-bounty-returns/. Riverbed has filed a venue motion, presented a discovery dispute to the Court, and provided initial venue discovery responses.

Defendants here suggest their requested extension from the Court's default schedule is in line with the time the defendants in Sable's previous cases were afforded. As the table below shows, Defendants here seek *far more* time than the Court provided the previous defendants:

| Case | Filing Date | Scheduling Order *Markman* Date (or Requested *Markman* Date for Defendants) | Time Between Filing and *Markman* Hearing |
|---|---|---|---|
| ***Riverbed*** (current Defendant) | 02/25/2021 | 03/02/2022 | ***370 days*** |
| ***Cloudflare*** (current Defendant) | 03/15/2021 | 03/02/2022 | ***352 days*** |
| *Cisco* | 04/13/2020 | 01/14/2021 | 276 days |
| *Dell* | 06/26/2020 | 04/02/2021 | 280 days |
| *Juniper* | 06/15/2020 | 04/02/2021 | 291 days |

**3.   Defendants fail to show good cause for their requested eight-week extension of the deadline for invalidity contentions.**

Defendants claim they need 15 weeks—an additional eight weeks beyond the seven weeks provided by the Court's default schedule—to complete their invalidity contentions. Defendants do not offer any explanation as to why the Court's default schedule would prejudice Defendants' ability to provide their Disclosure of Initial Invalidity Contentions. Cloudflare's ability to file IPR Petitions on the four patents-in-suit asserted against it before the Case Management Conference undermines the legitimacy of any argument that Defendants require more than double the amount of time to prepare invalidity contentions other defendants receive as a matter of course under the Court's default schedule.

### 4. Defendants fail to show good cause for a *further* four-week extension of the *Markman* Hearing.

The Court's default schedule incorporated in the Order Governing Proceedings the Parties are Ordered to incorporate into their Proposed Scheduling Order already provides 14 weeks from the identification of proposed claim terms until the *Markman* Hearing. Defendants claim they require four additional weeks (on top of the eight additional weeks they propose adding to the time to serve invalidity contentions) because they claim they require that additional time to "properly consider, confer, and attempt to narrow and brief claim-construction issues" in this case. Defendants fail to establish any no good cause to deviate from the Court's default schedule.

This case is no more complex than the patent cases routinely before this Court on the Court's default schedule. Cloudflare's statements to the PTAB completely contradict its suggestion to this Court that 18 (instead of 14) weeks will be required to "properly consider, confer, and attempt to narrow" the claim construction issues. According to Cloudflare, the claim construction issues in this case are minimal. *See Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-00909, Paper 1 at 11-12 (PTAB May 7, 2021) (arguing that there are only two structures corresponding to the "numerous means-plus function limitations" and that "[t]he remaining terms of the '593 Patent . . . should be given their plain and ordinary meaning under *Phillips*."); *Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-00969, Paper 1 at 7 (PTAB May 21, 2021) ("[A]ll claim terms should be understood based on their plain and ordinary meaning . . . . under the *Phillips* standard."); *Cloudflare, Inc., et al. v. Sable Networks, Inc.*, No. IPR2021-01005, Paper 1 at 5-6 (PTAB May 28, 2021) ("[A]ll claim terms should be understood based on their plain and ordinary meaning . . . under the *Phillips* standard."); *Cloudflare, Inc. v. Sable Networks, Inc.*, No. IPR2021-01067, Paper 1 at 9-11 (PTAB June 14, 2021) (proposing constructions for only two claim terms, and arguing that other than those two terms, Cloudflare

8

"believes that no express constructions of claim terms are necessary . . . .").

Cloudflare argues to the PTAB that the *Markman* issues in this case are few and simple while simultaneously arguing to this Court that it requires an additional month (beyond the default schedule's 14 weeks) to "consider, confer, and attempt to narrow" the issues. Cloudflare's statements are contradictory. Defendants do not offer any explanation (let alone one satisfying the good cause standard) as to why the issues in this case warrant an additional month to complete the claim construction process.

Plaintiffs respectfully request that the Court enter the Scheduling Order attached hereto as **Exhibit B**, which is consistent with the Court's default schedule contained in its Order Governing Proceedings.

