# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **Sable Networks, Inc. and Sable IP, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**Cloudflare, Inc.,**<br><br>**Defendant.** | **Civil Action No. 6:21-cv-00261-ADA**<br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT CLOUDFLARE, INC.'S
## <u>OPPOSED MOTION TO TRANSFER VENUE</u>

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CHRISTOPHER T. BOVENKAMP
MARTIN C. ROBSON
ANTHONY M. GARZA
C. LUKE NELSON
JOHN HEUTON

*Counsel for Defendant Cloudflare, Inc.*

September 1, 2021

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL AND FACTUAL BACKGROUND ........................................... 1

        A.      The Parties ............................................................................................... 1

        B.      Sable's Venue Allegations ....................................................................... 3

III.    LEGAL STANDARD ......................................................................................... 3

IV.     THE NDCA IS CLEARLY THE MOST
        CONVENIENT FORUM FOR THIS CASE ...................................................... 4

        A.      Sable Could Have Filed This Case In The NDCA .................................. 4

        B.      The Private-Interest Factors Clearly Favor Transfer To The NDCA ...................... 5

                1.      The NDCA Offers Easier Access To Sources Of Proof ................................. 5

                2.      The Availability Of Compulsory Process Favors Transfer To The NDCA ..... 7

                3.      Trial In The NDCA Substantially Lowers
                        The Cost Of Attendance For Willing Witnesses ........................................... 10

                4.      The Practical-Problems Factor Favors Transfer To The NDCA .................... 11

        C.      The Public-Interest Factors Favor Transfer To The NDCA .................................. 12

                1.      The Local Interests Factor Favors Transfer To The NDCA ......................... 13

                2.      The Remaining Public-Interest Factors Are Neutral ...................................... 14

        D.      Considered Together, The Private- And Public-Transfer Factors Show
                That The NDCA Is Clearly More Convenient Than The WDTX ........................ 15

V.      CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*10Tales, Inc. v. TikTok Inc.*,
    20-CV-00810, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ..................................................7

*DataQuill, Ltd. v. Apple Inc.*,
    13-CV-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ................................................14

*Datascape Ltd. v. Dell Techs., Inc.*,
    19-CV-00129, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ............................................6, 7

*In re Adobe Inc.*,
    823 F. App'x 929 (Fed. Cir. 2020) ...........................................................................................15

*In re Apple, Inc.*,
    581 Fed. App'x 886 (Fed. Cir. 2014)........................................................................................7

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020)....................................................................................5, 13, 15

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009).................................................................................................11

*In re Google Inc.*,
    2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ......................................................7, 12

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)................................................................................................13

*In re Hulu, LLC*,
    2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ................................................10, 15

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ......................................................................................4, 12, 16

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) ..............................................................................................11, 14

*In re TracFone Wireless, Inc.*,
    852 Fed. Appx. 537 (Fed. Cir. 2021).......................................................................................10

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..........................................................................................5, 15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................................4, 13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................ passim

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010).............................................................................12

*McCloud v. McLinton Energy Grp., L.L.C.*,
    14-CV-620, 2014 WL 6388417 (W.D. Tex. Nov. 14, 2014)...............................6, 7

*Mimedx Group, Inc. v. Tex. Human Biologics, Ltd.*,
    14-CV-464, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014)...................10, 12, 16

*Moskowitz Family LLC. v. Globus Med., Inc.*,
    19-CV-00672, 2020 WL 4577710 (W.D. Tex. July 2, 2020)...............................10

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    19-CV-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020).............................15

*Raz Imps., Inc. v. Luminara Worldwide, LLC*,
    15-CV-02223, 2015 WL 6692107 (N.D. Tex. Nov. 3, 2015)...................................6

*SynKloud Techs., LLC v. Dropbox, Inc.*,
    19-CV-00525, 2020 WL 2494574 (W.D. Tex. May 14, 2020) ............................10

*Uniloc USA Inc. v. Box, Inc.*,
    17-CV-754, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ..................................14

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..............................................................................................4

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    17-CV-141, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017)...................................5

*XY, LLC v. Trans Ova Genetics, LC*,
    16-CV-447, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ....................................5

**STATUTES**

28 U.S.C. § 1400(b) ........................................................................................................4

28 U.S.C. § 1404(a) ...........................................................................................1, 4, 12, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c) .......................................................................................................7

