UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

SABLE NETWORKS, INC. AND
SABLE IP, LLC,

                *Plaintiffs,*

        v.

CLOUDFLARE, INC.,

                *Defendant.*

Civil Action No. 6:21-cv-00261-ADA

JURY TRIAL DEMANDED

**PLAINTIFFS SABLE NETWORKS, INC. AND SABLE IP, LLC'S OPPOSITION
TO DEFENDANT CLOUDFLARE, INC.'S MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF U.S. PATENT NO. 6,954,431 FOR
<u>LACK OF WRITTEN DESCRIPTION</u>**

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ....................................................................................... 2

      A.      U.S. Patent No. 6,954,431 (The "'431 Patent") ........................................ 2

      B.      Instead Of Relying On Facts, Cloudflare Concocts An Unsupported And
           Implausible Theory ..................................................................................... 3

III.    LEGAL STANDARD ............................................................................................. 4

IV.     THERE IS AT LEAST A TRIABLE ISSUE OF FACT AS TO WHETHER INDEPENDENT
       CLAIMS 1, 10, AND 19 OF THE '431 PATENT AND THEIR LIMITATIONS ARE
       SUPPORTED BY THE '431 PATENT'S SPECIFICATION ........................................... 6

      A.      The '431 Patent's Specification Would Have Conveyed To A POSITA
           That The Inventor Was In Possession Of The Claimed Inventions ...................... 7

      B.      Cloudflare's Expert's Opinions Are Unsupported ................................... 11

      C.      In The Alternative, There Is At Least A Triable Issue Regarding Whether
           The At-Issue Claims And Their Limitations Are Inherently Disclosed .............. 13

V.      IN THE ALTERNATIVE, INDEPENDENT CLAIMS 1, 10, AND 19 OF THE '431 PATENT
       ARE SUPPORTED BY THE APPLICATION UNDERLYING THE '431 PATENT, WHICH
       CONTAINS THE SAME CLAIMS ........................................................................... 15

VI.     CLOUDFLARE'S MOTION IS PROCEDURALLY IMPROPER ................................... 19

VII.    CONCLUSION ................................................................................................... 20

### TABLE OF AUTHORITIES

**CASES**

*Ajinomoto Co., Inc. v. ITC*,
   932 F.3d 1342 (Fed. Cir. 2019) ........................................................... 6

*Allure Energy, Inc. v. Nest Labs, Inc.*,
   2015 U.S. Dist. LEXIS 180292 (E.D. Tex. May 11, 2015) ................................ 2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................... 2

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) .................................................. *passim*

*Automated Bus. Cos. v. WebEx Communs., Inc.*,
   712 F. Supp. 2d 608 (S.D. Tex. 2010) ................................................. 13

*Bioverativ Inc. v. CSL Behring LLC*,
   2020 U.S. Dist. LEXIS 38211 (D. Del. Mar. 5, 2020) .................................... 6

*Cassidian Communs., Inc. v. Microdata GIS, Inc.*,
   2014 U.S. Dist. LEXIS 110133 (E.D. Tex. Aug. 8, 2014) ............................... 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................... 4

*Centrak, Inc. v. Sonitor Techs., Inc.*,
   915 F.3d 1360 (Fed. Cir. 2019) ...................................................... 2, 5

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   2016 U.S. Dist. LEXIS 123232 (E.D. Tex. Aug. 8, 2016) ................................ 5

*Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.*,
   635 F.3d 1373 (Fed. Cir. 2011) ....................................................... 15

*Ebay Inc. v. IDT Corp.*,
   2009 U.S. Dist. LEXIS 138768 (W.D. Ark. Oct. 15, 2009) .............................. 15

*Ex parte Ismagilov*,
   Appeal 2019-004109 (PTAB May 13, 2020) .............................................. 16

*Ferring B.V. v. Serenity Pharm., LLC*,
   2019 U.S. Dist. LEXIS 71019 (S.D.N.Y. Apr. 22, 2019) ................................ 20

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir.) ................................................................ 4

*Fujikawa v. Wattanasin,*
    93 F.3d 1559 (Fed. Cir. 1996) ........................................................................... 5

*Hynix Semiconductor Inc. v. Rambus Inc.,*
    645 F.3d 1336 (Fed. Cir. 2011) ........................................................................... 1

*Immunex Corp. v. Sandoz Inc.,*
    395 F. Supp. 3d 366 (D.N.J. 2019) ..................................................................... 6

*Intirtool, Ltd. v. Texar Corp.,*
    369 F.3d 1289 (Fed. Cir. 2004) ........................................................................... 1

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.,*
    687 F.3d 1377 (Fed. Cir. 2012) ......................................................................... 11

*Mentor Graphics Corp. v. EVE-USA, Inc.,*
    851 F.3d 1275 (Fed. Cir. 2017) ...................................................... 15, 17, 18, 19

*Mfg. Res. Int'l v. Civiq Smartscapes, LLC,*
    397 F. Supp. 3d 560 (D. Del. 2019) .................................................................. 16

*Noven Pharm. v. Amneal Pharm. LLC,*
    2020 U.S. Dist. LEXIS 258397 (D. Del. Sep. 2, 2020) ............................... 11, 12

*Novozymes A/S v. Dupont Nutrition Biosciences APS,*
    723 F.3d 1336 (Fed. Cir. 2013) ......................................................................... 18

*Parakkavetty v. Indus. Int'l, Inc.,*
    2004 U.S. Dist. LEXIS 2012 (N.D. Tex. Feb. 12, 2004) ............................. 19, 20

*Perdiemco v. IndusTrack LLC,*
    2016 U.S. Dist. LEXIS 156289 (E.D. Tex. Oct. 28, 2016) ..................... 5, 6, 16

*Pharmacia & Upjohn Co. v. Sicor Inc.,*
    447 F. Supp. 2d 363 (D. Del. 2006) .................................................................... 7

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
    522 F.3d 1299 (Fed. Cir. 2008) ..................................................................... 5, 13

