# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS WACO DIVISION

| | |
|---|---|
| **Sable Networks, Inc. and Sable IP, LLC,**<br><br>　　　　**Plaintiffs,**<br><br>　　　v.<br><br>**Cloudflare, Inc.,**<br><br>　　　　**Defendant.** | **Civil Action No. 6:21-cv-00261-ADA**<br><br>**JURY TRIAL DEMANDED** |

## CLOUDFLARE, INC'S REPLY CLAIM CONSTRUCTION BRIEF

**CHARHON CALLAHAN ROBSON & GARZA, PLLC**

STEVEN CALLAHAN
CHRISTOPHER T. BOVENKAMP
ANTHONY M. GARZA
C. LUKE NELSON
JOHN HEUTON

*Counsel for Defendant Cloudflare, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

UPDATED STATEMENT OF AGREED CONSTRUCTIONS ...................................................... 1

ARGUMENT .................................................................................................................................... 2

    I.   The '431 Patent ................................................................................................................. 2

       1.   Based on a characteristic (1, 10) ........................................................................................ 2

       2.   Means for determining a capacity of a buffer containing a microflow based on a characteristic (10) ............................................................................................................... 2

       3.   Weighting factor (16, 19-22, 25, 26) .................................................................................. 4

       4.   Preamble (19) ...................................................................................................................... 5

       5.   A delay variation substructure configured to provide a buffer value to dampen jitter in a transmission of the microflow (19) ..................................................................................... 6

       6.   The predetermined value for the microflow timeout period substructure comprises is less than 32 seconds (29) ............................................................................................................ 7

    II.   The '932 Patent ................................................................................................................. 8

       1.   Aggregate flow block (1, 6, 9, 10, 24, 25, 26, 29, 32) ........................................................ 8

       2.   Preamble (9, 24) .................................................................................................................. 9

    III.   The '919 Patent ............................................................................................................... 10

       1.   Aggregate flow (25, 26) ................................................................................................... 10

       2.   Label switched path(s) (26, 27) ........................................................................................ 10

    IV.   The '593 Patent ............................................................................................................... 12

       1.   Undesirable behavior (1-5, 9, 25, 29) & Badness factor (9, 29) ....................................... 12

       2.   Based at least partially upon the set of behavioral statistics (4, 5, 9, 25, 29) ................... 14

CONCLUSION ............................................................................................................................... 15

## INTRODUCTION

Briefing of the parties' respective claim construction positions has eliminated some disputes between the parties; however, significant disputes remain. For each of the remaining disputes, Sable's positions are not well taken. Indicative of the technical merit of Sable's positions is the little time Sable's expert Dr. T.S. Eugene Ng spent on this case—"[p]robably around 10 hours"—despite submitting opinions on four different patents in two lengthy declarations. Moreover importantly, rather than join issue on the key points raised in Cloudflare's briefing, Sable chose to repeatedly ignore the most relevant arguments. The Court should reject Sable's attempt to blur the scope of its patents and, as appropriate, invalidate or provide the jury well-defined boundaries on the scope of the claimed inventions.

## UPDATED STATEMENT OF AGREED CONSTRUCTIONS

In Sable's Response Brief, Sable indicated its agreement to Cloudflare's proposed constructions of "microflow" and "micro-flow" (the '431, '932, and '919 patents),[1] "flow state information" (the '932 patent),[2] and "packet discard time" (the '431 patent). Sable Resp. Br. at 3. In addition, Sable dropped claim 22 of the '431 patent in response to Cloudflare's indefiniteness challenge. *Id.* at 11. Cloudflare has indicated its agreement to Sable's "tunnel identifier" (the '932 patent) construction, and has proposed compromise constructions (based on Sable's expert's testimony) to the terms "aggregate flow" (the '919 patent) and "aggregate flow block" (the '932 patent).

---

[1] Cloudflare assumes Sable is adopting Sable's description of the plain and ordinary meaning of "microflow" as set forth in Sable's preliminary responses filed in the relevant '431, '932, and '919 IPRs.
[2] Cloudflare assumes Sable is adopting Sable's description of the plain and ordinary meaning of "flow state information" as set forth in Sable's Preliminary Response filed in the '932 IPR.

