# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS WACO DIVISION

| | |
|---|---|
| **Sable Networks, Inc. and Sable IP, LLC,**<br><br>  Plaintiffs,<br><br>  v.<br><br>**Cloudflare, Inc.,**<br><br>  Defendant. | Civil Action No.<br>6:21-cv-00261-ADA<br><br>**JURY TRIAL DEMANDED** |

## CLOUDFLARE, INC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,954,431 FOR LACK OF WRITTEN DESCRIPTION

**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**

STEVEN CALLAHAN
CHRISTOPHER T. BOVENKAMP
ANTHONY M. GARZA
C. LUKE NELSON
JOHN HEUTON

*Counsel for Defendant Cloudflare, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    A.    No "Fact Issue" Raised by Sable Is Material to the Resolution of the Motion .............. 1

    B.    The Inventions of the '431 Patent Are "Obvious" But Not Disclosed ........................... 2

    C.    Sable Cannot Show Each and Every Limitation of Independent Claims 1, 10, and 19 in the '431 Specification, Even Under Dr. Ng's Characterization .................................................. 3

        1.    Sable Does Not Identify Determining a Capacity (Claims 1/10) ................................ 3

        2.    Sable Does Not Identify a Predetermined Period of Time (Claims 1/10) .................... 4

        3.    Sable Does Not Identify Using the Buffer for Damping Jitter Associated with the Microflow or a Buffer Value to Dampen Jitter in a Transmission of the Microflow (Claims 1/10/19) ........................................................................................................................... 4

        4.    Sable Does Not Identify the Assigning, Determining, and Damping Limitations as to the *Same* Buffer, as Claimed (Claims 1/10) ............................................................................. 5

    D.    Purported "Inherent" Disclosure Cannot Save the '431 Patent ....................................... 6

    E.    The "Original" Claims (Filed Dec. 6, 2001) Cannot Save the '431 Patent .................... 7

    F.    Extrinsic Evidence and Delay Cannot Save the '431 Patent .......................................... 9

    G.    Sable's Distractions Cannot Save the '431 Patent ........................................................ 10

CONCLUSION ............................................................................................................................. 10

**INTRODUCTION**

The '431 patent is invalid for lack of written description. Cloudflare's Motion should be granted because there is neither a material fact dispute nor a "battle of the experts." Patent owner Sable and its expert—Dr. T.S. Eugene Ng—admit, *for each of the challenged claims*, that substantive limitations are not explicitly found in the specification. Instead, Sable argues each missing limitation is "obvious." This approach and Dr. Ng's repeated reliance on limitations being "obvious" dooms the '431 patent, because a "description which renders obvious the invention . . . is not sufficient." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571–72 (Fed. Cir. 1997).

None of Sable's other arguments save the '431 patent. Sable relies on the wrong "original" claims. The actual original claims of the '431 patent, to which the '431 patent claims priority, were filed on April 19, 2000 and provide no better written description support than the '431 patent specification. Sable presented no evidence that the missing limitations are inherent in the '431 patent specification, and under cross-examination Dr. Ng clearly and repeatedly described the missing limitations as "obvious," not inherent. And, the Motion is timely. Sable identified no missing evidence in its Response, and Dr. Ng confirmed he did not need any additional information.

The Motion should be granted as Cloudflare has shown, clearly and convincingly, that the '431 patent lacks written description. Nothing in the '431 patent specification evidences the inventor's possession of the claimed inventions.

**ARGUMENT**

**A.    No "Fact Issue" Raised by Sable Is Material to the Resolution of the Motion**

The '431 patent specification neither identifies a "buffer" in its description of the invention nor discusses the use of a buffer to "damp[] jitter." Mot. at 6-11. To manufacture a fact issue, Dr. Ng's opinions on these subjects stretch the limits of credibility. Dr. Ng goes so far to say that *any*

1

*storage* is a buffer including long term "archival storage." Ex. 4,[1] Ng Dep. at 92:5-25. His opinions also ignore the patentee's repeated differentiation of the term "jitter" from "delay variation." *Id.* at 134:7-138:6 ("[T]he intention of the patentee here is just to be redundant."). But the Court need not resolve these attempts to manufacture a fact dispute, because other undisputed facts clearly and convincingly demonstrate the patent's lack of written description. *See infra* §§ B, C.

