**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SABLE NETWORKS, INC. AND SABLE IP, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>CLOUDFLARE, INC.,<br><br>*Defendant.* | Civil Action No. 6:21-cv-00261-ADA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS SABLE NETWORKS, INC. AND SABLE IP, LLC'S SUR-REPLY
TO DEFENDANT CLOUDFLARE, INC.'S MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF U.S. PATENT NO. 6,954,431 FOR
<u>LACK OF WRITTEN DESCRIPTION</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. SABLE'S ALTERNATIVE ARGUMENT THAT INDEPENDENT CLAIMS 1, 10, AND 19 ARE SUPPORTED BY THE '431 PATENT APPLICATION PRECLUDES SUMMARY JUDGMENT .......... 1

III. CLOUDFLARE MISCHARACTERIZES THE TESTIMONY OF SABLE'S EXPERT .......................... 4

IV. CONCLUSION .............................................................................................................. 5

I. **INTRODUCTION**

Cloudflare dedicated several pages of its 11-page Motion arguing the "evidence will show … *the different specification on which the claims should have been drafted*" since, supposedly, "Sable's predecessor-in-interest filed an application almost simultaneously with the '431 patent application that added the material missing from the '431 patent specification." Dkt. 30 at 1. *See also id.* at 4, 8-9. Cloudflare argued its "switcheroo" theory would be "fatal to the '431 patent …." *Id.* at 1. Sable exposed this theory as false and implausible. Dkt. 36 (Sable's Opposition), at 3-4. Faced with the truth, Cloudflare abandoned the "factual" premise of its Motion, stating in a footnote on the last page of its Reply, the "Motion incorrectly stated that the related '919 patent issued from an application 'filed December 8, 2001—i.e., filed just two days after the '054 application (that issued as the '431 patent).' The '919 patent was in fact filed December 8, 2000—i.e., filed almost exactly one year before the '054 application. ***Counsel for Cloudflare apologizes for the error***." Dkt. 45 at 10 n.12 (emphasis added).

Instead of properly acknowledging its mistake and withdrawing the Motion, Cloudflare resorts to significant mischaracterizations of (1) Sable's arguments, (2) the holdings of relevant caselaw, and (3) the substance of Sable's expert's deposition testimony in a misguided effort to resuscitate its failed summary judgment motion.

II. **SABLE'S ALTERNATIVE ARGUMENT THAT INDEPENDENT CLAIMS 1, 10, AND 19 ARE SUPPORTED BY THE '431 PATENT APPLICATION PRECLUDES SUMMARY JUDGMENT**

In its Reply, Cloudflare conflates and severely mischaracterizes Sable's alternative argument that "[b]ecause each of the limitations of the claims of the '431 patent were included in the original filing of the application leading to the '431 patent, at a minimum, *the written description requirement was satisfied as of the date that application was filed—December 6, 2001*." *See* Dkt. 36 at 18 (emphasis added). Although Sable explicitly recognized in its alternative argument that even if the '278 application does not satisfy the written description requirement for the claims of the '431 patent, "the consequence would be that *Sable would lose the benefit of the '278 application's priority date*," Cloudflare wrongly argues "Sable alternatively tries to rely on the claims filed December 6, 2001 as if they were 'original' to the specification filed *April 19,*

*2000*, the effective filing date of the '431 patent [based on the '278 application's priority date]." Dkt. 45 at 7 (emphasis added).

Contrary to Cloudflare's mischaracterization, Sable's alternative argument is simply that the original claims filed on December 6, 2001 in the application leading to the '431 patent "are part of the specification" *of the '431 patent* and, at a minimum, raise a triable issue as to whether the written description requirement is satisfied by *that* application, in which case Sable would be entitled to a December 6, 2001 priority date. Sable's argument is in line with Federal Circuit precedent and its progeny. *See, e.g.*, *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000) ("[C]laims to subject matter in a later-filed application not supported by an ancestor application in terms of § 112 P1 *are not invalidated*; they simply do not receive the benefit of the earlier application's filing date.") (emphasis added) (citation omitted); *Waddington N. Am., Inc. v. Sabert Corp.*, 2011 U.S. Dist. LEXIS 29772, at *11-12 (D.N.J. Mar. 22, 2011) ("Sabert seems to argue that the claims are invalid if the Court finds that they are not supported by the written description of the original Provisional application. This is simply not the case. The Court must invalidate the claims only if the specification of the latest filing does not support the claims. The question of whether the written description in the Provisional supports the claims is only relevant to whether the claims are entitled to the Provisional's priority date.") (citations omitted).