**Defendants' Positions**

In these related cases, Sable currently asserts 121 total patent claims from six distinct patents.[4] Sable has refused to narrow the asserted claims prior to the deadline for service of Defendants' preliminary invalidity contentions. As such, Defendants respectfully ask the Court for a 12-week extension of early case deadlines, including the deadline for Defendants' preliminary invalidity contentions and the *Markman* hearing, to account for the large number of asserted claims and the complexity of these related cases.[5]

First, Defendants ask that the Court **extend the deadline for preliminary invalidity contentions and technical document production by 8 weeks** over the default deadline to allow

---

[4] Sable currently asserts 118 claims from five patents against Riverbed, and 98 claims from four patents against Cloudflare. Three patents and 95 claims are overlapping (i.e., are asserted in both cases).

[5] Per the Court's Amended Standing Order Regarding Notice of Readiness for Patent Cases dated June 16, 2021 (*e.g.*, No. 21-261, ECF No. 21), Defendants understand that the Court intends to coordinate these related cases on the same schedule with a single *Markman* hearing, and accordingly have proposed a coordinated schedule.

Defendants sufficient time to research and respond to the 121 asserted patent claims identified for the first time only recently (i.e., on June 23, 2021). Defendants requested and Sable refused to reduce the number of asserted claims prior to preliminary invalidity contentions. Second, Defendants ask that the Court **extend the *Markman* hearing date by a further 4 weeks** over the default deadline, to afford the parties, once Sable has identified a reduced set of asserted claims, time to properly consider, confer, and attempt to narrow and brief claim-construction issues.[6] This additional time is needed because Sable asserts six total patents in these cases (only two of which share a common specification or the same subject matter) and will be asserting between 45 and 90 patent claims as of the *Markman* hearing (after Sable's agreed reduction to 45 claims per case). In the absence of additional time, it is unlikely that the parties will be able to appropriately narrow the issues or properly brief the issues for *Markman*, creating undue burden and inefficiency for the Court and the parties.

Although the Court's guidance and past rulings indicate that either a reduction in the number of claims or an extension of the *Markman* schedule would be appropriate based on the number of claims at issue here,[7] Sable instead asks the Court to enter its default schedule, without any adjustments for the complexity and scope of the case, *i.e.*, six distinct patents and 121 total

---

[6] Sable has agreed that it will reduce the number of asserted claims to 45 claims in each case (with Riverbed and Cloudflare each having agreed to a corresponding reduction to 68 invalidity references), with the reduction coming after the preliminary invalidity contention / technical document deadline. Depending on the extent of overlap in the two sets of 45 claims that Sable elects to retain after this reduction, Sable would be asserting between 45 and 90 claims at *Markman*.

[7] For example, the Court's Frequently Asked Questions guidance provides: "Claim Construction / May 2020: Scheduling for large number of asserted claims[.] Q. If Plaintiff asserts a large number of claims, e.g., 50-60, how might that impact the claim construction schedule? A. Plaintiff can either reduce the number of claims or, if not, then the Court will extend the schedule to provide extra time for the parties to adequately brief and prepare for the Markman hearing." https://www.txwd.uscourts.gov/for-attorneys/judge-albright-courtroom-faq/. As discussed above, Sable intends to assert between 45 and 90 claims for construction at the joint *Markman*.

claims. Sable's insistence on maintaining the tight, default schedule while at the same time greatly expanding the expected scope of the case is unreasonable and prejudices Defendants.

Sable has pointed to two baselines for an appropriate schedule—Sable's own past cases in this Court asserting the instant patents, and this Court's guidance in *Hammond Development International, Inc. v. Amazon.com, Inc.* and *Hammond Development International, Inc. v. Google LLC* (Nos. 6:19-cv-00355-ADA and 6:19-cv-00356-ADA, W.D. Tex.) (collectively, "*Hammond*"). Defendants agree that each of these baselines is a useful point of comparison, and each supports Defendants' proposal here.

In Sable's past cases on these patents in this Court,[8] where Sable has not settled before a scheduling order has been entered, Sable has agreed to and moved for schedules allowing between 24 and 29 weeks from the CMC to the *Markman* hearing (versus the 23-week default), and up to almost 9 weeks from the CMC for invalidity contentions (versus the 7-week default). Accordingly, Sable's own past cases reflect that extension of the *Markman* timeline and invalidity contentions deadline may be appropriate, despite its blanket refusal to agree to any extension of the schedule in the instant cases.