I.       **INTRODUCTION**

Pursuant to 28 U.S.C. § 1404(a), Defendant Cloudflare, Inc. ("Cloudflare") moves to transfer this case to the Northern District of California ("NDCA"). Cloudflare is a Delaware corporation with its headquarters in the NDCA. The research, design, development, implementation, and product marketing of Cloudflare's products is centered in and managed from the NDCA. One of the two Sable plaintiffs is a California corporation with its principal place of business in the NDCA. And four of the inventors of the patents-in-suit reside in the NDCA, where the predecessor owner of the patents-in-suit (Caspian Networks) was also based. Numerous current or former Sable and Caspian employees who possess relevant knowledge also reside in the NDCA.

Given these strong connections to the NDCA, it is not surprising that the overwhelming majority of known party and third-party witnesses currently work and reside in the NDCA, including numerous Cloudflare witnesses, named inventors of the patents-in-suit, prosecution counsel, and prior-art witnesses. Many of the key documents relevant to this dispute are also located in the NDCA and the NDCA has a much greater local interest in this matter than does the Western District of Texas ("WDTX"). Indeed, Sable does not allege that it has any presence or does any business in the WDTX. And it is undisputed that the Waco Division has no connection to this case.

As shown below, an analysis of the § 1404(a) factors demonstrates that the NDCA is a clearly more convenient venue than the WDTX. Cloudflare respectfully requests that the Court transfer the case to the NDCA.

II.      **PROCEDURAL AND FACTUAL BACKGROUND**

   A.       **The Parties**

According to the Complaint, Sable Networks, Inc., is a California corporation (*see* ECF No. 1 ("Compl."), ¶ 13), and its principal place of business is located at 3171 Jay Street, Santa

Clara, California (*see* Declaration of Martin C. Robson ("Robson Decl."), Ex. 1).[1] Sable IP, LLC is a Delaware LLC based in Minneapolis, Minnesota. Compl., ¶ 16. Sable Networks acquired rights to the patents-in-suit by assignment from Caspian Networks, Inc. (Compl., ¶¶ 8, 10, 14), a company no longer in existence but formerly headquartered in San Jose, California (Robson Decl., Ex. 2). Sable IP is the exclusive licensee of the patents-in-suit. Compl., ¶ 16. The Complaint shows no connection between Sable and the WDTX. Instead, it appears as if Sable's employees live primarily within the NDCA. Robson Decl. ¶¶ 19-25 and Exs. 15, 16, 17, 18, 19, 20, 21.

Cloudflare is a leader in web-infrastructure and website-security services that provides content-delivery-network services, DDoS mitigation, Internet security, and distributed domain-name-server services. *See* Declaration of Rustam Lalkaka ("Lalkaka Decl."), ¶ 3. Cloudflare is a Delaware corporation with its principal place of business in San Francisco where it has approximately 650 employees and contractors. *Id.*, ¶ 4. Cloudflare maintains facilities worldwide, including an office in Austin with approximately 400 employees and contractors. *Id.*, ¶ 5.

Employees in Cloudflare's San Francisco office are responsible for researching, designing, developing, implementing, testing, marketing and managing Cloudflare's products, including the accused products.[2] *Id.*, ¶ 8. Cloudflare's employees with knowledge of sales, marketing, and financial information (e.g., revenues, expenses, profits, etc.) concerning the accused products also work in Cloudflare's San Francisco and San Jose offices. *Id.* ¶¶ 9-10. Aside from employees located in the NDCA, Cloudflare has identified additional employees with knowledge of the accused products who reside in or near Austin, Texas; Champaign, Illinois; and Los Angeles, California.

---

[1]    The Complaint does not specify Sable Networks' principal place of business.

[2]    The "accused products," as used herein, are those products or functionality accused in the Complaint and/or Sable's infringement contentions, including: Cloudflare's Edge Servers (Gen 6, 7, 8, 9, 10), Cloudflare Magic Transit, and Cloudflare DDoS Protection.

*Id.*, ¶ 11. Cloudflare has no offices, facilities, corporate subsidiaries, or affiliates in the Waco Division. *Id.*, ¶ 7. Cloudflare's customers are found throughout the United States and world. *Id.*, ¶ 6.