*Printeron Inc. v. Breezyprint Corp.,*
    93 F. Supp. 3d 658 (S.D. Tex. 2015) ................................................................ 11

*Reiffin v. Microsoft Corp.,*
    214 F.3d 1342 (Fed. Cir. 2000) ................................................................... 18, 19

*Sudenga Indus. v. Glob. Indus.,*
    2021 U.S. Dist. LEXIS 44671 (D. Kan. Mar. 10, 2021) ....................................... 7

*Vas-Cath Inc. v. Sakharam D. Mahurkar*,
　　935 F.2d 1555 (Fed. Cir. 1991)............................................................................... 7

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
　　782 F.3d 671 (Fed. Cir. 2015)................................................................................. 5

*Wash World Inc. v. Belanger Inc.*,
　　2021 U.S. Dist. LEXIS 127083 (E.D. Wis. July 8, 2021) .................................. 7

*Washington v. Allstate Ins. Co.*,
　　901 F.2d 1281 (5th Cir. 1990) .............................................................................. 19

*Weichsel Farm Ltd., P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*,
　　2012 U.S. Dist. LEXIS 43162 (N.D. Tex. Mar. 28, 2012) ................................. 3

## STATUTES

35 U.S.C. § 112........................................................................................... 4, 14, 15, 18

35 U.S.C. § 282...................................................................................................... 1, 5

## RULES

Fed. R. Civ. P. 56(c) .................................................................................................. 4

Fed. R. Civ. P. 56(d) ...................................................................................... 2, 19, 20

## I.   INTRODUCTION

Plaintiffs Sable Networks, Inc. and Sable IP, LLC (collectively, "Plaintiffs" or "Sable") respectfully submit this opposition to Defendant Cloudflare, Inc.'s ("Cloudflare") Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,954,431 ("'431 patent") for Lack of Written Description.  Dkt. 30 ("Motion" or "Mtn.").  Cloudflare fails to satisfy its heavy burden of establishing by clear and convincing evidence that the '431 patent is invalid for lack of written description.  Accordingly, the Court should deny the Motion.

The '431 patent teaches significant improvements in the field of networking technology. The '431 patent represents the groundbreaking work of one of the founding fathers of the Internet, Dr. Lawrence (Larry) Roberts, the company he co-founded, Caspian Networks, Inc., and its successor, Sable Networks, Inc.  The challenge the technology claimed in the '431 patent addressed was how to efficiently process data flows with significant quality of service ("QoS") requirements (e.g., two-way voice and video data).  Prior art systems that could provide acceptable quality required significant bandwidth such that large-scale implementations of these prior art systems would have been expensive and infeasible.  And, at the time the inventions in the '431 patent were developed, conventional packet-switched networks were unable to provide the QoS required to adequately process demanding types of network traffic such as voice and video data. The '431 patent solved these problems by providing a technology that enabled a network to associate a specific, quantified level of QoS with a "micro-flow."

The '431 patent is presumed valid.  35 U.S.C. § 282.  In bringing the Motion, which is premature, as fact discovery has not even opened, Cloudflare has the high burden of establishing by clear and convincing evidence that the '431 patent fails to comply with the written description requirement.  *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011); *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1294 (Fed. Cir. 2004).  To do so, Cloudflare has to unequivocally show that the disclosure of the '431 patent does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  The question

is one of fact.  *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1365 (Fed. Cir. 2019).  The facts here support Sable and all justified inferences from them must be drawn in Sable's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

At a minimum, there is at least a triable issue as to whether the '431 patent complies with the written description requirement, as demonstrated by the well-supported declaration of Sable's expert who unequivocally opines that both the '431 patent specification and the specification of the application to which the '431 patent claims priority teach and disclose the asserted claims and limitations.  Indeed, the presence of conflicting expert testimony alone is sufficient to defeat summary judgment here, especially since Cloudflare's expert's declaration is conclusory and applies the wrong legal standard.  *See, e.g., Allure Energy, Inc. v. Nest Labs, Inc.*, 2015 U.S. Dist. LEXIS 180292, at *7 (E.D. Tex. May 11, 2015) ("A grant of summary judgment is improper when resolution of the issues requires resolving a 'battle of the experts.'").

Even assuming, for the sake of argument only, that Cloudflare's Motion had any merit (it does not), the Court should deny the Motion pursuant to Federal Rule of Civil Procedure 56(d), or defer ruling on it, until Sable has had an adequate opportunity to take fact discovery, which is currently not yet open since the *Markman* hearing has not yet occurred.

For these reasons and those set forth below, the Court should deny Cloudflare's Motion.

## II.   STATEMENT OF FACTS

### A.   U.S. Patent No. 6,954,431 (The "'431 Patent")

The '431 patent is entitled "Micro-Flow Management," and has a priority date of April 19, 2000.  The '431 patent is directed to a system for efficiently routing flows of data packets across a network.  The '431 patent provides a technology that can "associate specific state information to a uniquely identifiable set of data signals that typically have the same open system interconnection model network layer and transport layer characteristics ('micro-flow')."  '431 Patent, at 5:44-49. This enables the network to associate a specific, quantified level of QoS to be associated with that micro-flow.  *Id.* at 5:48-49.

The '431 patent specification describes several mechanisms for the QoS descriptor values to be associated with a micro-flow.  For example, QoS descriptors might be communicated to the switch via a QoS field that is "embedded within the first micro-flow data signal of each micro-flow."  *Id.* at 5:54-57.  Alternatively, the QoS descriptors may be derived by the switch itself.  "[T]he QoS characteristics assigned to these micro-flows further can be derived by the data packet's arrival rate into the switch 220."  *Id.* at 9:13-15.  In a further embodiment, the QoS descriptor values reside on the switch.  *Id.* at 13:31-32.  The micro-flow classifier retrieves the "QoS descriptor values from the layers table 590 that are associated with a file-based set of QoS descriptor values."  *Id.*  "In particular, the micro-flow classifier 715 can perform a coarse lookup 715 of QoS descriptors that specifically corresponds to the characteristics of the extracted layer information."  *Id.* at 13:20-23.  The network switches can then utilize this micro-flow-level QoS field to efficiently route data signals associated with each unique micro-flow.  *Id.* at 5:58-62.