1

# ARGUMENT

## I.     The '431 Patent

### 1.     Based on a characteristic (1, 10)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Based on a characteristic associated with the microflow | Term does not require construction; plain and ordinary meaning |

Cloudflare, Cloudflare's expert Dr. Min, and Sable's expert Dr. Ng all agree that "based on a characteristic" means "based on a characteristic associated with the microflow." In fact, Dr. Ng expressly opined that the term means "based on the QoS descriptors associated with that microflow"—i.e., the microflow recited in the claim phrase "determining a capacity of a buffer containing a microflow based on a characteristic." ECF Nos. 34-1 & 35, Ng CC Dec. ¶ 42; *see also* Ex. 18, Ng MSJ Dec.[3] ¶ 54 (same). Accordingly, because "based on a characteristic" without clarification is overbroad and Sable's own expert agrees, Cloudflare requests construction of this phrase as "based on a characteristic associated with the microflow."

### 2.     Means for determining a capacity of a buffer containing a microflow based on a characteristic (10)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Indefinite<br><br>As to the proper function, *see supra* construction of "based on a characteristic" | **Function:** determining a capacity of a buffer containing a microflow based on a characteristic.<br><br>**Structure:** ingress micro-flow manager 505 (including the micro-flow recognizer 520 and micro-flow classifier 530), memory 550 (including the storage block table 560 and flow block table 570), linecard 410, and equivalents thereof. See cols. 13:11-14:46, and associated Figures. |

---

[3] All numbered exhibits hereto are attached either to the opening Declaration (ECF No. 29-1, Exs. 1-17) or reply Declaration (Exs. 18-19) of C. Luke Nelson.

Claim 10 is indefinite because there is no structure in the specification of the '431 patent corresponding to the function of "determining a capacity of a buffer containing a microflow based on a characteristic [associated with the microflow]." Cloudflare presented evidence that the specification includes no structure whatsoever corresponding to the claimed function. *See* ECF No. 29, Opening Br. at 11-12; ECF No. 29-18, Min Dec. ¶¶ 43-46.

Sable attempts to identify corresponding structure using a two-step argument: First, Sable argues the "micro-flow recognizer 520 and micro-flow classifier 530" "reserve sufficient capacity in the buffer . . . to accommodate the GR microflow."[4] ECF No. 34, Resp. Br. at 6 (quoting Ng CC Dec. ¶ 41). Second, Sable assumes that <u>reserving sufficient capacity in</u> a buffer is the same as <u>determining a capacity of</u> a buffer. *Id.* (quoting/citing Ng CC Dec. ¶¶ 41, 45). Dr. Ng's deposition testimony shows Sable's argument fails entirely at this second step, because he expressly admitted that reserving sufficient capacity in a buffer is something different than determining a capacity of a buffer. Ex. 19, Ng Dep. at 81:16-22.

And, even if we ignore Dr. Ng's testimony, Sable's argument fails at the first step because Sable has not identified any structure corresponding to the supposed "reserve[s] sufficient capacity" function—for that Dr. Ng looks outside the specification, to what he says a POSA would "understand" "would be required" "[t]o provide a guaranteed rate for a microflow." Ng CC Dec. ¶¶ 40-41. Sable is therefore inferring an (undisclosed) structure to do *one* thing (guarantee a rate), which a POSA would supposedly know requires doing *another* thing (reserving sufficient capacity in a buffer), to try to show a *third* thing that is admittedly different (determining a capacity of a

---

[4] Dr. Ng identifies "storage block table 560" to be the "buffer" of the '431 patent claims. ECF No. 36-1, Ng MSJ Dec. ¶¶ 39-40; Ng Dep. at 94:19-24. While Cloudflare disagrees, Cloudflare assumes for purposes of this brief that the claimed "buffer" is the specification's "storage block table 560."

3

buffer). That approach fails to demonstrate any structure in the specification for "determining a capacity of a buffer."

The ultimate reason for this failure is simple: there is no structure recited in the specification for determining a capacity of a buffer containing a microflow or any equivalent:

> Q. (By Mr. Bovenkamp) Are there words in the specification that describe explicitly the determination of a capacity of any buffer by either of those two components [the micro-flow recognizer and micro-flow classifier]?
>
> A. Those words are not found in the patent.
>
> Q. (By Mr. Bovenkamp) I'm sorry. Say that again.
>
> A. I believe those words that you recited just now are not in the patent.
>
> Q. Are equivalent words for "determining a capacity of a buffer" by either of those two components found anywhere explicitly in the patent?
>
> A. It's not explicitly in the patent.