B. **The Inventions of the '431 Patent Are "Obvious" But Not Disclosed**

Dr. Ng admits, for at least one limitation of each asserted independent claim, two Motion-dispositive things. First, that the specification of the '431 patent does not explicitly disclose or describe each limitation of each asserted independent claim; and second, that the missing limitation is not inherent, but only "obvious" to a POSITA:

- Determining the capacity of a buffer containing a microflow based on a characteristic (claims 1/10)—obvious but not disclosed: "A. Those words are not found in the patent." "A. I'm not aware of a particular calculation in the patent at this moment. But I think, you know, how it can be calculated would be obvious to a POSITA." *See* Ng Dep. at 110:10-112:1, 115:4-115:18.

- Assigning an acceptable threshold value for the capacity of the buffer over a predetermined period of time (claims 1/10)—obvious but not disclosed: "A. It doesn't say it in the same word[s], but in my opinion a POSITA understands that's how it can be realized." "A. The patent specification does not say that, but it's obvious to the POSITA . . . ." "A. It's not in the text; but again, I think . . . it should be obvious to the POSITA *See* Ng Dep. at 115:19-117:10, 120:7-125:24.

- Using the buffer for damping jitter associated with the microflow (claims 1/10)—obvious but no disclosure Dr. Ng can identify: "A. I'm not sure. I think it's obvious to the POSITA that a QoS scheduler would have to operate on packets that are stored in buffers." "So it seems obvious to a POSITA . . . ." *See* Ng Dep. at 132:10-133:21.

- A delay variation substructure configured to provide a buffer value to dampen jitter in a transmission of the microflow (claim 19) "So it's clear to me that within the delay variation structure there is a buffer value. You know, beyond that, you know, the specification didn't say." Ng Dep. at 170:3-21.

---

[1] Numbered exhibits hereto are attached to the opening (Exs. 1-3) or reply (Exs. 4-5) Declarations of C. Luke Nelson.

2

Dr. Ng's admissions are fatal. It is not sufficient to show obviousness; the invention itself must be disclosed in the specification. *E.g.*, *Lockwood*, 107 F.3d at 1571–72 (satisfaction of the written description requirement "does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed. It extends only to that which is disclosed. . . . One shows that one is 'in possession' of *the invention* by describing *the invention,* with all its claimed limitations, not that which makes it obvious."); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377 (Fed. Cir. 2009) (the description "must do more than merely disclose that which would render the claimed invention obvious"); *Flash-Control, LLC v. Intel Corp.*, No. 2020-cv-2141, 2021 WL 2944592, at *3-4 (Fed. Cir. July 14, 2021) (affirming this Court's summary judgment of lack of written description where patent owner, e.g., "point[ed] to items that could, with more, be the second buffer but fail[ed] to point to anything specifying that those items perform the second step of the claim," and the specification showed "buffers" but "nothing in the figures or text description . . . to indicate whether those buffers *act as the second buffer*").

### C.   Sable Cannot Show Each and Every Limitation of Independent Claims 1, 10, and 19 in the '431 Specification, Even Under Dr. Ng's Characterization

Dr. Ng testified at length about an invention he asserts is described in the specification. For example, he explained the patent discloses ingress and egress "linecards 410," each with its own "storage block table 560," and that in his view this storage block table is the "buffer" of the claims. *E.g.*, Ng Dec. ¶¶ 51-62, 64, 71, 74; Ng Dep. at 94:19-24, 96:12-15. But this does not help Sable, because even assuming (for purposes of the Motion) that "storage block table 560" is the claimed buffer, what Dr. Ng identifies is not the invention of the claims.

#### 1.   Sable Does Not Identify <u>Determining a Capacity</u> (Claims 1/10)

Sable fails to show any disclosure of <u>determining a capacity of a buffer containing a microflow based on a characteristic</u>. Dr. Ng relies instead on what he calls "reserv[ing] sufficient

3

capacity in the buffer . . . to accommodate the GR microflow." Ng Dec. ¶ 53. But Dr. Ng admits that reserving capacity is different from <u>determining a capacity</u>. Ng Dep. at 81:12-22. And in any event, even reserving capacity in a buffer is not actually disclosed in the patent either, merely "obvious." Ng Dep. at 79:15-80:13. Accordingly, claims 1 and 10 lack written description.