Cloudflare materially mischaracterizes the holding of *Innovation Scis., LLC v. Amazon.com, Inc.*, 2021 U.S. Dist. LEXIS 97500, at *11 (E.D. Tex. May 24, 2021), a case supporting Sable, not Cloudflare. Cloudflare suggests the *Innovation Scis.* court held that written description was "properly evaluated as of the 2006 effective date" even though the plaintiff also had argued for a 2007 "back up priority date." Dkt. 45 at 8. Cloudflare is wrong. What actually happened in *Innovation Scis.*, *a jury trial* case, is that prior to trial, the patent owner argued it was entitled to present evidence and argument that while "the August 10, 2006 filing date adequately supports the claims of the asserted patents, the fact remains that … additional written description support was disclosed in February 2007, and the asserted claims would certainly be entitled to that priority date as a back up …." *Innovation Scis., LLC v. Amazon.com, Inc.*, Case No. 4:18-cv-

00474-ALM (E.D. Tex.), Dkt. 834 at 3.  Based on this briefing, and at the patent owner's "request, the Court included an additional priority date, February 2, 2007, in the [jury] instructions." *Innovation Scis., LLC*, 2021 U.S. Dist. LEXIS 97500, at *14.  After a jury verdict in the defendants' favor, the court noted the jury was properly instructed to "compare the asserted claims to either the August 10, 2006 application or the February 2, 2007 application …." *Id.* at *11.  This is exactly what Sable is arguing in the alternative.  Although the claims of the '431 patent are adequately supported by the written description of the '278 application such that the '431 patent is entitled to an April 19, 2000 priority date, in the alternative, the claims of the '431 patent are supported by the written description of the application that led to the '431 patent such that the '431 patent is entitled to a back-up priority date of December 6, 2001.

Cloudflare's reliance on *Edwards Lifesciences Corp. v. St. Jude Med., Inc.*, 2004 U.S. Dist. LEXIS 31045, at *2 (C.D. Cal. June 22, 2004), is misplaced.  Although the court's written description analysis in that case is cursory, it appears the patent owner was arguing that it "may claim two filing dates, a priority filing date under 35 U.S.C. § 120 and a later date for purposes of the written description requirement …." *Id.* at *10 n.3.  In other words, although the patent owner continued to assert the patent-in-suit was entitled to a priority date of August 2, 1991, it argued the court should conduct its written description analysis based on the May 27, 1998 date the claims of the patent-in-suit were filed.  *Id.* at *9.  The court declined to do so and evaluated written description as of the claimed 1991 priority date.  *Edwards Lifesciences Corp.* does not help Cloudflare here because Sable is not arguing the original claims filed on December 6, 2001 in the application leading to the '431 patent could support an April 19, 2000 priority date.  To the contrary, Sable's argument is that, to the extent there is not written description support in the '278 application for the '431 patent's claims, Sable would be entitled to a back-up priority date of December 6, 2001, the filing date of the application that led to the '431 patent which contains the same original claims as in the '431 patent.

### III. CLOUDFLARE MISCHARACTERIZES THE TESTIMONY OF SABLE'S EXPERT

Sable's expert, Dr. Ng, faithfully applied the proper written description standard when analyzing the '431 patent.  *See* Dkt. 36-1 (Ng Decl.) at ¶¶ 22-25, 36-78.  In its Reply, however, Cloudflare argues Dr. Ng improperly applied the obviousness standard.  Dkt. 45 at 3 ("It is not sufficient to show obviousness.").  It is apparent, though, that Cloudflare ignored the substance of Dr. Ng's deposition testimony and simply combed through the transcript to find each instance in which Dr. Ng used the word "obvious" in an effort to mislead the Court into believing Dr. Ng applied the incorrect standard.