Even more pertinently, in *Hammond*, this Court considered competing scheduling proposals where the plaintiff opened the case by asserting 84 patent claims (from eight patents) and had agreed to a reduction to 60 asserted claims between invalidity contentions and *Markman*. *Hammond*, No. 6:19-cv-00355-ADA (W.D. Tex. Oct. 18, 2019) (ECF No. 40 (hearing transcript) at 6, 9, 11-12, 16-17). Notably, the Court resolved the dispute by ordering a schedule that provided for more than 31 weeks between the CMC and *Markman* hearing, and nearly 11 weeks after the

---

[8] Nos. 6:20-cv-00569-ADA (*Sable v. Dell*), 6:20-cv-524-ADA (*Sable v. Juniper*), 6:20-cv-00808-ADA (*Sable v. Nokia*), 6:20-cv-00288-ADA (*Sable v. Cisco*), 6:21-cv-00190-ADA (*Sable v. SonicWall*, currently stayed pending completion of settlement), and 6:21-cv-00241-ADA (*Sable v. Forcepoint*).

11

CMC for the defendants to provide invalidity contentions. *Id.* at 6-7 (*Markman* date), 13 (invalidity contentions deadline). *Hammond* differs from the present case because, as the Court observed, in that case the plaintiff had taken the "very rare" step of identifying all asserted claims and providing representative claim charts *together with its complaint*, such that the defendants were able to begin preparing invalidity contentions once they received the complaint (i.e., many weeks before the CMC). *Id.* at 9-10, 13-14. Even in that circumstance (not present in this case), the Court entered a schedule that provided the defendants nearly 11 weeks after the CMC to provide their preliminary invalidity contentions—four weeks more than Sable seeks to limit Defendants to in this case. *Id.* at 13 (setting Dec. 23, 2019 deadline, from Oct. 9, 2019 scheduling conference).

In this case, Sable asserts more claims than in *Hammond*—121 claims here, versus 84 claims in *Hammond*—and Sable chose here not to identify which claims it would assert from the six patents or to provide charts until one week before the CMC. The instant cases thus present a substantially *heavier* burden as to invalidity contentions than in *Hammond*. And, it appears likely Sable intends to assert more claims at *Markman* than in *Hammond* (up to 90 total claims at *Markman* here, versus 60 in *Hammond*).

Sable does not engage with Defendants' proposal. With regard to the IPRs Cloudflare has filed, Sable ignores that the IPRs do not equate to or substantially reduce the burden of preparing preliminary invalidity contentions, ignores that the IPRs do not reduce what will be presented to the Court at *Markman* (on whichever 45 to 90 claims Sable elects to retain), and ignores that IPR final written decision deadlines here fall on both sides of the trial date suggested by the Court's default timeline of 75 weeks from CMC to trial.[9]

---

[9] For example, in contrast with the IPRs, the invalidity contentions will need to cover product art as well as publications, indefiniteness and written description issues (of which there are many for these patents), and additional written art—indeed, Cloudflare has represented in each of the IPR

12

With regard to the *ACQIS v. ASUSTek* case (No. 6:20-cv-966-ADA) discussed *supra*, Sable does not accurately present the case. The Court did not "enter[] a Scheduling Order consistent with its default schedule," as Sable asserts above. The Court in that case deferred to the parties' agreement to an extension of time for preliminary invalidity contentions versus the default schedule, and also ordered a *Markman*-to-trial timeline of 59 weeks rather than 52. *ACQIS*, No. 6:20-cv-966-ADA (ECF No. 25 at 2 (joint motion), ECF No. 26 (entered schedule)). Moreover, the parties in *ACQIS* did not disagree at all on the preliminary invalidity contention deadline, but instead over the *Markman* setting and one post-*Markman* deadline. *Id.*, ECF No. 25 at 2, 9. And the parties' argument over the *Markman* date appears to have revolved around the plaintiff's assertion that the defendants "manufactured a delay to the *Markman* hearing schedule by unnecessarily drawing out the Case Readiness Status Report ('CRSR') process"—thereby pushing the CMC, *Markman*, and trial dates all back by multiple months. *Id.* at 3. Indeed, although Sable's argument above regarding *filing*-to-*Markman* timelines in Sable's past cases in this Court (such as 276 days from filing to *Markman* in *Sable v. Cisco*) is not pertinent,[10] it is perhaps a noteworthy point of comparison that in *ACQIS* (given the allegedly delayed pre-CMC schedule in that case) the Court there ordered *Markman* at 393 days after filing, rather than the defendants' request for 444 days after *Markman*—both periods longer than requested here. *Id.* at 11.