### B. Sable's Venue Allegations

Sable alleges that Cloudflare directly infringes four of its patents.[3] *See generally* Compl. In its Complaint, Sable pleads no facts connecting Cloudflare's allegedly infringing activities to the Waco Division. Regarding venue, Sable asserts only that:

> 21. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Defendant Cloudflare is registered to do business in the State of Texas, has offices in the State of Texas, has transacted business in the Western District of Texas and has committed acts of direct and indirect infringement in the Western District of Texas.

> 22. Cloudflare has a regular and established place of business in this District and has committed acts of infringement in this District. Cloudflare has permanent office locations at 106 E. 6th Street, Suite 350, Austin, Texas 78701, which is located within this judicial District. Cloudflare employs several hundred full-time personnel such as engineers, executives, and sales personnel in this District, including in Austin, Texas. Cloudflare has also committed acts of infringement in this District by commercializing, marketing, selling, distributing, testing, and servicing certain Accused Products.

*Id.*, ¶¶ 21-22. Sable also alleges that Cloudflare "sells, develops, and/or markets its products" at its Austin office. *Id.*, ¶ 18. In its Answer, Cloudflare admits that it is registered to do business in the State of Texas, maintains an office and employees in Austin, and has transacted business within the WDTX. ECF No. 16 ("Answer"), ¶¶ 21-22.

## III.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28

---

[3]   Although the Complaint alleges induced infringement and willful infringement, *see* Compl., ¶¶ 86-89, 105-108, 125-128, 145-148, the parties agreed to dismiss those allegations without prejudice. *See* ECF No. 15 (Joint Stipulation to Dismiss Certain of Plaintiffs' Allegations). Thus, at this time, Sable only alleges direct infringement.

U.S.C. § 1404(a). Transfer is appropriate under § 1404(a) to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

For transfer under § 1404(a), a movant must first show that the case could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the case could have been brought there, the court weighs the so-called private- and public-interest factors to determine whether transfer is appropriate. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).[4]

## IV.  THE NDCA IS CLEARLY THE MOST CONVENIENT FORUM FOR THIS CASE

### A.  Sable Could Have Filed This Case In The NDCA

As a threshold question, courts look to whether the plaintiff could have filed the case in the proposed transferee division. *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). Under 28 U.S.C. § 1400(b), a corporate defendant may be sued (i) in its state of incorporation, or (ii) where it has committed acts of (alleged) infringement and has a regular and established place of business. Here, both parties acknowledge that Cloudflare maintains its "principal place of business at 101 Townsend Street, San Francisco, CA 94107." Compl., ¶ 17; Answer, ¶ 17 (same); *see also* Lalkaka Decl., ¶ 4. Thus, because Cloudflare maintains a regular and established place of business in San Francisco, where it has engaged in alleged acts of

---

[4]    The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Radmax, Ltd.*, 720 at 288.

infringement, *see* Lalkaka Decl., ¶¶ 8-10, Sable could have filed this suit in the NDCA.

**B.    The Private-Interest Factors Clearly Favor Transfer To The NDCA**

As explained below, all of the private-interest factors support transfer.

1.    <u>The NDCA Offers Easier Access To Sources Of Proof</u>

In considering access to sources of proof, a court looks to the location of evidence, such as documents and physical evidence. *Volkswagen II*, 545 F.3d at 315-6. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).[5] Additionally, in weighing this factor, "the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, 16-CV-447, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017). The preferred forum is "the center of gravity of the accused activity," including where the "testing, research, and production as well as the place where the marketing and sales decisions occurred." *Raz Imps., Inc. v. Luminara Worldwide, LLC*, 15-CV-02223, 2015 WL 6692107, at *5 (N.D. Tex. Nov. 3, 2015) (quotations omitted).