## B.   Instead Of Relying On Facts, Cloudflare Concocts An Unsupported And Implausible Theory

In a strange and misguided effort, Cloudflare concocts an unsupported story about why the '431 patent supposedly lacks written description support for the inventions recited in the asserted claims.  Cloudflare speculates that during prosecution, the '431 patent's claims were supposedly "written to the wrong specification."  Dkt. 30 at 1.  According to Cloudflare, and based on nothing but its imagination, the '431 patent's claims were written to the specification for a different patent—U.S. Patent No. 7,012,919 (the "'919 patent"), which is also being asserted against Cloudflare in this case.  *Id.* at 4 (arguing that the "'919 patent's specification confirms the likely mistake in prosecution when compared to the claims of the '431 patent.").  Other than Cloudflare's say-so, there is no support for Cloudflare's imagined scenario, which is irrelevant and entitled to no weight on summary judgment.  *See Weichsel Farm Ltd., P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 43162, at *12 (N.D. Tex. Mar. 28, 2012) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary

judgment evidence.") (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)).

In any event, even a cursory review of publicly available facts demonstrates that Cloudflare's attempt at rewriting history fails. The applications that led to the '431 patent and '919 patent, respectively, were prosecuted by different law firms on behalf of largely different inventors. Fenwick & West prosecuted the '431 patent on behalf of its sole inventor, Dr. Lawrence Roberts. Martine Penilla & Gencarella, LLP prosecuted the '919 patent on behalf of multiple inventors—Tricci So, Dr. Lawrence Roberts, Faizel Lakhani, John McBrayne, and Gary Croke. Moreover, the timing of the respective prosecutions of the '431 patent and '919 patent demonstrates the implausibility of Cloudflare's "switcheroo" theory. The application underlying the '431 patent was filed on December 6, 2001. The application underlying the '919 patent was filed almost a year earlier, on December 8, 2000. Cloudflare's representation that the application for the '919 patent was filed "just two days after" the application for the '431 patent is just wrong. Dkt. 30 at 4. Contrary to Cloudflare's false representation, the application for the '919 patent was filed on December 8, 2000, *not* December 8, 2001.

Whether intentionally misleading or just sloppy, Cloudflare's presentation of false "facts" is entitled to no weight and should be rejected. Without its concocted story, Cloudflare is left with the conclusory declaration of its expert, Paul Min, which, as explained below, does not satisfy Cloudflare's heavy burden of proving invalidity by clear and convincing evidence.

## III.    LEGAL STANDARD

Summary judgment is inappropriate unless "there is no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Cloudflare bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

The written description requirement contained in 35 U.S.C. § 112, ¶ 1 requires that the specification "clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharms.*, 598 F.3d at 1351. "'The test for the sufficiency of the

written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 U.S. Dist. LEXIS 123232, at *12 (E.D. Tex. Aug. 8, 2016) (quoting *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015)). "'[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.'"  *Id.* at *12-13 (E.D. Tex. Aug. 8, 2016) (quoting *Ariad Pharm., Inc.*, 598 F.3d at 1351).  "[W]ritten description is about whether the skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described; it is not about whether the patentee has proven to the skilled reader that the invention works, or how to make it work, which is an enablement issue."  *CenTrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1366 (Fed. Cir. 2019) (internal quotations and citation omitted).  As the Federal Circuit recognizes, "*ipsis verbis* disclosure is not necessary to satisfy the written description requirement of section 112.  Instead, the disclosure need only reasonably convey to persons skilled in the art that the inventor had possession of the subject matter in question."  *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1570 (Fed. Cir. 1996).

"Compliance with the written description requirement is a question of fact" and is amenable to summary judgment only in "cases where no reasonable fact finder could return a verdict for the non-moving party."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).  "Because issued patents are presumed valid under § 282, a party must prove invalidity for lack of written description by clear and convincing evidence."  *Perdiemco v. IndusTrack LLC*, 2016 U.S. Dist. LEXIS 156289, at *9 (E.D. Tex. Oct. 28, 2016).

**IV.**   **THERE IS AT LEAST A TRIABLE ISSUE OF FACT AS TO WHETHER INDEPENDENT CLAIMS 1, 10, AND 19 OF THE '431 PATENT AND THEIR LIMITATIONS ARE SUPPORTED BY THE '431 PATENT'S SPECIFICATION**

Cloudflare wrongly argues that for "underlined independent claims 1 and 10, there is no description in the specification of a method for managing data traffic that (in short) includes a buffer containing a microflow, determining a capacity of the buffer, assigning a threshold for the buffer capacity, delegating a portion of available bandwidth to the microflow, and using the buffer for damping jitter associated with the microflow." Dkt. 30 at 6 (emphasis in Motion). Cloudflare likewise incorrectly argues that for "underlined independent claim 19, there is no description in the specification of a microflow classification structure that (in short) includes packet-discard, weighting-factor, and delay-variation 'substructure[s] configured to' each provide the respective claimed functionalities." *Id.* at 7 (emphasis Motion). Although the discussion in its Motion is cursory, it appears that Cloudflare's primary argument is that the specification supposedly lacks "a description of each independent claim's use of buffers, in a particular manner, to damp jitter." *Id.*

As explained above, "[a] patent must include sufficient details such that a POSA could understand the subject invention and recognize that the inventor possessed it." *Immunex Corp. v. Sandoz Inc.*, 395 F. Supp. 3d 366, 382 (D.N.J. 2019) (citing *Ariad*, 598 F.3d at 1351). "However, this requirement does not necessarily mean that the specification of the patent must include every nuanced detail. Indeed, '[a] patent need not teach, and preferably omits, what is well known in the art.'" *Id.* (citation omitted). *See also Ajinomoto Co., Inc. v. ITC*, 932 F.3d 1342, 1359 (Fed. Cir. 2019) ("[A] patentee may rely on information that is well-known in the art for purposes of meeting the written description requirement, because the specification is viewed from the perspective of [a POSA]."); *Bioverativ Inc. v. CSL Behring LLC*, 2020 U.S. Dist. LEXIS 38211, at *8 (D. Del. Mar. 5, 2020) ("Information that is well known in the art need not be described in detail in the specification.").