Ng Dep. at 111:3-112:1.[5] The Court should find the claim term "means for determining a capacity of a buffer containing a microflow based on a characteristic" indefinite.

### 3. Weighting factor (16, 19-22, 25, 26)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Factor indicating the portion of available rate bandwidth to be delegated to the micro-flow compared to other micro-flows | The portion of an available rate a micro-flow is able to be delegated as compared to other micro-flows |

The dispute between the parties remains whether a reason exists to depart from a previously agreed construction Sable proposed in *Cisco* (and which Cloudflare proposes now). Sable's new construction does not match the patent, as Dr. Ng's declaration ineffectively tries to dispute. Ng CC Dec. ¶¶ 46-48 (noting that the patent says "how much of a portion," and that Sable's construction says "the portion," but nevertheless arguing Sable has not changed the wording from

---

[5] In quotations in this brief, objections have been omitted.

one phrase to the other). The Court should construe "weighting factor" as agreed by Sable in *Cisco* and proposed here by Cloudflare in accordance with the plain language of the specification.

### 4.  Preamble (19)[6]

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Claim 19's preamble is limiting | Claim 19's preamble is not limiting |

Sable asserts that "the preamble is not a claim limitation of claim 19," but ignores Cloudflare's point that the preamble plainly provides necessary antecedent support both for "the network" and "the plurality of microflows" in the body of the claim. Resp. Br. at 7-9. For these reasons, and as discussed below, it is undisputed that the preamble of claim 19 recites essential structure for the body of the claim—and the preamble is therefore limiting. *See Shoes by Firebug LLC v. Stride Rite Children's Group*, *LLC*, 962 F.3d 1362, 1367 (Fed. Cir. 2020); Opening Br. at 4-5 (and other authority cited therein).

Sable's expert Dr. Ng agrees. Dr. Ng points expressly to what he calls "the microflow classification data structure" of claim 19 and asserts "[a] POSITA would readily understand that claim 19 is describing the constituent parts of an <u>overarching data structure</u>." Ng CC Dec. ¶¶ 59-61. In the context of the '431 MSJ, Dr. Ng. makes clear that the "substructure[s]" claimed in the body of claim 19 must be "within the microflow classification data structure" of the preamble. Ng MSJ Dec. ¶¶ 77-78 (identifying the "substructure[s]" as being values within the "QoS field 310" of the '431 specification). And Dr. Ng confirmed the importance of claim 19's preamble, including the preamble's requirement of "[d]etermining the data traffic type" at his deposition:

> Q. Does claim 19 -- does it do anything?
> A. So it talks about determined data traffic type.

---

[6] Cloudflare inadvertently placed this term out-of-order in its Opening Brief. Cloudflare apologizes for any inconvenience caused by the error.

*\*\*\**

> Q. (By Mr. Bovenkamp) Well, all I'm asking is your understanding of what the claim covers and as it relates to what's described in the specification. So I will reask the question, maybe. Does claim 19 require anything to be done with the claimed data structure.
>
> A. In my opinion a POSITA would understand that classification is something that has to be performed. You know, determining the data traffic type is also something that needs to be performed.

Ng Dep. at 171:24-173:5. "[D]eterming the data traffic type"—which needs to be "performed" per Dr. Ng—is recited only in the preamble.[7] It must, therefore, be limiting. *See Shoes by Firebug*, 962 F.3d at 1365-68.

**5.     A delay variation substructure configured to provide a buffer value to dampen jitter in a transmission of the microflow (19)**

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Indefinite | Term does not require construction; plain and ordinary meaning |

Neither "substructure" nor "delay variation substructure" have any reasonably well understood meaning in the art. ECF No. 29-18, Min Dec. ¶¶ 47-54. "What is important is that the term, as the name for structure, has a reasonably well understood meaning in the art." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-49 (Fed. Cir. 2015). Sable and Dr. Ng argue that "substructure" should be interpreted to mean "substructure[] of a data structure," Resp. Br. at 9-10, but fail to proffer any evidence that the term "substructure" has a reasonably well understood meaning in the art (as a "substructure of a data structure" or otherwise). Because in fact, it does not. *See* Min Dec. ¶¶ 47-54.