### 2. Sable Does Not Identify a <u>Predetermined Period of Time</u> (Claims 1/10)

Sable fails to show any disclosure supporting the <u>predetermined period of time</u> of claims 1 and 10. Dr. Ng posits that this "is a value that the network operator could decide," but admits that the '431 patent provides no disclosure at all regarding a supposed network operator's decision or anything about how or why this period of time is predetermined. *See* Ng Dep. at 125:6-125:24. Accordingly, claims 1 and 10 lack written description.

### 3. Sable Does Not Identify <u>Using the Buffer for Damping Jitter Associated with the Microflow</u> or a <u>Buffer Value to Dampen Jitter in a Transmission of the Microflow</u> (Claims 1/10/19)

Dr. Ng relies on nothing but his personal, unsupported opinion to assert that the patentee understood <u>damping jitter</u> to mean reducing "delay variation" (despite the patent's differentiation of "jitter" from "delay variation," *see supra*) and that the specification discloses "reduction of delay variation" by using "weighted fair queueing" (WFQ). *E.g.*, Ng Dec. ¶¶ 47-49, 65, 67 (citing '431 patent at 10:48-52); Ng Dep. at 133:22-136:8, 139:3-143:18. But this effort does not help Sable because even assuming (for purposes of the Motion) that the patentee intended "damping jitter" to mean reduction of delay variation and that WFQ has anything to do with jitter, Dr. Ng admitted the patent does not actually describe any embodiment using WFQ to damp jitter. Ng Dep. 155:19-160:18 ("I believe the patent doesn't say so, but again it is very obvious to the POSITA because weighted fair queueing is such a well-known algorithm . . . obvious to a POSITA."). Similarly, with regard to the <u>buffer value to dampen jitter in a transmission of the microflow</u> of claim 19, Dr. Ng admitted there is no disclosure in the specification beyond the bare fact of a buffer

4

value. Ng Dep. at 170:3-21 ("So it's clear to me that within the delay variation structure there is a buffer value. You know, beyond that, you know, the specification didn't say.").[3] Accordingly, claims 1, 10, and 19 lack written description.

### 4. Sable Does Not Identify the <u>Assigning</u>, <u>Determining</u>, and <u>Damping</u> Limitations as to the *Same* Buffer, as Claimed (Claims 1/10)

Even if the Court ignored the above elements missing from the specification, the '431 patent specification (under Dr. Ng's interpretation) still would not disclose the invention of the claims. That is because, even under Dr. Ng's identification of functionality, he admits that what he has identified is not the claimed invention.

In explaining what he contends the specification discloses, Dr. Ng divides up the functionalities of claims 1 and 10 into what he calls the "Rate Limiting Functionality" and the "Scheduling Data Transmission" functionality. He annotates the patent's Figure 4 to show this graphically:



Ng Dec ¶ 71. For the "Rate Limiting Functionality," Dr. Ng states that "storage block table 560" of an "ingress linecard 410A" performs the <u>determining a capacity of a buffer containing a micro-flow</u> and <u>assigning an acceptable threshold value for the capacity of the buffer over a predetermined period of time</u> limitations of claims 1/10. Ng dec. ¶¶ 70-74; Ng Dep. at 118:19-126:23.

---

[3] Furthermore, as the specification never discloses a "buffer value" (*see* Motion at 11), Dr. Ng is apparently referring to the language of claim 19 here for recital of a "buffer value."

Once the Rate Limiting Functionality has been performed, "the ingress linecard 410A transmits the micro-flow data packets over the fabric of the switch core 430 to the egress linecard 410C associated with the micro-flow." Ng Dec. ¶ 74 (quoting '431 patent at 11:44-49), Ng Dep. 149:6-150:23. Then for the "Scheduling Data Transmission" functionality, Dr. Ng admits it is the "storage block table 560" of the "egress linecard 410C" (not the ingress line card 410A) that performs the <u>using the buffer for damping jitter associated with the microflow</u> limitation of claims 1/10. Ng Dec. ¶¶ 65-68, 74; Ng Dep. 125:5-127:12, 131:19-132:19, 154:17-155:18.