The § 112, ¶ 1 test is "an objective inquiry … from the perspective of a [POSITA]" to determine whether "the specification … describe[s] an invention ***understandable*** to that [POSITA] and show[s] that the inventor actually invented the invention claimed."  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 U.S. Dist. LEXIS 123232, at *12-13 (E.D. Tex. Aug. 8, 2016) (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010)) (emphasis added).  In everyday usage, the English *word* (as opposed to the patent law standard) "obvious" means "easily discovered, seen, or ***understood***."  *Obvious*, MERRIAM-WEBSTER.COM DICTIONARY, *available at*: https://www.merriam-webster.com/dictionary/obvious (last accessed Jan. 5, 2022) (emphasis added).  Therefore, it is reasonable (and understandable) that Dr. Ng would occasionally use the word "obvious" when explaining that a POSITA would understand that certain claim limitations were necessarily disclosed by the specification of the '431 patent.  Dr. Ng did ***not*** testify that the claimed invention was obvious in view of the '431 specification.  That is, Dr. Ng testified that the '431 specification disclosed each of the claim limitations, not that some obvious addition or modification from the '431 specification disclosure would result in the claimed invention.

Cloudflare argues that Dr. Ng applied the wrong analysis—*i.e.*, obviousness—for several claim limitations.  Dkt. 45 at 2.  Dr. Ng provided testimony (by declaration *and* deposition) that the '431 specification discloses each of these limitations:

- Determining the capacity of a buffer containing a microflow based on a characteristic (claims 1, 10): "[T]he micro-flow manager is responsible for … identifying … the flow as a guaranteed rate or available rate . . . .  in determining [] a flow's guaranteed rate, it would be clear to a POSITA that a buffer is assigned to the guaranteed rate flow and, … it is the micro-flow manager's job to … perform this function to determine what the assigned buffer capacity is." Dkt. 45-2 (Depo. Tr.) at 110:1-9. *See also id.* at 110:21-111-2; 109:14-22; 112:14-16; 115:4-13; Dkt. 36-1 (Ng Decl.) at ¶¶ 39-44, 50-55.

- Assigning an acceptable threshold value for the capacity of the buffer over a predetermined period of time (claims 1, 10): Assigning this value "refer[s] to the rate limit functionality disclosed in the patent . . . .  So the micro-flow classifier has the job of using the extracted layer information to determine the QoS descriptor values, and those descriptor values include the guaranteed rate and available rate.  And the patent teaches that those guaranteed rate and available rates are used to determine the appropriate rate limit for the policing scheduler to use."  Dkt. 45-2 (Depo. Tr.) at 119:25-121:10.  *See also id.* at 120:7-124:23; Dkt. 36-1 (Ng Decl.) at ¶¶ 50, 56-63.

- Using the buffer for damping jitter associated with the microflow (claims 1, 10): Explaining "what part of the system is now using the buffer for damping jitter," Dr. Ng explained: "It is the QoS Scheduler that is performing this function."  Dkt. 45-2 at 132:10-15; *See also id.* at 129:19-134:3; Dkt. 36-1 (Ng Decl.) at ¶¶ 39-44, 50, 65-68.

- A delay variation substructure configured to provide a buffer value to dampen jitter in a transmission of the microflow (claim 19): "[T]he classification structure refers to the specific part of this QoS field [310]." Dkt. 45-2 (Depo. Tr.) at 164:10-17.  *See also id.* at 165:2-7 ("Q. And for the delay variation substructure you identify the subfield that has delay variation … Q in it.  Is that right?  A. Yes."); 163:14-165:21; Dkt. 36-1 (Ng Decl.) at ¶¶ 39-44, 76-78.

Dr. Ng properly applied the § 112, ¶ 1 standard.  Cloudflare's suggestion to the contrary is misdirection focused on the occasional use of the word "obvious" rather than the substance of Dr. Ng's opinions.[1]  At a minimum, there is a genuine issue of material fact.

## IV.   CONCLUSION

For the foregoing reasons and those set forth in Sable's Opposition, Cloudflare's Motion should be denied.

---

[1] Dr. Ng has not offered any expert testimony in this case regarding obviousness; the context of his testimony clearly shows Dr. Ng intended the word "obvious" to carry its layperson, everyday meaning rather than that related to an "obviousness" legal standard.

Dated:  January 5, 2022

Respectfully submitted,

/s/  Daniel P. Hipskind
Elizabeth L. DeRieux
TX Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email:  ederieux@capshawlaw.com

Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
BERGER & HIPSKIND LLP
9538 Brighton Way, Suite 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Sable Networks, Inc. and Sable IP, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this January 5, 2022 with a copy of this document via the Court's CM/ECF System.

/s/ Daniel P. Hipskind

Daniel P. Hipskind