---

petitions that it will not rely on the publications asserted if the IPR is instituted. Moreover, the IPRs do not cover all the asserted claims, patents, and issues in these cases that will be addressed at *Markman*—including asserted claims with at least 16 means-plus-functions terms that will require construction if Sable does not drop them, and numerous indefiniteness issues. Defendants are also cognizant of the Court's presumed limit of 12 claim terms at *Markman* (on six patents, as here), and have asked for additional time on *Markman* in part to fit within that limitation if at all possible. (Defendants have asked, and Sable has refused, to agree to jointly petition for additional claim terms if appropriate.)

[10] Sable has not shown any relevance of the *filing*-to-CMC timelines in any of the *Sable* cases, and certainly has not shown any delay in the instant cases such as seems have been present in *ACQIS*.

Accordingly, Defendants request additional time to prepare invalidity contentions and a 4-week extension of the *Markman* timeline. Indeed, as the Court observed in *Hammond*, "32 claims is a lot of claims," No. 6:19-cv-00355-ADA (ECF No. 40 at 16)—and Sable's current assertion of *121 total claims* and request for a *Markman* on up to *90 claims* is more than a lot of claims. *See also Onstream Media Corp. v. Facebook Inc.*, No. 1:20-CV-00214-ADA (W.D. Tex. June 30, 2020) (ECF No. 34 at 5-6 (hearing transcript) ("I'm going to make sure that I adjust the schedule to make sure that the defendant has a sufficient amount of time to do everything that it needs to do in terms of invalidity contentions . . . If it's 90 claims, all those seem to kind of exponentially ramp up the amount of work that a defendant would have to do and I want to – I'm very conscious of that additional work.")).

Defendants therefore respectfully assert that, based on the number of patents (6), the number of asserted patent claims (currently 121 claims, and as many as 90 claims remaining for *Markman*), and the complexity of these related cases, an adjustment of the *Markman* hearing timeline and related deadlines as requested by Defendants would be appropriate and in the best interests of the Court and the parties.

## Conclusion

Accordingly, the parties respectfully request the Court's assistance in resolving these disputes. Plaintiffs respectfully request the Court enter the Proposed Scheduling Order attached hereto as **Exhibit B**. Defendants respectfully request the Court enter the Proposed Scheduling Order attached hereto as **Exhibit C**. For convenience, **Exhibit A** shows a comparison of the Parties' respective requests as compared to the Court's Default Scheduler pursuant to the Order Governing Proceedings.

DATED: July 14, 2021                    Respectfully submitted,

                                        /s/ Daniel P. Hipskind

                                        Dorian S. Berger (CA SB No. 264424)
                                        Daniel P. Hipskind (CA SB No. 266763)
                                        BERGER & HIPSKIND LLP
                                        9538 Brighton Way, Ste. 320
                                        Beverly Hills, CA 90210
                                        Telephone: 323-886-3430
                                        Facsimile: 323-978-5508
                                        E-mail: dsb@bergerhipskind.com
                                        E-mail: dph@bergerhipskind.com

                                        Elizabeth L. DeRieux
                                        State Bar No. 05770585
                                        CAPSHAW DERIEUX, LLP
                                        114 E. Commerce Ave.
                                        Gladewater, TX 75647
                                        Telephone: 903-845-5770
                                        E-mail: ederieux@capshawlaw.com

                                        *Attorneys for Sable Networks, Inc.
                                        and Sable IP, LLC*

<div style="margin-left:40%">

John R. Emerson
 Texas State Bar No. 24002053
 russ.emerson@haynesboone.com
Stephanie N. Sivinski
 Texas State Bar No. 24075080
 stephanie.sivinski@haynesboone.com
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

Steven Callahan
 Texas State Bar No. 24053122
 scallahan@ccrglaw.com
Christopher T. Bovenkamp
 Texas State Bar No. 24006877
 cbovenkamp@ccrglaw.com
Anthony M. Garza
 Texas State Bar No. 24050644
 agarza@ccrglaw.com
C. Luke Nelson
 Texas State Bar No. 24051107
 lnelson@ccrglaw.com
John Heuton
 jhueton@ccrglaw.com
**Charhon Callahan**
**Robson & Garza, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

<div style="margin-left:50%">

*/s/ Daniel P. Hipskind*
Daniel P. Hipskind

</div>