Here, the center of gravity of the accused activity is in San Francisco, not Waco. Specifically, Cloudflare manages the research, design, development, implementation, testing and marketing of its products from its San Francisco office, while its employees working on the research,

---

[5]    The fact that much information may be stored electronically does not affect the analysis. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (holding that the trial court erred in finding this factor neutral because many documents were stored electronically); *Wet Sounds, Inc. v. Audio Formz, LLC*, 17-CV-141, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017) ("[D]espite technological advances that make the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the analysis.") (quotations omitted).

design, development, implementation, testing and marketing of the accused products work in several Cloudflare offices, including its San Francisco, San Jose, Austin, Champaign and Los Angeles offices. *See* Lalkaka Decl., ¶¶ 8-11. More specifically, **eight** of the eleven Cloudflare employee-witnesses work at Cloudflare's San Francisco or San Jose office and reside within the NDCA.[6] *Id.*, ¶¶ 9-11. Thus, the majority of employees with the most relevant knowledge work in Cloudflare's NDCA offices and they store their documents in that venue as well. *Id.*, ¶ 13.[7] Conversely, Cloudflare does not have an office in Waco, and there are no Cloudflare employees that possess relevant knowledge or documents in the Waco Division. *Id.*, ¶¶ 7, 13.

This factor thus significantly favors transfer. *See, e.g.*, *In re Google Inc.*, 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (transfer appropriate where the "vast majority of [the petitioner's] employees—in particular those responsible for projects relating to the accused products—work[ed] and reside[d] in the Northern District of California"); *Datascape*, 2019 WL 4254069, at *2 (ordering transfer where "Plaintiff failed to proffer or identify any such sources [of

---

[6]    In addition to the relevant witnesses located in the NDCA, some of Cloudflare's relevant witnesses who were involved with the research, design, develop, implementation, testing and marketing of the accused products work at its offices in Austin, Champaign and Los Angeles. Lalkaka Decl., ¶ 11. The fact that some of Cloudflare's witnesses and documents are outside of the NDCA is immaterial to the transfer analysis. The critical point is that *none* of the relevant witnesses or evidence are in the Waco Division. *See, e.g.*, *McCloud v. McLinton Energy Grp., L.L.C.*, 14-CV-620, 2014 WL 6388417, at *3 (W.D. Tex. Nov. 14, 2014) ("Although Plaintiffs state that not 'all' the evidence is in Midland, certainly the bulk of it is there, and Plaintiffs point to no evidence in San Antonio or within the San Antonio Division."); *Datascape Ltd. v. Dell Techs., Inc.*, 19-CV-00129, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) ("the question is *relative* ease of access, not *absolute* ease of access") (emphasis in original) (citation and quotations omitted).

[7]    Cloudflare employees typically store and maintain hard-copy files at the Cloudflare office in which they work. Lalkaka Decl., ¶ 13. Thus, the vast majority of hard-copy documents maintained by Cloudflare's San Francisco employees are located in Cloudflare's San Francisco office. *Id.* Cloudflare employees store electronic documents either on their computer desktop, local drive or to Cloudflare's internal document databases. *Id.* Cloudflare's internal databases are primarily hosted at Cloudflare's data center located in Portland, Oregon. *Id.* No Cloudflare documents are stored or maintained in the Waco Division. *Id.*

proof] in Waco"); *McCloud v. McClinton Energy Grp., LLC*, 14-CV-620, 2014 WL 6388417, at

*3 (W.D. Tex. Nov. 14, 2014) (finding that this factor weighed in favor of transfer where plaintiffs

"point[ed] to *no* evidence" located within transferor division) (emphasis in original).

2.      The Availability Of Compulsory Process Favors Transfer To The NDCA

This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside

within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 Fed. App'x

886, 889 (Fed. Cir. 2014); *10Tales, Inc. v. TikTok Inc.*, 20-CV-00810, 2021 WL 2043978, at *3

(W.D. Tex. May 21, 2021) (same). Under the Federal Rules of Civil Procedure, a court may sub-

poena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed,

or regularly transacts business in person"; or (b) "within the state where the person resides, is

employed, or regularly transacts business in person, if the person . . . is commanded to attend a

trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

As identified on the face of the patents-in-suit, six of the seven named inventors of the

patents-in-suit resided in California at the time the applications of the patents-in-suit were filed

(*see* Compl., Exs. A, B, C, D) and presently five of the seven named inventors appear to reside in

California, with four residing within the NDCA (*see* Robson Decl., ¶¶ 5-12 and Exs. 3, 4, 5, 6, 7,