In cases like this one where the parties submit conflicting expert declarations with respect to written description, motions for summary judgment are routinely denied. *See, e.g.*, *Perdiemco*, 2016 U.S. Dist. LEXIS 156289, at *12 ("At most, the issue of whether the patents describe a

computer 'configured to' performed [sic] the claimed functions reduces to a dispute between experts. … As a result, Geotab is not entitled to summary judgment of invalidity based on inadequate written description."); *Sudenga Indus. v. Glob. Indus.*, 2021 U.S. Dist. LEXIS 44671, at \*12-13 (D. Kan. Mar. 10, 2021) (by coming forward with expert testimony explaining why a POSA would have understood that the inventor had possession of the claimed subject matter as of the filing date, the plaintiff created a triable issue of fact as to whether there was written description support for a claimed limitation such that summary judgment was inappropriate); *Wash World Inc. v. Belanger Inc.*, 2021 U.S. Dist. LEXIS 127083, at \*7-8 (E.D. Wis. July 8, 2021) (denying motion for summary judgment of invalidity for lack of written description because the parties submitted conflicting evidence such that the court "[wa]s not convinced that there are no genuine issues of material fact regarding whether the specification satisfie[d] the written description requirement."); *Vas-Cath Inc. v. Sakharam D. Mahurkar*, 935 F.2d 1555, 1567 (Fed. Cir. 1991) (reversing order granting summary judgment of invalidity for failure to comply with written description requirement in light of triable issues of fact created by expert declaration submitted by the patentee); *Pharmacia & Upjohn Co. v. Sicor Inc.*, 447 F. Supp. 2d 363, 376 (D. Del. 2006) (denying defendant's motion for summary judgment, and noting "because these experts disagree about what one of ordinary skill in the art, looking at the written description, would have understood the scope of the claims to be, there are genuine issues of material fact on whether the written description of the '285 patent is sufficient to support the claims.").

A.   **The '431 Patent's Specification Would Have Conveyed To A POSITA That The Inventor Was In Possession Of The Claimed Inventions**

Cloudflare's Motion focuses on independent claims 1,[1] 10, and 19 of the '431 patent.  Dkt. 30 at 6-7.  Cloudflare primarily argues that "buffers are largely ignored by the '431 patent's

_____

[1] As Cloudflare recognizes, Sable formally disclaimed claim 1 of the '431 patent.  Dkt. 30 at 3. However, Cloudflare's Motion focuses on claim 1.  Because claim 8 of the '431 patent, which is still asserted, depends on claim 1, Sable understands Cloudflare's arguments concerning claim 1 to be directed to claim 8, but to eliminate unnecessary confusion, Sable addresses Cloudflare's arguments in the manner in which Cloudflare has presented them.

specification," and there is supposedly no disclosure of "determining a capacity of a buffer," or "using a buffer to dampen jitter." *Id.* at 9-10.

Contrary to Cloudflare's assertions, the '431 patent's specification makes clear that the network management system claimed in the patent contains memory which includes a storage block table that is connected to the network; this is a "buffer." As the '431 patent describes, "[t]he memory 550 includes a storage block table 560, a flow block table 570, a policy table 580, a layers table 590, a forwarding table 595 and a routing table 597." '431 Patent, at 12:20-28 (emphasis added). A person of ordinary skill in the art ("POSITA") would understand that the storage block table described in the '431 patent is a buffer. *See* Declaration of Tze Sing Eugene Ng ("Ng Decl."), at ¶ 40. Specifically, the storage block table described in the '431 patent's specification is used for storing data packets received from the network trunk line interface. "The network trunk line interface 510 which is coupled to the trunk line, the micro-flow recognizer 520 and the memory 550, is responsible for receiving 610 data packets from the trunk, deencapsulating (if needed) the data packets and *storing the data packets within storage blocks within the storage block table 560*." '431 Patent, at 12:29-34 (emphasis added). Cloudflare's expert, Paul Min, agrees that a "buffer" is a "pretty broad term" that "has a meaning to a POSITA" and "is some way of storing data in an organized format." Ex.[2] 1 at 34:14-35:3. Storing data packets within storage blocks within the storage block table 560 disclosed in the '431 patent clearly meets even Cloudflare's expert's definition. Even without the disclosures of the storage block table in the '431 patent's specification, a POSITA would have understood what was meant by a "buffer" in the asserted claims because the "use of buffers was widely known at the time the '431 patent was filed." Ng Decl., at ¶ 43.

Likewise, the '431 patent's specification would have reasonably conveyed to a POSITA that the inventor was in possession of an invention for "determining a capacity of a buffer

---

[2] Unless otherwise noted, citations to "Ex. __" are citations to the exhibits of the Declaration of Daniel P. Hipskind filed herewith.

containing a microflow based on a characteristic,"[3] which is the limitation recited in the asserted claims. *See, e.g.*, '431 Patent, at cls. 8, 10. For example, as described in the '431 patent, when a first packet of a micro-flow is received by the ingress linecard 410, QoS descriptors are associated with the micro-flow by the ingress micro-flow manager 505. Those QoS descriptor values can include a guaranteed rate ("GR") value. *Id.* at 8:58-64. The GR value allows a micro-flow to be guaranteed a specific rate. *Id.* at 9:35-44. To provide a guaranteed rate for a micro-flow, a POSITA "would readily understand that a switch would be required to reserve sufficient capacity in the buffer—i.e., the storage block of the switch—to accommodate the GR microflow." Ng Decl., at ¶ 53. "The ingress microflow manager 505, which is located on the ingress linecard, therefore *utilizes the QoS descriptors, which quantify the characteristics of microflows, to determine the capacity of the buffer to which the microflow is assigned*." *Id.* (emphasis added).