---

[7] "19. In a network management system for controlling data traffic through a network, the data traffic comprised of a plurality of microflows, a microflow classification structure to determine data traffic type comprising: . . ." '431 patent at claim 19.

6

Sable's citations to various caselaw and unreported orders about "data structures" are not apposite, because claim 19 does not recite a "data structure." To make this argument Sable has to rewrite the claim language from "substructure" to "data structure." This proves Cloudflare's point that "substructure" is not a sufficiently definite name for structure. Moreover, Sable's citation to *Huawei Techs. Co. Ltd. v. Verizon Communications, Inc.*, 20-CV-030, 2021 WL 150442 (E.D. Tex. Jan. 15, 2021) does not support Sable's proposition that "[s]tructures 'configured to' . . . perform a function . . . does not implicate § 112." Resp. Br. at 10. *Huawei Techs.* did not consider the impact of "configured to" on a means-plus-function determination, because the "configured to" limitations there were not asserted to be § 112 ¶ 6 limitations. 2021 WL 150442 at *1, *17-20. And contra Sable, *Huawei Techs.* looked to *Typhoon Touch Techs. v. Dell, Inc.*, 659 F.3d 1376, 1379-80 (Fed. Cir. 2011) and *Nazomi Communs., Inc. v. Nokia Corp.*, 739 F.3d 1339, 1343-44 (Fed. Cir. 2014) for instruction on "a structural claim element that is defined by the function it performs." *Id.* at *19-20. That is, *Huawei Techs.* simply reinforces Cloudflare's point that "configured to" in claim 19 is functional language that modifies the nonce word "substructure." *See* Opening Br. at 14-15; *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1006 (Fed. Cir. 2021) ("[T]he purely functional claim language reciting what the 'user identification module' is configured to do provides no structure.").

Accordingly, the Court should construe "a delay variation substructure configured to provide a buffer value to dampen jitter in a transmission of the microflow" as a means-plus-function term, which is indefinite for lack of corresponding structure.

6. **The predetermined value for the microflow timeout period substructure comprises is less than 32 seconds (29)**

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Indefinite | Term does not require construction; plain and ordinary meaning |

Sable here takes the irreconcilable and insupportable positions that the Court should "correct claim 29 by deleting 'comprises'" and also that the term does not require construction at all and should be given its "plain and ordinary" meaning. But Sable cannot truly dispute that the plain and ordinary meaning of "the microflow timeout period substructure comprises is less than 32 seconds" is nonsense. "Comprises" does not mean the same thing as "is." *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Sable offers no support (either from Dr. Ng or from caselaw) for its suggestion that "the scope of claim 29 would be identical" if either "comprises" or "is" were deleted. The Court should find "the predetermined value for the microflow timeout period substructure comprises is less than 32 seconds" to be indefinite.

**II.     The '932 Patent**

  **1.     Aggregate flow block (1, 6, 9, 10, 24, 25, 26, 29, 32)**

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| "A data structure that contains tunnel protocol-specific information for the selected network tunnel for an aggregate flow" | Term does not require construction; plain and ordinary meaning |

"Aggregate flow block" is not a term of art. Sable's expert agrees. *See* Ng Dep. at 17:6-9 ("Q: Is "aggregate flow block" a term of art? A: These are fairly generic English words, so I think they have to be understood in the context of the patent."). Sable's argument that "aggregate flow block" requires no construction and should receive its plan and ordinary meaning is without merit.

Given the number of claim construction disputes, Cloudflare has offered Sable a compromise construction of "aggregate flow block" based on the testimony of Dr. Ng when discussing the '932 patent. Many characteristics of the "aggregate flow block" are explicit in the claims. However, apart from the explicit claim language (that is not necessary to be incorporated

into a construction), Dr. Ng agreed that an "[a]ggregate flow block is a data structure" (*id.* at 22:9-18) and that "whatever tunneling protocol is being used in the '932 patent, the aggregate flow block has to have information specific to that tunneling protocol." *Id.* at 24:10-17.[8] Given the term's lack of meaning to a person of skill in the art, "aggregate flow block" should be construed to mean "a data structure that contains tunnel protocol-specific information for the selected network tunnel for an aggregate flow."