So in essence, Dr. Ng explains the specification as disclosing the <u>determining a capacity</u> and <u>assigning an acceptable threshold value</u> limitations occurring in an ingress linecard buffer, and the <u>damping jitter</u> limitation occurring in an egress linecard buffer. But that is not the claimed invention. The claimed invention of the '431 patent plainly requires each of these limitations be performed by the *same buffer*[4]—and Dr. Ng agrees. Ng Dep. at 119:17-120:6, 131:19-132:5. He further acknowledges that the '431 patent specification does not disclose any embodiment in which the limitations of claims 1 and 10 are performed with respect to the same buffer. Ng Dep. at 126:5-127:12, 154:17-155:18.

Accordingly, there is no disclosure of the invention of claims 1 or 10 as an "integrated whole," rendering them invalid. *See* Motion at 5-6; *Flash-Control*, 2021 WL 2944592, at *3-4.

### D. Purported "Inherent" Disclosure Cannot Save the '431 Patent

Sable also argues there would be a triable issue regarding whether the limitations are "inherently disclosed," citing one sentence of Dr. Ng's conclusion as to express disclosure. Resp. at 13-14 (citing Ng Dec. ¶ 36). But Dr. Ng did not testify to any inherent disclosure in the

---

[4] The claims recite "determining a capacity of <u>a</u> buffer," "assigning an acceptable threshold . . . of <u>the</u> buffer," and "using <u>the</u> buffer for damping jitter" '431 patent claims 1, 10 (emphasis added).

specification. As discussed above he testified the missing disclosure would be "obvious" when combined with the knowledge of a POSITA, not that the disclosure was present as an inherent part of the specification.[5] Accordingly, Sable's "inherent" disclosure theory fails.

### E. The "Original" Claims (Filed Dec. 6, 2001) Cannot Save the '431 Patent

Sable alternatively tries to rely on the claims filed December 6, 2001 as if they were "original" to the specification filed April 19, 2000, the effective filing date of the '431 patent. They are not,[6] and this argument fails because written description must be evaluated as of the effective filing date, and because in any event the claims here do not provide written description support.

Sable's reliance on *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1344-46 (Fed. Cir. 2000) is misplaced. In *Reiffin*, the Federal Circuit considered a district court's determination that a 1982 specification did not support claims filed in 1990 and 1994, despite a 1990 application containing "additional text and modified claims" that undisputedly met the written description requirement. *Id.* That is not the case here, and so *Reiffin* cannot help Sable on these facts. In fact, *Edwards Lifesciences Corp. v. St. Jude Med., Inc.*, CV-00-07091, 2004 WL 5642456, at *3-4 & n.3 (C.D. Cal. June 24, 2004) explains exactly why Sable is misapplying *Reiffin*:

---

[5] Sable's reliance on *Automated Bus. Cos. v. WebEx Comms., Inc.*, 712 F. Supp. 2d 608 (S.D. Tex. 2010) here is also misplaced. The issue in that case was the single missing word "website," (the specification instead used "browser," "internet service provider," and "Web/TV"), and the expert testimony used "citations to secondary evidence" to show that the terms of the specification inherently disclosed a "website" to a POSITA. *Id.* at 625. Here, it is undisputed that entire concepts and more than a *dozen* key claim terms are missing despite Dr. Ng's attempt to match claim limitations to disclosure. *See supra*, Motion at 3-4 n.3.

[6] Sable confusingly refers to the December 6, 2001 claims as "original" claims, arguing that "at a minimum, the written description requirement was satisfied as of the date th[e '054] application was filed—December 6, 2001." Resp. at 15-19. But there is no dispute that Sable and the '431 patent itself claim an effective filing date of April 19, 2000 based on the predecessor '278 application. *E.g.*, Resp. at 2; Ng Dec. ¶ 36; *see also* Motion at 2, Ex. 1 ('431 patent) at 1. And there is no dispute that the claims at issue here were not filed until December 6, 2001. Resp. Ex. 3 (December 6, 2001 application); *see also* Hipskind Dec. ¶ 4 (regarding same). Further, the original application—the publicly-available '278 application filed April 19, 2000, to which the '431 claims priority—is attached as Exhibit 5 hereto, and reflects on its face that none of the '431 patent's claims were part of the April 19, 2000 original filing.