8, 9). The following chart shows where the named inventors resided at the time the applications

for the patents-in-suit were filed and their current residences based on publicly available sources:

| Named Inventor | Patent No. | Prior Location | Current Location |
|---|---|---|---|
| Lawrence G. Roberts | 6,954,431 7,012,919 | Woodside, CA | Deceased |
| Scott Hauck | 6,977,932 | Bloomington, MN | Minneapolis, MN |
| Tricci Y. So | 7,012,919 | San Carlos, CA | Oceanside, CA |
| Faizel Z. Lakhani | 7,012,919 | Campbell, CA | San Francisco, CA |
| John A. McBrayne | 7,012,919 | Mountain View, CA | San Jose, CA |
| Gary G. Croke | 7,012,919 | Palo Alto, CA | San Jose, CA |
| Vishnu Natchu | 8,243,593 | Santa Clara, CA | Santa Clara, CA |

*Compare* Compl. Exs. A, B, C, D, *with* Robson Decl., ¶¶ 5-12 and Exs. 3, 4, 5, 6, 7, 8, 9.

Prosecution counsel also has a strong connection to the NDCA:

| Prosecution Firm | Patent No. | Prior Location | Current Location |
|---|---|---|---|
| Fenwick & West LLP | 6,954,431 | Mountain View, CA | Mountain View, CA |
| Martine Penilla & Gencarella, LLP (n/k/a Penilla IP, APC) | 6,977,932 7,012,919 | Sunnyvale, CA | Sunnyvale, CA |
| West & Associates, A PC | 8,243,593 | Walnut Creek, CA | Walnut Creek, CA |
| Stuart J. West | 8,243,593 | Walnut Creek, CA | Walnut Creek, CA |
| Shaun N. Sluman | 8,243,593 | Walnut Creek, CA | Seattle, WA |

*See* Compl. Exs. A, B, C, D; Robson Decl., ¶¶ 13-18 and Exs. 10, 11, 12, 13, 14.

Sable's Complaint states that the patents-in-suit are purportedly the result of the "technologies developed by Dr. Roberts and Caspian Networks" and presumably related to Sable's much-touted "Apeiro" "flow-based" router. *See, e.g.*, Compl., ¶¶ 5, 6, 8. Thus, in addition to Sable's employees that have relevant knowledge of the patents-in-suit, former Caspian employees likely possess knowledge relevant to questions of conception, reduction to practice, products practicing the claimed inventions, diligence, damages, marking, and secondary considerations of non-obviousness. *See id.* ("Sable Networks, Inc. was formed . . . to further develop and commercialize the flow-based networking technologies developed by Dr. Roberts and Caspian Networks.").

Based on publicly available information, Sable has fourteen employees, with six employees residing in the United States and eight residing overseas. *See* Robson Decl., ¶ 19 and Ex. 15. Of the six United States-based employees, five live in the San Francisco area, one lives in Tennessee, and none live in Texas. *Id.* At least five former Caspian employees that likely have relevant knowledge currently reside in the NDCA. *Id.*, ¶¶ 26-30 and Exs. 22, 23, 24, 25, 26. The following chart shows current or former Sable and Caspian employees who live in the NDCA:

| Name | Title (Present or Former) | Location |
|---|---|---|
| Susumu Watanabe | Sable, Chief Financial Officer | Sunnyvale, CA |
| Kote Anumolu | Sable, Routing Software Architect | Sunnyvale, CA |
| Maria Reilly | Sable, EC Analyst | San Jose, CA |
| Sanjay Oza | Sable, Engineering Director | Cupertino, CA |

| Thong Tran | Sable, Test Engineer | San Jose, CA |
|---|---|---|
| Tra Nguyen | Sable, Test Engineer | Milpitas, CA |
| Brad Wurtz | Caspian, President and CEO | San Francisco, CA |
| Geoffrey Mattson | Caspian, Vice President of Engineering<br><br>Sable, Chief Technical Officer and Founder | Mountain View, CA |
| Douglas Luftman | Caspian, Vice President, General Counsel and Secretary | San Francisco, CA |
| Dr. Riad Hartani | Caspian, Chief Architect | San Francisco, CA |
| Raul Herrera | Caspian, Senior Hardware Engineer<br><br>Sable, Senior Hardware Engineer | Newark, CA |

Robson Decl., ¶¶ 20-30 and Exs. 1, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26.