The '431 patent's specification also would have reasonably conveyed to a POSITA that the inventor was in possession of inventions reciting "using the buffer for damping jitter associated with the microflow." *See* Ng Decl., at ¶¶ 45-49. "Jitter is a widely known concept in the field of networking" and would have been understood by a POSITA "to refer to delay variation." *Id.* at ¶ 46. Cloudflare's expert agrees. *See* Ex. 1 at 33:5-20 ("So the term that's more commonly used is a 'delay jitter,' but I think 'jitter' is a term that one would recognize to mean the delay jitter and together is a term of art."); *id.* (also testifying that "delay jitter" refers to "variations in delay"). "As the term 'jitter' is used in the context of the '431 patent's specification and claims, it refers to the delay variation of packets transmitted over a network." Ng Decl., at ¶ 46. The term "dampen" would have been understood by a POSITA "to mean reduce." *Id.* at ¶ 49. The '431 patent's specification clearly describes "a system directed at reducing the delay variation between packets"—reducing, i.e., dampening, jitter. *Id.* at ¶ 47. Specifically, the '431 patent discloses that "[t]he switch 220 … can ensure that the delay variation [i.e., jitter] is small for micro-flows." '431 Patent, at 10:53-54. Thus, a POSITA "would readily understand that the 'damping' of 'jitter' is

---

[3] Throughout its Motion, Cloudflare misleadingly truncates this limitation as "determining a capacity of a buffer." *See, e.g.*, Dkt. 30 at 10.

the reduction of delay variation and that the reduction of delay variation is sufficiently described in the '431 specification." *Id.* at ¶ 49.

Cloudflare also argues in a conclusory fashion that the '431 patent's specification "never describes a 'microflow classification structure' or any 'substructures' as *such*, and never describes (at least) the 'delay variation substructure configured to provide a buffer value to dampen jitter' claimed in claim 19." Dkt. 30 at 11.  Cloudflare is incorrect.  The '431 patent's specification provides a detailed description of the microflow classification structure and its substructures: (1) a packet discard time substructure, (2) weighting factor substructure, and (3) delay variation substructure.  Indeed, a POSITA "would understand the specification as describing a classification structure in the form of the QoS field that is shown in Figure 3B of the '431 patent."  Ng Decl., at ¶ 76.  *See also* '431 Patent, at 8:54-67 (describing that in Figure 3B, the QoS field "can include QoS descriptors, such as the packet discard time limit ('D') value 315, a weighting factor for the available rate ('W') 320, a guaranteed rate ('GR') value 330, a micro-flow timeout period ('DT') value 340, an available rate ('AR') value and a delay variation value ('Q')") (emphasis added).  A POSITA would understand that the QoS field "comprise[s] a classification structure containing substructures that include a 'packet discard time,' 'weighing factor,' and 'delay variation' substructures."  Ng Decl., at ¶ 77.  *See also id.* at ¶ 78.

Cloudflare also broadly argues without explanation in its Motion that "the '431 patent fails, as it does not disclose the invention of any of the independent claims as a whole, and *a fortiori*, fails to disclose their dependent claims." Dkt. 30 at 9.  Cloudflare is wrong.  As described in detail in the Ng Declaration, a POSITA "would understand from reading the specification of the '431 patent that the inventor possessed the inventions claimed in Claims 8 and 10-18" as well as Claims 19-21 and 23-29.  Ng Decl., at ¶¶ 50-78.

At the very least, the well-supported opinions of Dr. Ng show there is a triable issue of fact as to whether the '431 patent's specification would have been understood by a POSITA as disclosing the inventions claimed in independent claims 1, 10, and 19 and the limitations therein. Cloudflare's Motion should therefore be denied.

### B.    Cloudflare's Expert's Opinions Are Unsupported

In contrast to Dr. Ng's declaration, which explains the basis for his conclusion that a POSITA would have understood the inventor was in possession of the inventions disclosed in independent claims 1, 10, and 19 of the '431 patent and the limitations therein, Cloudflare's expert's testimony is conclusory and based on an incorrect legal standard. As such, the Min Declaration submitted by Cloudflare "cannot raise triable issues of material fact on summary judgment." *See Printeron Inc. v. Breezyprint Corp.*, 93 F. Supp. 3d 658, 698 (S.D. Tex. 2015) ("conclusory expert declarations devoid of facts upon which the conclusions were reached fail to raise a genuine issue of material fact") (internal quotations and citation omitted).

More specifically, the Min Declaration is replete with conclusions unsupported by any facts or analysis. For example, Min opines that "[i]t is the understanding of a POSA, after review of the '431 patent specification, that there is no disclosure or description within the '431 patent of claim 1 as an integrated whole in the '431 patent specification (or an equivalent description of the claimed subject matter as an integrated whole)." Dkt. 30-5 ("Min Decl."), at ¶ 51. There is no explanation in the Min Declaration concerning why that would supposedly be the understanding of a POSITA. The Min Declaration makes similarly unsupported conclusions regarding independent claim 1's limitations, independent claim 10 and its limitations, and independent claim 19 and its limitations. *Id.* at ¶¶ 52-56. These conclusory opinions are entitled to no weight. *See Printeron Inc.*, 93 F. Supp. 3d at 698.

Moreover, Dr. Min's deposition testimony makes clear that in arriving at the conclusions in his declaration, he applied the legal standard for enablement rather than written description even though "Section 112 sets out separate requirements for written description and enablement." *Noven Pharm. v. Amneal Pharm. LLC*, 2020 U.S. Dist. LEXIS 258397, at *63 (D. Del. Sep. 2, 2020) (citing *Ariad Pharm.*, 598 F.3d at 1344). "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). *See also Noven Pharm.*, 2020 U.S. Dist. LEXIS 258397, at *64-65

("Although 'a specification need not disclose what is well known in the art,' '[t]ossing out the mere germ of an idea does not constitute enabling disclosure.'") (citations omitted).  In contrast, the "written description requirement does not demand either examples or an actual reduction to practice; a ***constructive reduction to practice*** that in a definite way identifies the claimed invention can satisfy the written description requirement."  *Id.* at *66 (emphasis added) (citation omitted).  "[C]onstructive reduction to practice occurs when a patent application on the claimed invention is filed."  *Cassidian Communs., Inc. v. Microdata GIS, Inc.*, Civil Action No. 2:12-cv-00162-JRG, 2014 U.S. Dist. LEXIS 110133, at *22 (E.D. Tex. Aug. 8, 2014).