### 2. Preamble (9, 24)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| The preambles (claims 9, 24) are limiting | The preambles (claims 9, 24) are not limiting |

The preambles of claims 9 and 24 are limiting, as the term "router" provides essential structure. Without limiting the claims to a "router" the bodies of claims 9 and 24 are simply data structures unfettered to any device. Sable's counterargument is "a router," as recited in the preambles, merely states "a purpose or intended use for the invention—*i.e.*, transporting data signals in a network." *See* Sable Br. at 18. But, a "router" is not a purpose. It is a specific device and as such should be accorded meaning. *See, e.g.*, *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (holding "[a]n optical waveguide" recited in preamble was limiting because it provided the necessary structural relationship for the claimed elements); *see also MiiCs & Partners Am., Inc. v. Toshiba Corp.*, Civ. 14-CV-803, 2016 WL 4573103, at *7-8 (D. Del. Aug. 31, 2016) (finding "[a] liquid crystal display apparatus" recited in preamble was limiting because "it provides an important structural limitation, which is repeatedly underscored as important by the specification."); *Google LLC v. Sonos, Inc.*, 20-CV-03845, 2021 WL 2321952, at *14 (N.D. Cal. June 7, 2021) (finding "[a] wireless mesh network" recited in preamble was

---

[8] Despite its expert's testimony, Sable has not agreed to the compromise construction.

limiting because it recited structure and steps underscored as important by the specification). Sable attempts to distract the Court with argument about whether the term "router" also includes a "switch," but that dispute is not before the Court.

### III. The '919 Patent

#### 1. Aggregate flow (25, 26)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| A plurality of individual, but related, data flows | Term does not require construction; plain and ordinary meaning |

Like "aggregate flow block," the term "aggregate flow" is not a term of art. *See* Section II.1. Given the number of claim construction disputes, Cloudflare has offered Sable a compromise construction of "aggregate flow" based on the testimony of Dr. Ng:

> Q. (By Mr. Bovenkamp) And I just want to make sure that I understand because you testified about a port as an example. But the question is: There has to be an at least some relationship, for example, the same port or something else, in order for a plurality of individual flows to be considered an aggregate flow. Correct?
>
> A. Correct.

*Id.* at 46:13-21.[9] An "aggregate flow" is a collection of individual data flows that have some relationship. *Id.*; *see also id.* at 17:20-25 ("Aggregate is a collection. Yeah, I think that's sort of what it means."); 26:17-19; 27:2-6. An "aggregate flow" should be construed to mean "a plurality of individual, but related, data flows."

#### 2. Label switched path(s) (26, 27)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| An MPLS Layer 2 Label Switched Path (LSP) to transport one or more traffic flows over a predetermined path | A predetermined path for the transport of one or more traffic flows or packets |

---

[9] Again, despite its expert's testimony, Sable has refused to agree to this compromise.

The term "label switched path" in the '919 patent is plainly a specific reference to a path created and used in the MPLS protocol. *E.g.*, '919 patent at 1:62-64 ("[t]he basic function of MPLS is to provide a Layer 2 Label Switched Path (LSP)"). In general, Dr. Ng agreed:

> Q. Setting aside the patent, would a person of ordinary skill in the art, aside from what the patent teaches or doesn't teach – what would they understand LSP to be?
>
> A. Well, if person has never read the patent and just being asked, you know, what is label-switched path, they would probably answer something like, it's a way to identify a path through a network and the mechanism for doing so would be, you know, assigning labels to the packets so that as the packet moves through the network, a label is being consulted by the routers or switches along the way to continue to follow that path that's been determined.

Ng Dep. at 30:11-23. But, Sable and its expert ignore this well-understood meaning and take the non-credible position that a "label switched path" does not require either a label or label switching:

> Q. (By Mr. Bovenkamp) And I will tell you what seems to be missing to me [from Sable's proposed construction] is some notion that there is either a label involved or label switching. Am I wrong about that?
>
> A. No, as I said before, predetermined path could simply be a network operator configuring the forwarding table entries of the routers to set up the path, so there may not be any particular label added to the packet.