> Edwards' argument that *Reiffin* stands for the proposition that Edwards may claim two filing dates, a priority filing date under 35 U.S.C. § 120 and a later date for purposes of the written description requirement, is unavailing. . . . [In *Reiffin* t]he Federal Circuit held that the district court had erred because the 1990 and 1994 patents did not claim a priority filing date of 1982 and therefore the specification of the 1982 application was not relevant. *Reiffin*, 214 F.3d at 1345. The present case is distinguishable because Edwards does claim a priority date to the earlier application.

*Id.* (citing *Reiffin*, 214 F.3d at 1345)[7]; *see also Innovation Scis., LLC v. Amazon.com, Inc.*, 4:18-CV-474, 2021 WL 2075677, at *3-4 (E.D. Tex. May 24, 2021) (written description properly evaluated as of the 2006 effective filing date where the plaintiff asserted a 2007 "back up priority date," and "*Reiffin* d[id] not lead to a different conclusion"). Here, Sable claims "a priority date of April 19, 2000" based on the '278 application (Resp. at 2) but wants its later-filed claims to be considered "original" as of December 6, 2001. But just as recognized in *Edwards* and *Innovation Scis.*, the legally operative filing date for purposes of the written description requirement here is April 19, 2000—the claims filed in 2001 are not part of the patent's original disclosure and cannot help Sable. *See Edwards*, 2004 WL 5642456, at *4 n.3; *Innovation Scis.*, 2021 WL 2075677, at *3-4.

And even if the later claims here could be considered (they cannot) they do Sable no good. As per *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349 (Fed. Cir. 2010) and *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922–23 (Fed. Cir. 2004), original claims do not "identify whatever they state, e.g., a perpetual motion machine," but rather "the appearance of mere indistinct words in a specification or a claim, even an original claim, does not necessarily

---

[7] In *Edwards*, parallel to Sable's position here, the plaintiff "concede[d] that the [] patent ha[d] a priority filing date of August 2, 1991, but argue[d] that the relevant filing date for purposes of the written description requirement is May 27,1998." 2004 WL 5642456, at *3-4 & n.3. Quoting *Reiffin*, the *Edwards* court found that "[f]or the purposes of § 112 earlier specifications are relevant only when the benefit of an earlier filing date is sought under 35 U.S.C. § 120." *Id.* Accordingly, because there was no dispute that the patent had a 1991 priority filing date, "the legally operative filing date for purposes of the written description requirement is August 2, 1991, and the claims filed in 1998 shall not be considered as part of [the plaintiff's] original disclosure." *Id.*

satisfy th[e written description] requirement."[9] Sable presents no evidence (from Dr. Ng or otherwise) that the indistinct words of the claims here could somehow satisfy written description,[10] and Sable's effort to resort to non-original "original claims" is unavailing.

### F. Extrinsic Evidence and Delay Cannot Save the '431 Patent

Sable's attempt to delay the Motion by invoking Rule 56(d) simply emphasizes that the '431 patent is deficient on its face. As Sable informed Dr. Ng, the test for written description is "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." Ng. Dec. ¶ 23. Sable has the '431 specification, Dr. Ng confirmed there was nothing else he needed (Ng Dep. at 178:7-10), and in any event Sable does not proffer any "declaration that, for specified reasons, it cannot present facts essential to justify its opposition" as required under Rule 56(d). Fed. R. Civ. P. 56(d).

Moreover, Sable's suggestion that claim construction makes the Motion premature is unsupported. Sable does not identify any open claim construction questions that would impact the Motion, and to the extent of any such issues, judicial efficiency counsels for concurrent evaluation. The Motion is procedurally proper, and the Court has discretion to combine the written description and claim construction inquiries. *Flash-Control*, 2021 WL 2944592, at *3 (affirming same).