Cloudflare has also identified three prior-art systems made by companies founded and headquartered in the NDCA. Specifically, Cloudflare intends to rely on prior-art systems consisting of various routers and switches developed by Cisco Systems, Inc., Juniper Networks, Inc. and Packeteer, Inc. (now known as Blue Coat Systems, Inc.). Robson Decl., ¶ 35. Each of these companies is headquartered in the NDCA—Cisco is headquartered in San Jose, California; Juniper is headquartered in Sunnyvale, California; and Blue Coat is headquartered in Sunnyvale, California. Robson Decl., ¶¶ 31-33 and Exs. 27, 28, 29.[8]

In sum, four named inventors, four patent prosecution counsel, eleven witnesses connected to Sable or its predecessor Caspian, and three prior-art companies reside or are headquartered in the NDCA. Each of these **twenty-two** witnesses are within the subpoena power of the NDCA, but

---

[8]   Prior to being acquired by Blue Coat Systems, Inc., Packeteer, Inc. was headquartered in Sunnyvale, California. *See* Robson Decl., ¶ 34 and Ex. 30.

outside of this Court's subpoena power, and thus could not be compelled to testify at trial if this case remained in the WDTX. This factor weighs heavily in favor of transfer to the NDCA.[9]

### 3. Trial In The NDCA Substantially Lowers The Cost Of Attendance For Willing Witnesses

"The convenience of witnesses is the single most important factor in a transfer analysis." *Moskowitz Family LLC. v. Globus Med., Inc.*, 19-CV-00672, 2020 WL 4577710, at *4 (W.D. Tex. July 2, 2020) (citing *Genentech*, 566 F.3d at 1342); *SynKloud Techs., LLC v. Dropbox, Inc.*, 19-CV-00525, 2020 WL 2494574, at *4 (W.D. Tex. May 14, 2020). This factor "appropriately considers the cost of attendance of *all* willing witnesses," including non-party and party witnesses. *Mimedx Group, Inc. v. Tex. Human Biologics, Ltd.*, 14-CV-464, 2014 WL 12479284, at *2 (W.D. Tex. Aug. 12, 2014) (emphasis in original). This factor also considers not only "monetary costs" imposed on witnesses who must travel for trial, "but also the personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. The Federal Circuit recently explained that the "rationale" for this factor is "to minimize the time when [fact witnesses] are removed from their regular work or home responsibilities." *In re TracFone Wireless, Inc.*, 852 Fed. Appx. 537, 539 (Fed. Cir. 2021); *see also Genentech*, 566 F.3d at 1343 ("it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home").

As explained above, numerous Cloudflare employees with relevant knowledge reside and work in the San Francisco area. For these witnesses, NDCA is clearly more convenient than the WDTX as requiring the witnesses to travel from San Francisco to Waco and back for hearings or

---

[9]   Importantly, the Federal Circuit recently noted that it "think[s] that the Fifth Circuit would recognize that where, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness." *In re Hulu, LLC*, 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021).

trial would place an unnecessary burden on them. Other Cloudflare employees with relevant knowledge of the accused products and issues presented in this case reside in Austin, Champaign and Los Angeles.[10] Lalkaka Decl., ¶ 11. For the non-Austin-based witnesses, San Francisco remains a more convenient forum than Waco—e.g., they can fly non-stop into San Francisco and work in Cloudflare's San Francisco office when not appearing in court. *Id.*, ¶ 14; *compare* Robson Decl. Exs. 31, 32 *with* Exs. 33, 34 (showing non-stop flights from Chicago and Los Angeles to San Francisco).

The vast majority of all other known witnesses live in the NDCA—trial in San Francisco, as opposed to Waco, would be much more convenient for them. This factor thus significantly favors transfer, as the cost of attendance and related burdens for the vast majority of the known party and non-party witnesses would be less in San Francisco than in Waco. *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

### 4.     The Practical-Problems Factor Favors Transfer To The NDCA

Courts also consider "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 314. As noted above (*see* Sections IV.B.1-3), it will be easier, more expeditious, and less expensive to litigate in NDCA as opposed to Waco.