Despite the fact that there are separate explicit requirements for written description and enablement, and Cloudflare only moved with respect to written description, Cloudflare's expert appears to have grafted an enablement requirement onto his written description analysis.  Because of this error, the Min Declaration should not be considered and cannot create a material issue of fact.  Indeed, Min testified that the at-issue claims of the '431 patent supposedly lack written description support because, in his view, "there's no proof that the inventors, in this case he, truly made the claimed invention.  It just describes what the invention is."  Ex. 1 at 106:18-107:1.  But describing what the invention is *constitutes* written description.  In other words, Min faults the inventor for allegedly not actually reducing the claimed invention to practice at the time of filing.  Min has no proof of a lack of actual reduction to practice, but even assuming for the sake of argument that he did, that is not the proper standard to be applied to a written description analysis.  As the case law makes abundantly clear, the "written description requirement does not demand either examples or an actual reduction to practice …."  *Noven Pharm.*, 2020 U.S. Dist. LEXIS 258397, at *66.  Rather, constructive reduction to practice, which occurs when a patent application on the claimed invention is filed suffices.  *Id.*  For this reason too, the Min Declaration is insufficient to create a triable issue of fact.  Even if it were, given the conflicting testimony of Dr. Ng, which is actually supported by explanation, summary judgment would be improper here, and Cloudflare's Motion should be denied.

**C.    In The Alternative, There Is At Least A Triable Issue Regarding Whether The At-Issue Claims And Their Limitations Are Inherently Disclosed**

As explained above, the '431 patent's specification actually discloses the inventions recited in the at-issue claims.  But it is also the case that a patent's written description can inherently, as opposed to explicitly, disclose a claim or claim element.  *Automated Bus. Cos. v. WebEx Communs., Inc.*, 712 F. Supp. 2d 608, 624 (S.D. Tex. 2010) (citing *PowerOasis, Inc.*, 522 F.3d at 1306).  "'In order for a disclosure to be inherent, 'the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure.'" *Id.* (citation omitted).

*Automated Bus. Cos. v. WebEx Communs., Inc.*, is instructive.  The court denied the defendant's motion for summary judgment of patent invalidity based on an alleged lack of written description after finding there was a triable issue of fact regarding whether the patent-in-suit inherently disclosed a critical element of the claims.  The challenged claims incorporated the term "website" and the website "play[ed] a central role in the patent claims as the intermediate element between the remote computer unit and the local interface unit, and as the element in the system that validate[d] logon commands."  712 F. Supp. 2d at 624.  The patent "issued … with each claim disclosing a 'website' but without any explicit description of a website in the specifications."  *Id.* at 625.  The patentee's expert opined that even though the specification did not mention a "website," the use of a website would have been apparent to a POSITA and a POSITA would "not require a detailed description of a website."  *Id.*  In contrast, the defendant's expert opined that the "specifications d[id] not necessarily disclose the use of a website as the intermediate element in the invention."  *Id.*  The court found that it was "highly debatable" whether the specification of the patent-in-suit "necessarily disclose[d] the use of a website as the crucial intermediate element in the claimed remote computing system …."  *Id.* at 627.  But what "matter[ed], though, [wa]s that the question [wa]s debatable."  *Id.*  Consequently, the court denied the defendant's summary judgment motion since it did not establish by clear and convincing evidence that no reasonable finder of fact could return a verdict for the patentee on the written description issue.

Here, as explained above, the focus of Cloudflare's Motion is on the supposed lack of disclosure in the '431 patent of "buffers" and "using the buffer for damping jitter associated with the microflow." Cloudflare's entire motion boils down to its objection that the patentee used different language in the specification and the claim limitations to identify the same concepts— *i.e.*, a "storage block table" instead of "buffer" and "delay variation" instead of "jitter." As discussed above, the patentee was entitled to use the language of his choosing in describing the invention, and Dr. Ng lays out in detail not only *that* "those having ordinary skill in the art [would know] . . . the inventor had possession of the claimed subject matter as of April 19, 2000," Dr. Ng explains *why*. Ng Decl. at ¶ 36. Therefore, the '431 patent expressly satisfies the § 112 ¶ 1's written description requirement.

However, even assuming *arguendo* Cloudflare could succeed in convincing the Court that one or more of these limitations were not expressly disclosed by the '431 patent's specification, there would be a triable issue regarding whether they are inherently disclosed. To start, given that the at-issue claims recite "determining a capacity of ***a buffer*** containing a microflow based on a characteristic," the '431 patent necessarily discloses the use of a buffer as part of the claimed inventions. *See, e.g.*, '431 Patent at 9:45-46 ("The packet discard time limit ('D') value 315 is used to ensure buffer availability within the switch 220.") (emphasis added). Moreover, with respect to "using the buffer for damping jitter associated with the microflow," the '431 patent's description of a switch that "ensure[s] that the delay variation is small for micro-flows" necessarily discloses dampening jitter—i.e., ensuring delay variation (jitter) is small by reducing (dampening) it. *See* '431 Patent, at 10:53-54.

Accordingly, there is at least a triable issue of fact as to whether the limitations of the '431 patent Cloudflare's Motion focuses on are inherently disclosed such that summary judgment would be inappropriate.