*Id.* at 36:23-37:7. Given the well-understood meaning of "label switched path," Sable's proposed construction could only be supported by clear and unambiguous lexicography by the patentee departing from the ordinary meaning. *See Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 856-57 (Fed. Cir. 2014). No such lexicography occurs in the '919 patent.

As support, Sable and its expert rely on the '919 patent at 4:49-50, but those two lines of specification text support "predetermined" as a characteristic of "label switched path" in addition to, not in lieu of, labels and label switching, reciting that "[a]dvantageously, embodiments of the present invention use predetermined LSPs to route micro-flows." And Dr. Ng's effort to avoid the

11

well-understood meaning of a label switched path as an MPLS Layer 2 LSP is contradicted by the specification language on which he claims to rely:

> The basic function of MPLS is to provide a Layer 2 Label Switched Path (LSP), which is similar to ATM, to transport one or more traffic flows over a predetermined path.

'919 patent at 1:62-64; *see also* Ng CC Dec. ¶ 104 (relying on same to argue LSPs are broader than MPLS Layer 2 LSPs in the patent). The Court should construe "label switched path" as "an MPLS Layer 2 Label Switched Path (LSP) to transport one or more traffic flows over a predetermined path."

## IV. The '593 Patent

### 1. Undesirable behavior (1-5, 9, 25, 29) & Badness factor (9, 29)

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Indefinite | Terms do not require construction; plain and ordinary meaning |

The terms "undesirable behavior" and "badness factor," one or more of which is found in each asserted claim of the '593 patent, are indefinite.[10] Consistent with Cloudflare's expert testimony, Sable acknowledges in its briefing and through its expert that neither "undesirable behavior" nor "badness factor" are terms of art. *See* ECF No. 29-19, Reddy Dec. ¶ 48; Sable Resp. Br. at 24-26; Ng Dep. at 51:8-13; 72:8-17; 73:14-74:3. Sable's expert admitted that both terms, standing alone, are subjective.

> Q. [] Would you agree that a person of ordinary skill in the art, considering the term "badness factor" without the benefit of the teaching of the patent, would not know how to interpret its scope?
>
> A. Without any help from the patent, just two words, "badness factor," hey, what do you think it means? No, the person would not be able to answer that question.

---

[10] Sable argues "Cloudflare's attempt to invalidate the '593 patent as indefinite is procedurally improper." Resp. Br. at 24. Sable is incorrect. The Court's Standing Order Governing Proceedings – Patent Cases directs that the opening *Markman* brief include any indefiniteness arguments.

> \*\*\*
>
> Q. Would you agree that POSITAs, without the benefit of the patent's teaching, would have different opinions as to what "undesirable behavior" or "behaving undesirably" means?
>
> A. . . . So it depends on the perspective of the person, yes.

Ng Dep. at 72:8-17; 73:14-74:3.

To save the '593 patent, Sable solely relies on examples from the specification to provide reasonable certainty as to the scope of each term. But, the examples provided in the patent specification also rely upon the subjective intentions of third parties.

> Q. [] In order for a computation based upon behavioral statistics to be a badness factor, what needs to be true?
>
> A. So given what I said and some of the examples I've given, I think it is related to the intention of the operator of the network, like why they are calculating that statistic.

*Id.* at 58:15-22. Sable claims that the patent identifies "undesirable" flows as having "high byte counts, relatively long life, relatively high rates, and relatively large average packet sizes." Sable Resp. Br. at 23-24, 25. But Sable's expert confirmed the subjectivity of even these items.

> Q. So is it true for these determinations of a high byte count, relatively long life, relatively high rate, relatively large average packet size, that they're subject at some level to the intention of the system administrator or operator?
>
> A. Yes, I would say so. Because these calculations are—you know, relative to the thresholds and so the thresholds are chosen by the network operator.

Ng Dep. at 61:21-62:4. In other words, even in the context of the patent, Sable's expert agreed "undesirability" is based on what the system operator decides is undesirable. *Id.* at 69:1-12.