---

[9] Sable incorrectly argues that *Ariad* merely indicates an "exception" when there is a "genus-species" issue. Resp. at 16 n.4. But in fact, *Ariad* exactly counters (for any type of invention) Sable's suggestion that original claims necessarily disclose the subject matter claimed: "While it is true that original claims are part of the original specification, that truism fails to address the question whether original claim language necessarily discloses the subject matter that it claims." 598 F.3d at 1349. The *Ariad* court expressly disagreed with the plaintiff's argument "that original claims identify whatever they state, e.g., a perpetual motion machine." *Id.*; *see also Univ. of Rochester*, 358 F.3d at 922–23 ("Similarly, for example, in the nineteenth century, use of the word "automobile" would not have sufficed to describe a newly invented automobile; an inventor would need to describe what an automobile is, *viz.,* a chassis, an engine, seats, wheels on axles, etc.").

[10] For example, as discussed above, claims 1 and 10 recite a <u>predetermined period of time</u>, which Dr. Ng says "a network operator could decide," *see* Ng Dep. at 125:6-125:24, something not disclosed in the claims or in the specification. *See also infra* note 11 (the specific claims here are insufficient to show possession by the patentee).

9

### G. Sable's Distractions Cannot Save the '431 Patent

Sable also resorts to non-substantive distractions. For example, Sable incorrectly asserts "Cloudflare's expert admitted he did not review the application underlying the '431 patent in performing his analysis." Resp. at 16 n.5 (citing Resp. Ex. 1, Min Dep. at 92:21-93:22). Sable is well aware Dr. Min did, in fact, review the prosecution history (Min Dec. ¶ 3) and Sable is simply mischaracterizing Dr. Min's statement of the *analysis* he applied here—comparing the specification with the claims. Min Dep. at 92:17-22. Similarly, Sable incorrectly asserts Dr. Min "applied the legal standard for enablement rather than written description." *E.g.*, Resp. at 11 (citing Min Dep. at 106:18-107:1). Sable is again mischaracterizing an answer by Dr. Min, which actually addressed whether the bare claim language here shows *possession* (it does not), not enablement.[11]

Sable also chooses to emphasize a chronological error in one sentence of the Motion's background discussion of the related '919 patent—the '919 patent was in fact filed about a year before the '431 patent, not two days afterward.[12] But Sable ignores the substantive point here: the related '919 patent disclosed the use of "buffers" in an embodiment, where the '431 patent does not. Sable's choice to ignore the substance in favor of distraction cannot save the '431 patent.

### CONCLUSION

Cloudflare therefore respectfully requests that the Court grant the Motion.

---

[11] Sable cites to the first two sentences of this answer by Dr. Min: "Just looking at the claims as shown in page 117 of this document that we're seeing, the file history, there's no proof that the inventors, in this case he, truly made the claimed invention. It just describes what the [claimed] invention is. It doesn't -- from the claim I cannot tell you if he truly made this invention. And just stating what the [claimed] invention is does not mean that he had the possession of this invention. I just don't see it." Min Dep. at 106:18-107:5; *accord Ariad* 598 F.3d at 1349 (simply claiming something—*e.g.*, a "perpetual motion machine" does not necessarily show possession).

[12] The Motion incorrectly stated that the related '919 patent issued from an application "filed December 8, 2001—i.e., filed just two days after the '054 application (that issued as the '431 patent)." Motion at 4. The '919 patent was in fact filed December 8, 2000—i.e., filed almost exactly one year before the '054 application. Counsel for Cloudflare apologizes for the error.

10

Dated: December 27, 2021

Respectfully submitted,

*/s/* Christopher T. Bovenkamp

STEVEN CALLAHAN
 Texas State Bar No. 24053122
 scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
 Texas State Bar No. 24006877
 cbovenkamp@ccrglaw.com
ANTHONY M. GARZA
 Texas State Bar No. 24050644
 agarza@ccrglaw.com
C. LUKE NELSON
 Texas State Bar No. 24051107
 lnelson@ccrglaw.com
JOHN HEUTON
 jheuton@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via ECF on December 27, 2021.

*/s/* C. Luke Nelson