Additionally, this case is in its earliest stages—Cloudflare only recently filed its Answer (on May 24, 2021) and the Case Management Conference was deemed to occur a mere nine weeks ago (on June 30, 2021). The claim-construction process and discovery have not begun. Thus, transferring the case to the NDCA would not result in any meaningful delay that would counsel against transfer. *See Radmax*, 720 F.3d at 289 ("[G]arden-variety delay associated with transfer is not to

---

[10]    The critical consideration is <u>not</u> whether "*all* of the witnesses" reside in the transferee district, but whether a "substantial number" are based there. *Genentech*, 566 F.3d at 1345 (emphasis in original).

be taken into consideration when ruling on a § 1404(a) motion to transfer."); *Mimedx*, 2014 WL 12479284, at *2 (finding "ultimate resolution of [] case is likely to be minimally affected by a transfer" when it is in "the earliest stages" at the time of transfer).

The Federal Circuit (applying Fifth Circuit law) has expressly held that it is legal error to allow judicial economy considerations to "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). As such, the fact that Sable has one other active patent case in the Waco Division[11] does not weigh against transfer.[12] *See Google*, 2017 WL 977038, at *3 ("[I]t is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits . . . . To hold otherwise, we would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district.").

In sum, this factor also strongly weighs in favor of transfer.

## C.     The Public-Interest Factors Favor Transfer To The NDCA

Applying the public-interest factors to the record evidence, it is evident that having localized interests decided at home favors transfer to the NDCA. The remaining three public-interest

---

[11]     *Sable Networks, Inc. et al v. Riverbed Technology, Inc.*, 6:21-cv-00175-ADA (W.D. Tex.). Cloudflare notes that Riverbed has filed a motion to dismiss for improper venue or, alternatively, to transfer to the NDCA. *See* 6:21-cv-00175, ECF No. 11.

[12]     Sable has filed seven patent cases in this Court, excluding the instant case. *See* Civil Action Nos. 6:20-cv-288; 6:20-cv-524; 6:20-cv-569; 6:20-cv-808; 6:21-cv-175; 6:21-cv-190; 6:21-cv-241. To date, five of those cases have been dismissed with prejudice (Civil Action Nos. 6:20-cv-288; 6:20-cv-524; 6:20-cv-569; 6:20-cv-808; 6:21-cv-241). In one of the two cases that remain open, the parties recently filed a Stipulation of Dismissal with Prejudice and is awaiting entry of the proposed order of dismissal. *See* Civil Action No. 6:21-cv-190. The remaining case (Civil Action Nos. 6:21-cv-175) was filed within three weeks of this case. None of Sable's cases have had claim-construction hearings and, as such, the Court has not construed any of the patents-in-suit.

factors are neutral. No public-interest factor weighs against.

        1.     The Local Interests Factor Favors Transfer To The NDCA

The "local interests" factor considers whether there is a "local interest in having localized interests deciding at home." *Volkswagen II*, 545 F.3d at 315. This factor favors transfer from a district that lacks "any meaningful connection or relationship with the circumstances" of a case to one where the alleged wrongdoing occurred. *Volkswagen I*, 371 F.3d at 206. Where a suit "calls into question the work and reputation of several individuals residing in" a district, the interest of that district is "self-evident." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336, 1338 (Fed. Cir. 2009). Additionally, "this factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *Apple*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

The NDCA has a considerable interest in deciding this case. Both Cloudflare and Sable Networks maintain their principal places of business within the NDCA. *See* Lalkaka Decl., ¶ 4; Robson Decl., Ex. 1. The prior owner of the patents (Caspian) also maintained its principal place of business in the NDCA (Robson Decl., Ex. 2), where the majority of the inventors of the patents-in-suit, as well as current and former Sable and Caspian employees, currently reside (*see* Section IV.B.2 above). And, as discussed above, management of, and work related to, the research, design, development, implementation, testing and marketing of the accused products, takes place out of Cloudflare's San Francisco office. Lalkaka Decl., ¶ 8. Moreover, the vast majority of the known third-party witnesses are located in the NDCA. *See* Section IV.B.2 above. These are precisely the types of activities that give the NDCA a substantial local interest in adjudicating the case. *In re Samsung Elecs. Co.*, 2 F.4th at 1380.

In contrast, the Waco Division has no relevant connection to the issues, products, or parties

13

in this dispute. No activities related to the accused products were directed from the Waco Division, and none of the accused products were researched, designed, developed, or implemented from the Waco Division. *See* Lalkaka Decl., ¶¶ 7, 12. Neither Cloudflare nor Sable maintain any offices in this Division. *Id.*, ¶ 7. The only conceivable connection between this case and the Waco Division is the possibility that accused services may have been used or purchased by customers located in the Waco area—but the same could be said for all (or nearly all) other districts or divisions located throughout the United States. The purchase or use of a service deployed nationwide does not give the Waco Division a special interest in this case. *See, e.g.*, *DataQuill, Ltd. v. Apple Inc.*, 13-CV-706, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014) (that accused products were sold to residents within district "is largely irrelevant, as the mere presence of accused products in a district does not create a local interest").