## V.  IN THE ALTERNATIVE, INDEPENDENT CLAIMS 1, 10, AND 19 OF THE '431 PATENT ARE SUPPORTED BY THE APPLICATION UNDERLYING THE '431 PATENT, WHICH CONTAINS THE SAME CLAIMS

As explained above, there is, at a minimum, a disputed question of fact as to whether the specification of the '431 patent discloses, either explicitly or inherently, that the inventor possessed the claimed inventions at the time of filing.  Moreover, although Cloudflare ignores controlling law, it is well settled that "[o]riginal claims are part of the specification and in many cases will satisfy the written description requirement."  *Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011).  *See also Ebay Inc. v. IDT Corp.*, 2009 U.S. Dist. LEXIS 138768, at *87 (W.D. Ark. Oct. 15, 2009) ("It is well-settled that original claims presented with an application are part of the original disclosure for purposes of the written description and enablement requirements of § 112(1).").  As explained below, the original claims of the application underlying the '431 patent demonstrate the named inventor possessed the inventions recited in claims 1, 10, and 19 of the '431 patent so as to satisfy the written description requirement.  For this reason too, Cloudflare's Motion should be denied.

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), is on point. There, each asserted claim of the at-issue patent "require[d] that 'the signal routing clock is independent of the first clock signal and second clock signal.'"  851 F.3d at 1296.  The district court granted summary judgment, finding the patent invalid for lack of written description. According to the district court, "the specification d[id] not demonstrate possession of the unqualifiedly independent clocking that the asserted claims require …."  *Id.*  In reversing, the Federal Circuit explained that "[t]he very language of claim 1 which the court held was not supported by the specification was present in the originally-filed claims."  *Id.* at 1297.  "Original claim 1 recite[d] 'one or more signal routing clock signals which are independent of the first and second clock signals.'"  *Id.*  The Federal Circuit thus held that the "original claim language clearly demonstrate[d] that the inventor possessed an invention including 'one or more signal routing clock signals which are independent of the first and second clock signals' and described it."  *Id.*

Numerous other federal cases and decisions of the Patent Trial and Appeal Board ("PTAB") similarly hold the written description requirement is satisfied where a patent's claims were included as original claims in a filed patent application.[4]  *See, e.g.*, *Perdiemco v. IndusTrack LLC*, 2016 U.S. Dist. LEXIS 156289, at *10-12 (after faulting the defendant for failing to address the patents' original claims "or their contribution to the written description" of the at-issue patents, the district court found that the patent applications included claims reciting various functions and based on those original claims, a person of ordinary skill in the art would have understood that the inventors had possession of the claimed inventions at the time of filing); *Mfg. Res. Int'l v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 575 (D. Del. 2019) (denying defendants' motion for summary judgment of lack of written description because "the very language that Defendants allege[d] [wa]s 'not supported by the specification was present in the originally-filed claims' and '[t]he claims at issue in this case [we]re indistinguishable from other cases relying on originally-filed claims to satisfy the written description requirement.'") (citation omitted); *Ex parte Ismagilov*, Appeal 2019-004109, at 5 (PTAB May 13, 2020) (reversing the patent examiner's rejection of claims for lack of adequate written description because "the originally-filed claims satisf[ied] the written description requirement for the disputed language.").

Cloudflare argues the '431 patent is supposedly invalid for lack of written description, but in so arguing, Cloudflare "does not address the[] original claims or their contribution to the written description" of the '431 patent.[5]  *See Perdiemco*, 2016 U.S. Dist. LEXIS 156289, at *10.  The

---

[4] There is a limited exception to this rule that does not apply here.  *See Ariad Pharm., Inc.*, 598 F.3d at 1349 ("Although many original claims will satisfy the written description requirement, certain claims may not.  For example, a generic claim may define the boundaries of a vast genus of chemical compounds, and yet the question may still remain whether the specification, including original claim language, demonstrates that the applicant has invented species sufficient to support a claim to a genus.").  There is no such genus-species issue here, and Cloudflare has not argued and cannot argue otherwise.

[5] Indeed, Cloudflare's expert admitted he did not review the application underlying the '431 patent in performing his analysis.  Instead, he simply reviewed the text and figures contained in the '431 patent as issued and compared them to the claims of the '431 patent.  *See* Ex. 1 at 92:21-93:22 (Cloudflare's expert explaining his "understanding [that] … the claims and specification are two different things" and that compared just the '431 patent specification to the claims in his written description analysis).

examiner allowed the application underlying the '431 patent without any office actions.  The examiner explained that the cited "prior art fails to teach a combination of a buffer containing a microflow based on a characteristic; assigning an acceptable threshold value for the capacity of the buffer over a predetermined period of time; delegating a portion of available bandwidth in the network to the microflow; and using the buffer for damping jitter associated with the microflow" (i.e., the limitations of claim 1)."  Ex. 2 at 2.

More specifically, Cloudflare argues that "[f]or independent claims 1 and 10, there is no description in the specification of a method for managing data traffic that (in short) includes a buffer containing a microflow, determining a capacity of the buffer, assigning a threshold for the buffer capacity, delegating a portion of available bandwidth to the microflow, and using the buffer for damping jitter associated with the microflow."  Mot. at 6 (citing '431 patent, cls. 1, 10) (emphasis in Motion).  But in the application underlying the '431 patent, claim 1 recited: "A method for managing data traffic through a network, the data traffic comprised of a plurality of microflows, the method comprising: ***determining a capacity of a buffer*** containing a microflow based on a characteristic; ***assigning an acceptable threshold value for the capacity of the buffer*** over a predetermined period of time; ***delegating a portion of available bandwidth*** in the network ***to the microflow***; and ***using the buffer for damping jitter associated with the microflow***."  Ex. 3 at 32 (emphasis added).  Claim 1 of the '431 patent contains the same limitations.  '431 patent, cl. 1.  *See also* Ex. 1 at 114:7-115:22 (Cloudflare's expert agreeing that each of the limitations of Claim 1 is included in the original claims of the application leading to the '431 patent).  Original claim 1 is "part of the original specification" for the '431 patent and satisfies "the written description requirement."  *See Mentor Graphics Corp.*, 851 F.3d at 1297.