Even if the Court credits the examples provided in the specification as providing some certainty in scope (*see*, *e.g.*, Figure 5 and 7:51-8:40), there remain two fatal issues. First, Sable proposes a "plain and ordinary" construction of both "undesirable behavior" and "badness factor." *See* Sable Resp Br. at 23. Thus, despite Sable's acknowledgement that these phrases are not terms

13

of art and must be interpreted in view of the specification, Sable has refused to limit itself in any manner. Second, Sable ignores the fact that the specification places no limits on the scope of each term: "Overall, for purposes of the present invention, the badness factor may be computed in *any desired* way, using *any desired* methodology and *any desired* criteria." '593 patent at 8:37-40; *see also id*. at 7:52-54 (same); Ng Dep. at 64:14-20.

This '593 patent language (i.e., unbounded subjective scope) distinguishes this case from the district court cases cited by Sable. *See PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 4:12-CV-00623, 2014 WL 4285786, at *20 (E.D. Ark. Aug. 29, 2014) (finding that the specification identified the "types of materials" that "resist rust" as claimed); *SEVEN Networks, LLC v. Google LLC*, 2:17-CV-441, 2018 WL 5263271, at *25-27 (E.D. Tex. Oct. 23, 2018) (finding that whether an item was on a "whitelist" provided an objective standard for determining whether an application was "not critical to user experience"); *Cirba Inc. v. VMware, Inc.*, CV 19-742, 2020 WL 5910112, at *9-10 (D. Del. Oct. 6, 2020) (finding "elucidating examples" in the specification for "user-defined threshold"). None of these cases involved a patent purporting to allow literally anything to satisfy the term at issue depending on the mindset of the operator. Instead, as acknowledged by Dr. Ng, infringement turns on the subject intent of the person configuring the system. In other words, the patent allows the exact same system to potentially infringe and not infringe depending on how the operator is thinking. Such subjectiveness has no place in patent claims.

The terms "undesirable behavior" and "badness factor" are indefinite, and Cloudflare respectfully requests the invalidation of the asserted claims of the '593 patent.

2. **Based at least partially upon the set of behavioral statistics (4, 5, 9, 25, 29)**

| Cloudflare's Proposed Construction | Sable's Proposed Construction |
|---|---|
| Based at least partially upon the set of behavioral statistics, but not any statistics associated with another flow | Term does not require construction; plain and ordinary meaning |

The dispute between the parties is whether the clear and unequivocal disclaimer made during prosecution will be given effect. The patentee, in order to overcome prior art, unambiguously stated that the claimed invention used only statistics from the flow being processed to determine its outcome. *See* Opening Br. at 32-34.

Sables correctly observes that Cloudflare's proposed construction would prohibit the consideration of statistics from flows other than the one being processed. Sable Resp. Br. at 27. But, such a limitation comes directly from the patentee. Sable next argues that Cloudflare is misunderstanding the prosecution history and the cited language is only "explanation of the claims for the examiner" or "paraphrasing of a claim limitation." *Id*. Again, this is exactly Cloudflare's point—Sable should be held to how its predecessor characterized the claims in view of the prior art. The patentee's language is not ambiguous. Lastly, Sable argues that Cloudflare is applying the disclaimer to the wrong claim term. *Id.* at 28. But, the patentee applied and re-applied these arguments across all pending claims and multiple office actions. *See* ECF No. 29-16, Ex. 15, 5/21/09 Resp. to Office Action; ECF No. 29-17, Ex. 16, 4/13/10 Resp. to Office Action at 12-17.

Cloudflare's proposed construction requires that the patentee's explicit statements be given meaning. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Because the patentee's statements are clear and unequivocal, the phrase "based at least partially upon the set of behavioral statistics" should be construed to mean "based at least partially upon the set of behavioral statistics, but not any statistics associated with another flow."

## CONCLUSION

For the foregoing reasons, the Court should adopt Cloudflare's proposed constructions.

Dated: December 16, 2021

Respectfully submitted,

*/s/* Christopher T. Bovenkamp
STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
ANTHONY M. GARZA
  Texas State Bar No. 24050644
  agarza@ccrglaw.com
C. LUKE NELSON
  Texas State Bar No. 24051107
  lnelson@ccrglaw.com
JOHN HEUTON
  jheuton@ccrglaw.com
**CHARHON CALLAHAN ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via ECF on December 16, 2021.

*/s/* C. Luke Nelson