Accordingly, because the NDCA has a much greater local interest than does Waco (which has no known local interest at all), this factor strongly favors transfer. *See, e.g.*, *Uniloc USA Inc. v. Box, Inc.*, 17-CV-754, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) (finding that local interests favored transfer where the defendant had office in the transferee district, the accused product was developed there, witnesses resided there, and the defendant continued to sell the accused product in that market).

### 2.   The Remaining Public-Interest Factors Are Neutral

The remaining factors are neutral—none weighs in favor of Waco. *First*, there are no known administrative difficulties flowing from court congestion for the judges in either district. In fact, the Federal Circuit recently held that there is no "appreciable difference in docket congestion between the forums [i.e., WDTX and NDCA] that could legitimately be worthy of consideration under this factor." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The court-congestion

14

factor is thus neutral.[13] *Second*, the judges in both forums are familiar with federal patent law, rendering the familiarity-with-the-law factor neutral. *See In re TS Tech USA Corp.*, 551 F.3d at 1320 ("The district court was further correct in concluding that it was in no better position than the Southern District of Ohio in deciding this patent case. As the district court noted, '[p]atent claims are governed by federal law,' and as such 'both [courts are] capable of applying patent law to infringement claims.'") (citation omitted); *Parus Holdings Inc. v. LG Elecs. Inc.*, 19-CV-00432, 2020 WL 4905809, at *8 (W.D. Tex. Aug. 20, 2020) ("[t]he Court also agrees" that the familiarity-with-the-law factor is neutral). *Finally*, this is a federal patent case—no conflict of law issue is present, nor is there any issue of foreign law. The conflicts-of-law factor is thus also neutral.

### D.     Considered Together, The Private- And Public-Transfer Factors Show That The NDCA Is Clearly More Convenient Than The WDTX

As shown above, five of the private- and public-interest factors favor transfer to the NDCA (including the important convenience-of-the-witnesses factor), three factors are neutral, and no factor favors keeping the case in the WDTX. Under these facts, the Court should transfer the case to the NDCA. *See Radmax*, 720 F.3d at 290 (confirming that it was an "extraordinary error" to decline transfer where three factors supported transfer, five were neutral, and "not a single relevant factor favors the plaintiffs' chosen venue") (brackets omitted) (quoting *Volkswagen II*, 545 F.3d at 318); *Mimedx*, 2014 WL 12479284, at *3 (ordering transfer where four factors favored transfer, four were neutral, and none favored plaintiff's choice of venue).

### V.     CONCLUSION

For these reasons, the Court should grant this Motion.

---

[13]     A court's ability to set a fast-paced schedule is not particularly relevant to this factor. *See Apple*, 979 F.3d at 1344; *see also Hulu*, 2021 WL 3278194, at *5 (disregarding "ability to push an aggressive trial date").

Dated: September 1, 2021

Respectfully submitted,

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
MARTIN C. ROBSON
  Texas State Bar No. 24004892
  mrobson@ccrglaw.com
ANTHONY M. GARZA
  Texas State Bar No. 24050644
  agarza@ccrglaw.com
C. LUKE NELSON
  Texas State Bar No. 24051107
  lnelson@ccrglaw.com
JOHN HEUTON
  jhueton@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the parties have conferred by telephone in good faith on the substance of this motion but could not reach agreement, and Plaintiffs' counsel has indicated that Plaintiffs plan to oppose the motion to transfer.

STEVEN CALLAHAN

## CERTIFICATE OF SERVICE

I hereby certify that, on September 1, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dorian S. Berger, Esq.
Daniel P. Hipskind, Esq.
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, California 90210
Telephone: 323-886-3430
Telecopier: 323-978-5508
dsb@bergerhipskind.com
dph@bergerhipskind.com

Elizabeth L. DeRieux, Esq
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-845-5770
ederieux@capshawlaw.com

STEVEN CALLAHAN

17