The same is true for independent claim 10.  *Compare* Ex. 3 at 33 *with* '431 patent, cl. 10.  *See also* Ex. 1 at 116:1-117:10 (Cloudflare's expert agreeing that each of the limitations of Claim 10 is included in the original claims of the application leading to the '431 patent).  The same is also true for independent claim 19.  *Compare* Ex. 3 at 34 *with* '431 patent, cl. 19.  *See also* Ex. 1 at 117:11-118:13 (Cloudflare's expert agreeing each of the limitations of Claim 19 is included in

the original claims of the application leading to the '431 patent).  Because each of the limitations of the claims of the '431 patent were included in the original filing of the application leading to the '431 patent, at a minimum, the written description requirement was satisfied as of the date that application was filed—December 6, 2001.  *See Mentor Graphics Corp.*, 851 F.3d at 1297.

Not surprisingly, Cloudflare's cited cases are inapposite.  For example, in *Novozymes A/S v. Dupont Nutrition Biosciences APS*, 723 F.3d 1336, 1346 (Fed. Cir. 2013), a case involving a biotechnology patent claiming particular enzymes, the Federal Circuit affirmed a grant of judgment as a matter of law based on a lack of written description where, unlike here, the "patent's written description disclosed certain subject matter in terms of a broad genus but its claims specified a particular subgenus or species contained therein."  There was also no question in *Novozymes* that the originally-filed claims "did not point out the specific variants [of enzymes] later claimed" in the patent-in-suit.  *Id.* at 1343.

Contrary to Cloudflare's argument, the prosecution history makes clear that the inventor possessed the claimed invention as of the filing date of the application leading to the '431 patent, which included the usage of a buffer for 'damping jitter' by determining a capacity of the buffer, assigning a threshold value for the capacity of the buffer, and delegating a portion of the network's bandwidth to the microflow in the buffer at the time of filing.  That is, even if Cloudflare could persuade the Court that the specification in U.S. Patent Appl. No. 09/552,278 ("'278 application"), which is the application the '431 patent claims priority to, does not satisfy the written description requirement for the claims of the '431 patent, the consequence would be that Sable would lose the benefit of the '278 application's priority date—not invalidation of the '431 patent's claims.  *See Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000) ("[C]laims to subject matter in a later-filed application not supported by an ancestor application in terms of § 112 P1 *are not invalidated*; they simply do not receive the benefit of the earlier application's filing date.") (emphasis added) (citation omitted).

The figures and description of the '278 application is "substantively identical" to the figures and description of the '431 patent.  Ng Decl. at ¶ 38.  Therefore, for the reasons discussed

in Section IV above, the '431 patent satisfies the written description requirement *and* is entitled to the '278 application's priority date of April 19, 2000.  However, as *Reiffin* makes clear, even if the '278 application is found not to satisfy the written description requirement, the consequence would be a loss of the '278 application's priority date, not invalidation.  And as the *Mentor Graphics* case and its progeny hold, the original, unamended claims of the '431 patent show that, at an absolute minimum, the written description requirement is satisfied as of December 6, 2001—the date on which the application (along with the original claims) leading to the '431 patent was filed.

Accordingly, even assuming, *arguendo*, that the descriptive part of the specification of the '431 patent lacked disclosure that would have conveyed to a POSITA that the inventor possessed the claimed inventions, it is undisputed that the inventor possessed the inventions as of the time of filing of the application underlying the '431 patent, as evidenced by the original claims in that application.  For this reason too, Cloudflare's Motion should be denied.

## VI.  CLOUDFLARE'S MOTION IS PROCEDURALLY IMPROPER

Cloudflare's Motion should be denied because Cloudflare has failed to carry its heavy burden of establishing by clear and convincing evidence that the '431 patent is invalid for alleged lack of written description.  However, to the extent the Court finds otherwise, the Motion should be denied, or at least deferred, for the alternative reason that Sable has not had a full and fair opportunity to respond to the Motion, as fact discovery is not yet open in this case.

Rule 56(d) provides that the Court can deny a summary judgment motion, or at least defer it.  Fed. R. Civ. P. 56(d).  This rule is "designed to safeguard against a premature or improvident grant of summary judgment."  *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).  *See also Parakkavetty v. Indus. Int'l, Inc.*, 2004 U.S. Dist. LEXIS 2012, at *3 (N.D. Tex. Feb. 12, 2004) ("The Rule is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions.").

Cloudflare's Motion, filed on the same day as its opening claim construction brief, is premature.  Pursuant to the Court's October 8, 2021 Standing Order Governing Proceedings—Patent Cases, "[e]xcept with regard to venue, jurisdictional, and claim construction-related

discovery, ***all other discovery shall be stayed until after the Markman hearing***.”  Dkt. 27, at 2 (emphasis added).  The *Markman* hearing is currently scheduled for January 12, 2022, and the parties are in the midst of claim construction briefing.[6]  Therefore, fact discovery is currently stayed.  Accordingly, for this alternative reason, the Court should deny or defer Cloudflare’s Motion to allow Sable a full and fair opportunity to take relevant discovery.

VII.    CONCLUSION

For the foregoing reasons, Cloudflare’s Motion should be denied.

---

[6] That the parties are in the middle of claim construction briefing underscores the prematurity of Cloudflare’s Motion.  *See Ferring B.V. v. Serenity Pharm., LLC*, 2019 U.S. Dist. LEXIS 71019, at *12 (S.D.N.Y. Apr. 22, 2019) (“A district court must base its analysis of written description under Section 112 on proper claim construction.”).

Dated:  December 6, 2021

Respectfully submitted,


/s/  Daniel P. Hipskind
Elizabeth L. DeRieux
TX Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email:  ederieux@capshawlaw.com

Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
BERGER & HIPSKIND LLP
9538 Brighton Way, Suite 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Sable Networks, Inc. and
Sable IP, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this December 6, 2021 with a copy of this document via the Court's CM/ECF System.

/s/ Daniel P. Hipskind

Daniel P. Hipskind