**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **Sable Networks, Inc. and Sable IP, LLC,**<br><br>        **Plaintiffs,**<br><br>        **v.**<br><br>**Cloudflare, Inc.,**<br><br>        **Defendant.** | **Civil Action No. 6:21-cv-00261-ADA-DTG**<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CLOUDFLARE, INC.'S RESPONSE IN
OPPOSITION TO SABLE'S MOTION FOR LEAVE TO AMEND
<u>PRELIMINARY INFRINGEMENT CONTENTIONS</u>**

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CHRISTOPHER T. BOVENKAMP
ANTHONY M. GARZA
C. LUKE NELSON
MITCHELL R. SIBLEY
JOHN HEUTON

*Counsel for Defendant Cloudflare, Inc.*

November 18, 2022

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 3

    A. Sable Reduced Asserted Claims To Obtain A Faster Schedule .................................... 3

    B. Sable Voluntarily Dropped And Disclaimed More Claims During And After *Markman* Briefing, As A Strategic Decision In The '593 IPR ..................................... 4

    C. Cloudflare Completed Substantial Discovery While The Dropped Claims Were Out Of The Case ..................................... 5

    D. The Court Held The *Markman* Hearing While The Dropped Claims Were Out Of The Case ..................................... 5

    E. The Dropped Claims At Issue—'593 Claims 17, 18, 37, And 38—And The '593 IPR Decision ..................................... 6

III. LEGAL STANDARD ................................................................................ 7

IV. SABLE DOES NOT HAVE GOOD CAUSE TO AMEND ...................... 8

    A. Sable Has Not Been Diligent ..................................... 8

        1. Sable Is Solely Responsible For Its Election To Drop The Claims ...................... 8

        2. Sable Chose Not To Seek Leave To Resurrect The Claims ................................. 9

        3. The IPR Decision Does Not Excuse Sable's Lack Of Diligence ........................ 12

    B. The Dropped Claims Are Not Important ..................................... 13

    C. Resurrecting The Dropped Claims Now Would Unduly Prejudice Cloudflare .......... 13

        1. The Court Would Have To Conduct A Second *Markman* Hearing ................... 13

        2. Cloudflare Would Be Unduly Prejudiced As To Discovery .............................. 17

        3. Cloudflare Would Be Unduly Prejudiced As To The Expanded Scope Of The Case ..................................... 18

        4. Cloudflare Would Be Unduly Prejudiced As To The '593 IPR ........................ 19

    D. A Continuance Is Available—But Sable Does Not Want One, And It Would Not Cure Cloudflare's Prejudice ..................................... 20

V.  CONCLUSION ......................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Certusview Techs., LLC v. S&N Locating Servs., LLC*,
    13-CV-346, 2014 WL 4930803 (E.D. Va. Oct. 1, 2014)....................................................9, 10

*Corel Software, LLC v. Microsoft Corp.*,
    15-CV-528, 2018 WL 5792323 (D. Utah Nov. 5, 2018)......................................10, 11, 15, 16

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
    15-CV-01167, 2018 WL 6440893 (E.D. Tex. Nov. 16, 2018)...................................10, 11, 16

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011).........................................................................................10

*Jawbone Innovs., LLC v. Google LLC*,
    21-CV-985, 2022 WL 707229 (W.D. Tex. Mar. 8, 2022)...................................................1, 9

*Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*,
    08-CV-1512, 2010 WL 11452386 (S.D. Cal. June 25, 2010) ...........................................7, 11

*Northrop Grumman Corp. v. Intel Corp.*,
    325 F.3d 1346 (Fed. Cir. 2003).........................................................................................13

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)...........................................................................................7

*One-E-Way, Inc. v. Apple Inc.*,
    22-CV-6339, 2022 WL 2564002 (C.D. Cal. June 15, 2022) ..............................................14

*Papst Licensing GmbH & Co. v. Apple, Inc.*,
    15-CV-1095, 2020 WL 11613777 (E.D. Tex. July 1, 2020) ........................................7, 11, 12

*Realtime Data, LLC v. Metropcs Texas, LLC*,
    10-CV-493, 2012 WL 12903695 (E.D. Tex. Apr. 19, 2012)...........................................16, 17

*Realtime Data, LLC v. Packeteer, Inc.*,
    08-CV-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009)............................................11, 16

*Uniloc USA, Inc. v. Distinctive Devs. Ltd.*,
    12-CV-462, 2016 WL 11485612 (E.D. Tex. Dec. 13, 2016) ..............................................12

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    20-CV-00319, 2021 WL 5451020 (E.D. Tex. Nov. 22, 2021) ............................................14

*Univ. of Va. Pat. Found. v. Gen. Elec. Co.*,
    14-CV-51, 2019 WL 1993552 (W.D. Va. May 6, 2019)................................................11, 16

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015)..........................................................................15

*ZiLOG, Inc. v. Quicklogic Corp.*,
   03-CV-3725, 2006 WL 563057 (N.D. Cal. Mar. 6, 2006) ..........................10, 11, 16

STATUTES

35 U.S.C. § 112, ¶ 6 ..........................................................................................13

35 U.S.C. § 311(b) ............................................................................................15

Defendant Cloudflare, Inc. ("Cloudflare") files this Response in Opposition to Plaintiffs Sable Networks, Inc. and Sable IP, LLC's (collectively, "Sable") Motion for Leave to Amend Preliminary Infringement Contentions (the "Motion") (ECF No. 158):

## I.    INTRODUCTION

Early in the case, Sable made the voluntary, strategic decision to drop claims 17, 18, 37, and 38 of the '593 patent. This choice defeats Sable's claim of diligence. Knowing the significance of its freely made, strategic decision, Sable's Motion tries to characterize Sable's claim dropping "as <u>required</u> by the Court's then-model scheduling order." Mot. at 3, 8 (citing OGP default schedule at ECF No. 27, App. A). In other words, Sable argues that the Court <u>forced</u> Sable to narrow its case so, according to Sable, the Court should now grant leave to revive claims in view of changed circumstances.

But the Court did not force Sable to drop the claims-at-issue. In fact, this Court generally does not require claim reduction at the early stage of the case (i.e., pre-*Markman*) when Sable dropped the claims, *see Jawbone Innovs., LLC v. Google LLC*, 21-CV-985, 2022 WL 707229 at *2 (W.D. Tex. Mar. 8, 2022), and the Court's model schedule did not require any pre-*Markman* claim reduction. Instead, Sable sought an early, pre-*Markman* claim reduction (from the 98 claims it initially asserted) to avoid the extended case schedule that 98 claims would have required.[1]

Sable's voluntary, strategic decision to drop the claims on September 22, 2021 means that **September 22, 2021** is the relevant date from which to measure diligence, not the date of

---

[1]    *See* ECF No. 23 at 5 (Sable quoting *May 2020: Scheduling for large number of asserted claims*, JUDGE ALBRIGHT PATENT FAQ: "[i]f Plaintiff asserts a large number of claims, e.g., 50-60 . . . Plaintiff can either reduce the number of claims or . . . the Court will extend the schedule.").

the IPR decision (as alleged by Sable). And, even if Sable's theory of mandatory reduction is credited (and it should not be), Sable was afforded another opportunity—eight months ago—to request the revival of the claims-at-issue when Sable engaged in another voluntary round of claim dropping. On March 1, 2022, Sable dropped enough claims that it could have added back claims 17, 18, 37, and 38 (and many others) and still been under its self-imposed 45-claim limit. Sable chose not to do so. As such, the Court should deny Sable's Motion for failure to show diligence.

The Court should also deny Sable's Motion because of the significant prejudice that resurrection would cause. Claims 17, 18, 37, and 38 are nested dependent claims: claim 18 depends from claim 17, which in turn depends from claims 12, 11, 10, and 9; and claim 38 depends from claim 37, which in turn depends from claims 32, 31, 30, and 29. These claims include four means-plus-function clauses that the Court must construe (i.e., claims 38, 37, 32, and 31), and at least four other claim terms that require construction. The claims-at-issue would also implicate new indefiniteness challenges. But *Markman* is over. ECF No. 153.

Additionally, Cloudflare already narrowed and chose its prior art based on a slate of claims without claims 17, 18, 37, and 38 in the mix.[2] Cloudflare has also already served, conducted, and received third-party discovery from the '593 patent inventor and numerous '593 patent-specific prior-art entities. Sable argues (Mot. at 1) that the case has narrowed and resurrection "should not raise any new invalidity or non-infringement theories" but Sable ignores that the claims Sable proposes to resurrect require both parties to address claim limitations not currently

---

[2]    Sable focuses on Cloudflare's preliminary invalidity contentions, which Cloudflare served before Sable's September 22, 2021 reduction to 45 asserted claims, Mot. at 3, 10, but Sable ignores Cloudflare's reduction to 68 prior references on October 27, 2021. ECF No. 41 at 2, 3. Cloudflare's reduction of prior-art references occurred after Sable dropped the claims-at-issue.

in the case including at least (i) "provid[ing] an indication of a degree to which the flow is behaving undesirably" (claims 10, 30); (ii) "determining [/ means for determining], based at least partially upon the badness factor, a penalty to impose on the flow" (claims 11, 31); (iii) "enforcing [/ means for enforcing] the penalty on the flow" (claims 12, 32); (iv) "determining [/ means for determining] an increased drop rate to impose on the flow" (claims 17, 37); and (v) doing so such that packets belonging to the flow have a higher probability of being dropped than packets belonging to other flows (claims 18, 38). This necessarily requires new infringement and invalidity theories. Cloudflare had no reason to ask about or consider any of these limitations when it limited its prior art references, during the '593 patent inventor's deposition, or in Cloudflare's subpoenas to (and review of documents received from) third parties. Resurrection would thus work much prejudice on Cloudflare.

For these reasons, and as discussed in more detail below, Sable lacks good cause to resurrect claims and the Court should deny the Motion.

## II.     FACTUAL BACKGROUND

Sable filed this action on March 15, 2021, asserting four patents (the '431 patent, '919 patent, '932 patent, and '593 patent). In its initial preliminary infringement contentions, Sable asserted 98 claims from the four patents.

### A.     Sable Reduced Asserted Claims To Obtain A Faster Schedule

In negotiating the Scheduling Order, Sable voluntarily agreed to reduce the number of asserted claims pre-*Markman* to 45. Sable noted as much to the Court:

> . . . Sable has **agreed to reduce the number of asserted claims to 45 before the *Markman* process begins** in each of these cases. . . . Further, pursuant to the Court's guidance, Sable's agreed-to reduction in asserted claims confirms that no deviation from the Court's default schedule is necessary. *See May 2020: Scheduling for large number of asserted claims,* JUDGE ALBRIGHT PATENT FAQ, available at: https://www.txwd.uscourts.gov/for-attorneys/judge-albright-courtroom-faq/ (stating that "[i]f Plaintiff asserts a large number of claims, e.g., 50-60 . . . Plain-

tiff can either reduce the number of claims or . . . the Court will extend the sched-
ule to provide extra time for the parties to adequately brief and prepare for the
*Markman* hearing."). **Consistent with the Court's guidance, Sable elected to
"reduce the number of claims" for claim construction** to a number below the
Court's example of a "large number."

ECF No. 23 at 5.[3] Neither the Court nor Cloudflare forced Sable to reduce its asserted claims.

Per its election, Sable reduced its 98 asserted claims to 45 asserted claims on September 22,

2021. Mot., Ex. 3. In the process, Sable dropped claims 17, 18, 37, and 38 of the '593 patent. *Id.*

### B. Sable Voluntarily Dropped And Disclaimed More Claims During And After *Markman* Briefing, As A Strategic Decision In The '593 IPR

Cloudflare filed an IPR challenging the '593 patent, which the PTAB instituted. *See*

Mot., Ex. 7 at 1. On March 1, 2022 (in connection with Sable's IPR response filed two weeks

later), Sable voluntarily dropped 18 additional claims from the lawsuit, bringing the total of as-

serted claims down to 26. Ex. 1. Sable dropped seven claims from the '593 patent and every

claim of the '932 patent. Sable dropped these claims voluntarily—no requirement existed then to

further limit claims.

Two days later, on March 4, 2022, Sable formally disclaimed 17 claims of the '593 patent

(including every claim Sable had dropped from the litigation three days earlier).[4] Ex. 2. Sable

informed the PTAB of the '593 disclaimer on March 11, 2022. Ex. 3. Sable made this disclaimer

strategically, in connection with Sable's IPR Response filed on March 14, 2022. Ex. 4.

The parties filed an amended Joint Claim Construction Statement on March 11, 2022,

limiting the *Markman* process on the '593 patent to claims 3, 9, and 29. ECF No. 65.

---

[3]   All emphases in quotations in this Response are added unless otherwise indicated.

[4]   On March 4, 2022, Sable also formally disclaimed the '932 patent in its entirety. Prior to
its September 22, 2021 claim reduction, Sable had formally disclaimed a total of 34 claims from
the '431 and '919 patents. Exs. 5, 6, 7.

On March 14, 2022, Sable filed its Response in the '593 IPR, wherein Sable defended the patentability of '593 patent claims 3, 9-13, 17-24, 29-33, and 37-44. Ex. 4. At that time, Sable asserted in this litigation only '593 patent claims 3, 9, and 29. That is, as of March 14, 2022, Sable chose to defend claims 17, 18, 37, and 38 in the IPR (and the PTAB ultimately adopted Sable's position) but Sable chose <u>not</u> to seek leave to add those claims back into the case. At that time, Sable was well under its agreed-to limit of 45 asserted claims (as Sable then asserted a total of 26 claims across all three patents-in-suit). Sable did not seek leave to add claims 17, 18, 37, and 38 back into the case for more than eight months. Ultimately, the PTAB's decision adopted Sable's March 14, 2022 position as to claims 17, 18, 37, and 38. Ex. 4 at 12-16; Mot. Ex. 7 at 35-36.

**C.    Cloudflare Completed Substantial Discovery While The Dropped Claims Were Out Of The Case**

Between September 22, 2021 and the October 3, 2022 *Markman* hearing, in addition to substantial other fact discovery, Cloudflare subpoenaed documents from seven third parties with regard to the '593 patent, deposed the third-party named inventor of the '593 patent, and deposed the third-party prosecution counsel of the '593 patent. During all of that discovery, the claims Sable now seeks to reassert were not part of the case.

**D.    The Court Held The *Markman* Hearing While The Dropped Claims Were Out Of The Case**

On October 3, 2022, the Court held the *Markman* hearing, and issued the Claim Construction Order on October 17, 2022. ECF No. 153. The claims Sable now seeks to reassert were not part of the case and were not argued or construed at the *Markman* hearing.

E.    **The Dropped Claims At Issue—'593 Claims 17, 18, 37, And 38—And The
'593 IPR Decision**

The '593 claims that Sable dropped and now seeks to reassert are nested dependent claims: claim 18 depends from claim 17, which in turn depends from claims 12, 11, 10, and 9; and claim 38 depends from claim 37, which in turn depends from claims 32, 31, 30, and 29. Sable graphically presents the dependencies as follows:

$$9 \rightarrow 10 \rightarrow 11 \rightarrow 12 \rightarrow 17 \rightarrow 18$$

$$29 \rightarrow 30 \rightarrow 31 \rightarrow 32 \rightarrow 37 \rightarrow 38$$

Mot. at 4-5. On October 18, 2022, the PTAB issued its final written decision in the '593 IPR, finding nearly every claim of the '593 patent invalid. *Id.*

Relevant here, the IPR decision made two findings. *First*, the PTAB found that "the subject matter of claims 10-13, 19-24, 30-33, and 39-44 would have been obvious over Yung and Copeland." Mot., Ex. 7 at 35. *Second*, the PTAB "decline[d] to consider whether claims 17, 18, 37, and 38 would have been obvious over Yung and Copeland," because it "decline[d] to read the [IPR] Petition to include a contention that claims 17, 18, 37, and 38 would have been obvious in light of Yung and Copeland." *Id.* at 38. Instead, the PTAB found that Cloudflare alleged all *facts* necessary to invalidate claims 17, 18, 37, and 38, but failed to allege the necessary *conclusion* of invalidity:

> Although the Petition alleges all of the *facts* that would be necessary for such a contention, it does not allege the necessary conclusion. Ultimately, the Petition never expressly contends that these claims would have been obvious in light of the combination of Yung and Copeland, so we decline to interpret the Petition as including such a contention.

Mot., Ex. 7 at 36 (PTAB's emphasis). Cloudflare intends to appeal the PTAB's finding of non-invalidity as to these claims.

6

The PTAB's decision not to invalidate claims 17, 18, 37, and 38 agreed with and adopted Sable's arguments in Sable's March 14, 2022 IPR Response. Mot., Ex. 7 at 35-36. In other words, as to these claims, Sable received exactly the relief it requested on March 14, 2022.

At present then, the pertinent aspects of the IPR decision on the claims at issue may be characterized as follows:



Mot. at 4-5 (annotated). Sable now seeks to "substitute in" claims 17, 18, 37, and 38 for the currently asserted claims 3, 9, and 29, as Sable contends that, based on the IPR decision, Sable is "precluded from recovering any damages" on the latter claims. Mot. at 9.

## III.    LEGAL STANDARD

Sable must show good cause to revive previously withdrawn claims 17, 18, 37, and 38 of the '593 patent:

> In applying a "good cause" standard, courts consider (1) the moving party's diligence, (2) the importance of the reasserted claims, and (3) whether reassertion will unfairly prejudice the non-moving party.

Mot. at 6 (citing *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, 15-CV-01167, 2018 WL 6440893, at *1-2 (E.D. Tex. Nov. 16, 2018); *Bos. Sci. Corp. v. Cook Grp. Inc.*, 17-CV-03448, ECF No. 449 at *6 (S.D. Ind. Aug. 16, 2021) (slip op.) (Mot., Ex. 13)). The good cause standard "requires the party to show that, despite the exercise of diligence, it cannot reasonably meet the court-mandated deadline." *Papst Licensing GmbH & Co. v. Apple, Inc.*, 15-CV-1095, 2020 WL 11613777, at *2 (E.D. Tex. July 1, 2020) (citing *S&W Enters., LLC v. Southtrust Bank of Ala.*,

315 F.3d 533, 535 (5th Cir. 2003)). Sable correctly observes that "the moving party's diligence often carries the most weight." Mot. at 6; *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). In fact, if the moving party fails to show diligence in seeking leave, the Court need not consider any of the other factors. *See, e.g.*, *Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 08-CV-1512, 2010 WL 11452386, at *3 (S.D. Cal. June 25, 2010).

## IV.   SABLE DOES NOT HAVE GOOD CAUSE TO AMEND

The Court should deny Sable's Motion because Sable fails to show good cause, under any of the applicable factors, for its belated attempt to revive the previously withdrawn claims.

### A.   Sable Has Not Been Diligent

Sable chose to drop the '593 claims at issue *more than a year ago* to speed up the case. No one forced or required Sable to drop the claims.

#### 1.   Sable Is Solely Responsible For Its Election To Drop The Claims

Sable frames its Motion as if the Court forced Sable to drop the claims more than a year ago. Sable argues that some action of the Court somehow implicates a due process or property interest of Sable. That is not the case. Sable attempts to blame the Court, saying "Sable . . . dropped th[e claims] pursuant to a previous iteration of the case scheduling order, **in line with this Court's trial-narrowing requirements**. Dkt. 25." Mot. at 1. And: "After dropping claims on September 21, 2021, **in line with this Court's 45 claim limit** . . . ." *Id.* at 11 n.4. Sable even misrepresents the content of this Court's standing orders:

> At the time the PTAB issued its Final Written Decision, the only remaining claims from the '593 Patent asserted in this case were independent claims 3, 9, and 29. However, each of the claims in the chains of dependent claims were previously asserted by Sable, prior to **narrowing its claims as required by the Court's then-model scheduling order.** Ex. 2; Ex. 3.

*Id.* at 5; *see also id.* at 2-3. This is not correct. The Court's "then-model scheduling order" did not require any reduction of claims until "26 weeks after *Markman*." ECF No. 27, App. A; *ac-*

8

cord June 24, 2021 OGP v.3.4, App. A (same). In this case, *Markman* was ultimately held on October 3, 2022. So "as required by the Court's then-model scheduling order" (as Sable puts it) and "in line with this Court's requirements," Sable would not have had to drop any of its patent claims for another five months from today. Indeed, contrary to Sable's representation, this Court makes clear that "[t]he Court generally will not require a plaintiff to reduce its number of asserted claims without the benefit of discovery, claim construction, and invalidity contentions." *Jawbone*, 2022 WL 707229, at *2.

Sable's inaccurate representation that the Court purportedly made Sable drop its claims is fundamental to Sable's request for leave. Mot. at 13. But Sable's claims were not dropped "pursuant to a Court's narrowing requirements" as Sable argues, *id.*—instead, they were dropped pursuant to Sable's voluntary, strategic decision to speed up the case, as Sable made clear when Sable moved for entry of the schedule and asked for an early 45-claim limit. *See* ECF No. 23 at 5 ("Sable has agreed to reduce the number of asserted claims to 45 before the *Markman* process begins. . . . Plaintiff can either reduce the number of claims or . . . the Court will extend the schedule . . . . Sable elected to 'reduce the number of claims' for claim construction[.]").

## 2.  Sable Chose Not To Seek Leave To Resurrect The Claims

Even under Sable's incorrect characterization of why it dropped the claims, Sable could have sought leave to amend at any point after it dropped claims on March 1, 2022, such that Sable was then asserting only 26 claims—i.e., 19 claims less than Sable's self-imposed 45-claim limit. In fact, as of March 4, 2022 (when Sable formally disclaimed several of the '593 patent's claims), Sable would have had room under its own 45-claim cap to add back nearly every non-disclaimed claim of the '593 patent that Sable had asserted in its PICs, and still fall within the 45-claim cap. And, as of the filing of its IPR Response on March 14, 2022, Sable knew what claims it continued to defend (including claims 17, 18, 37, and 38) and which it did not. Ex. 4.

9

Even under Sable's view of the facts, if Sable wanted to revive claims 17, 18, 37, and 38, it should have done so then. Sable offers no explanation for its failure to do so.

Sable's voluntary, self-imposed claim reduction—followed by at least eight months of delay after Sable had space available under its own proposed limit—creates nothing like the "due process" concerns Sable points to in *Certusview Techs., LLC v. S&N Locating Servs., LLC*, 13-CV-346, 2014 WL 4930803, at *5 (E.D. Va. Oct. 1, 2014) and *ZiLOG, Inc. v. Quicklogic Corp.*, 03-CV-3725, 2006 WL 563057, at *2 (N.D. Cal. Mar. 6, 2006). In *Certusview*, the court considered the defendant's motion to require the plaintiff to reduce the number of asserted claims. The court granted the motion after noting the Federal Circuit's "due process" guidance that, "[t]o avoid unfair prejudice after requiring the plaintiff to limit its claims, a district court must provide the plaintiff with the opportunity to assert additional, unselected claims that present unique issues of liability or damages." 2014 WL 4930803, at *5 (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311-13 (Fed. Cir. 2011)). But Sable's reduction here is voluntary, obviating any due process concerns, and in any event the principle of *In re Katz* would merely reinforce that Sable could have sought leave to reassert claims 17, 18, 37, and 38 at any point in the last year or more since Sable elected to reduce claims and then elected to drop those particular claims on September 22, 2021.

In *ZiLOG*, the case had been stayed since eight days after the plaintiff served its preliminary infringement contentions. 2006 WL 563057, at *1. Given the stay, "effectively" only three months had elapsed from the service of the initial PICs and the motion for leave to amend to assert an additional claim. *Id.* at *1-2. As such, the court readily dismissed the defendant's unsupported assertions of "bad faith" and "extreme prejudice" because effectively nothing had hap-

pened in the case since the PICs (a far cry from the instant case). *Id.* If *Certusview* and *ZiLOG* are relevant, they support Cloudflare, not Sable.

Sable elected to drop and delay, and Sable cannot show diligence. Sable's cases reinforce this conclusion. Sable relies on *Boston Scientific*, *EMED*, *Corel*, and *ZiLOG* as allowing leave to add claims, but in none of these cases did the plaintiff delay moving for leave to amend until after *Markman* without the dropped claims in the case. *See, e.g.*, *Bos. Sci. Corp. v. Cook Grp. Inc.*, 17-CV-03448, ECF No. 449 at 4 & n.2, 9-10 (S.D. Ind. Aug. 16, 2021) (Mot., Ex. 13) (claim-at-issue "was litigated in the case through the discovery and claim construction phases . . . . The fact that *EMED* and *ZiLOG* were in the early stages when amendments were sought was relevant to the good cause inquiry because allowing the proposed amendments would not have required a second round of discovery and claim construction or otherwise unreasonably delayed the resolution of those cases; that is also the case here."); *Corel Software, LLC v. Microsoft Corp.*, 15-CV-528, 2018 WL 5792323, at *2 (D. Utah Nov. 5, 2018) (finding good cause under the provisions of local patent rules to allow amendment of pre-*Markman* contentions).

In contrast, courts have routinely denied leave to amend to add claims where plaintiffs have delayed as long as Sable has here. *See, e.g.*, *Medtronic*, 2010 WL 11452386, at *2-3 (denying leave to add claims; nearly five-month delay in seeking leave showed lack of diligence); *Univ. of Va. Pat. Found. v. Gen. Elec. Co.*, 14-CV-51, 2019 WL 1993552 at *1-6 (W.D. Va. May 6, 2019) (denying amendment pre-*Markman* because seven month pre-IPR decision delay showed lack of diligence); *Realtime Data, LLC v. Packeteer, Inc.*, 08-CV-144, 2009 WL 2590101, at *5, 10 (E.D. Tex. Aug. 18, 2009) (denying amendment, post-*Markman*—nine-month delay was not reasonable).

In short, the Court should deny the Motion due to Sable's lack of diligence. *Medtronic*,

2010 WL 11452386, at *3 (where lack of diligence, court need not consider any other factor).

### 3.    The IPR Decision Does Not Excuse Sable's Lack Of Diligence

The Court should reject Sable's argument that the PTAB's IPR decision somehow re-starts the diligence clock, as the outcome of an IPR does not excuse a lack of diligence or pro-vide good cause to reassert dropped claims. *See, e.g.*, *Univ. of Va. Pat. Found.*, 2019 WL 1993552, at *1-6; *Papst Licensing GmbH & Co. v. Apple, Inc.*, 15-CV-1095, 2020 WL 11613777, at *3 (E.D. Tex. July 1, 2020) (denying leave to add the only claim that survived IPR, due to pre-IPR-decision delay, and noting that the IPR decision adopted the position plaintiff had earlier advanced); *Uniloc USA, Inc. v. Distinctive Devs. Ltd.*, 12-CV-462, 2016 WL 11485612, at *2 (E.D. Tex. Dec. 13, 2016).

*Papst* and *Uniloc* are particularly instructive here. In *Papst*, the plaintiff's "sole explana-tion for its delay in seeking leave to amend is that 'it could not have known the outcome of the pending IPRs' until they were complete." 2020 WL 11613777, at *3. The court rejected that ar-gument: "[I]n asserting that Claim 14 is patentably distinct, Papst relies on information available to it well before the PTAB's final IPR decisions. . . . [But] Papst fails to explain how it lacked the underlying information necessary to argue that Claim 14 raised distinct issues of patentabil-ity, particularly when the PTAB adopted Papst's earlier arguments. . . . Under these circumstanc-es, Papst has not shown that it could not have asserted Claim 14 or moved to amend at an earlier time." *Id.* The same is true here, as the '593 IPR decision on the claims-at-issue was based on Sable's March 14, 2022 IPR Response. Mot., Ex. 7 at 34-36.

Similarly, in *Uniloc*, the court denied leave to amend to substitute the only claims not in-validated in IPR (and dismissed the case with prejudice), because the plaintiff based its proposed infringement contentions for the claims it sought to substitute "on the same publicly available information it had prior to the stay and that formed the basis of its allegations with respect to" the

invalidated claims. 2016 WL 11485612, at *1-2. Because the *Uniloc* plaintiff "had over nine months . . . in which it could have sought leave to amend its infringement contentions using the information already in its possession," the court found that the plaintiff lacked diligence. *Id.* at *2. That is precisely the case here, where Sable does not propose amended contentions, and instead apparently intends to rely upon its *original* PICs served nearly a year and a half ago on June 23, 2021, before fact discovery opened. *See* Mot. at 2, 3, 10.

### B.     The Dropped Claims Are Not Important

Sable suggests that "the PTAB confirmed the patentability" of the dropped claims. Mot. at 14. Sable is wrong. That is not what the PTAB does in an IPR, and it is not what the PTAB did here. On the contrary, the IPR decision found every one of the predicate claims 9, 10, 11, 12, 29, 30, 31, and 32 invalid, Ex. 7 at 30-32, 34, but the Board declined to reach the merits of Cloudflare's further argument that dependent claims 17, 18, 37, and 38 were invalid based solely on a misunderstanding of the arguments in the IPR Petition. As such, one cannot read the IPR decision to confirm that claims 17, 18, 37, and 38 possess novelty. Cloudflare also intends to appeal the denial of Cloudflare's IPR as to the claims-at-issue.

### C.     Resurrecting The Dropped Claims Now Would Unduly Prejudice Cloudflare

Because Sable elected to drop the four claims-at-issue a year ago, and elected not to seek leave to revive them more than seven months ago when dropping (and disclaiming) more claims, the claims-at-issue were not part of the case as the parties engaged in *Markman* briefing, a *Markman* hearing, and during substantial discovery.

#### 1.     The Court Would Have To Conduct A Second *Markman* Hearing

As noted above, the four claims-at-issue are dependent from several other claims that are also <u>not</u> in the case currently. Claim 18 depends from claim 17, which in turn depends from claims 12, 11, 10, and 9; and claim 38 depends from claim 37, which in turn depends from

claims 32, 31, 30, and 29. Mot. at 4-5. <u>None</u> of claims 10, 11, 12, 17, 18, 30, 31, 32, 37, or 38 are in the case now, and <u>none</u> of them were in the case at *Markman*.

As Sable acknowledges (Mot., Ex. 10), Cloudflare made Sable aware that there are at least eight additional claim terms requiring construction if the Court allows resurrection, including four means-plus-function terms. 35 U.S.C. § 112, ¶ 6; *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1350 (Fed. Cir. 2003). Sable tries to skirt this issue by arguing about the parties' positions in the IPR, but the plain fact is that the IPR positions—and the PTAB's construction of the means-plus-function terms—were expressly for purposes of the IPR and do not supplant claim construction by the Court. *See* Mot., Ex. 6 at 11-12; Mot., Ex. 7 at 9-11; *see, e.g.*, *One-E-Way, Inc. v. Apple Inc.*, 22-CV-6339, 2022 WL 2564002, at *7 (C.D. Cal. June 15, 2022) (noting authority holding that district court is not bound by constructions from IPR proceedings); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 20-CV-00319, 2021 WL 5451020, at *24 (E.D. Tex. Nov. 22, 2021) (expressly rejecting PTAB construction as unpersuasive). Cloudflare is not aware of any authority requiring a district court to adopt IPR-related constructions. And Sable's position concerning the automatic application of IPR-related claim constructions contradicts its discovery responses in this case wherein Sable "specifically denies [Sable's statements in the IPR proceedings are] admissible or relevant to any issue in the present litigation, including any claim construction, which is in the sole province of the Court." Ex. 11 at, *e.g.*, 3.

Cloudflare does not agree that the parties' IPR positions and the PTAB constructions should simply be imported as the constructions here. As an example, Sable proposed (and Cloudflare agreed to) a construction of "means for maintaining a set of behavioral statistics for the flow . . ." (claim 29) much different from that used for the purposes of the IPR proceedings. This

is how the PTAB construed the first "means for maintaining a set of behavioral statistics . . ." term of claim 29 "for purposes of [its] Decision":

| Limitation | Function | Structure |
|---|---|---|
| "means for maintaining a set of behavioral statistics for the flow…" (claim 29) | maintaining a set of behavioral statistics for the flow | MFM 210 implemented on processors |

Mot., Ex. 7 at 9, 11. And this is how Cloudflare and Sable agreed that this same term should be construed in this action:

| Claim Term | Patent and Claims | Agreed Construction |
|---|---|---|
| "means for maintaining a set of behavioral statistics for the flow, wherein the set of behavioral statistics is updated based on each information packet belonging to the flow, as each information packet belonging to the flow is processed, regardless of the presence or absence of congestion" | 8,243,593 (29) | Governed by pre-AIA 35 U.S.C. § 112, ¶ 6<br><br>**Function:** maintaining a set of behavioral statistics for the flow, wherein the set of behavioral statistics is updated based on each information packet belonging to the flow, as each information packet belonging to the flow is processed, regardless of the presence or absence of congestion<br><br>**Structure:** router 102, flow block 402, statistics block 302, line card 202, misbehaving flow manager 210. See cols. 5:44-48, 6:9-24, 7:18-36, 7:38-45, 8:8-21, 8:41-56, 9:35-38, 9:49-51, and associated Figures |

ECF No. 65 (Amended Joint Claim Construction Statement) at 2-3. Plainly, Sable's suggestion that no further claim construction is needed based on the parties' positions in the IPR is unsupported.

The need for a second *Markman* is particularly acute where Cloudflare expects to challenge the definiteness of a number of claim terms. Indefiniteness is not something that may be challenged in an IPR. 35 U.S.C. § 311(b). The means-plus-function clauses of claims 31, 32, 37, and 38 are invalid for indefiniteness because the specification does not disclose any structure corresponding to the relevant functions. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352

(Fed. Cir. 2015). Sable argues that Cloudflare can raise indefiniteness arguments at summary judgment, Mot. at 13,[5] but under this Court's OGP and Scheduling Order the time to lodge indefiniteness arguments was at *Markman*. OGP v.3.4, App. A at 9; Scheduling Order, ECF No. 41 at 3.

Conducting a second *Markman* at this stage of the case would be prejudicial, both to the Court and the parties. *See, e.g.*, *Realtime Data, LLC v. Metropcs Texas, LLC*, 10-CV-493, 2012 WL 12903695 at *3 (E.D. Tex. Apr. 19, 2012); *Univ. of Va. Pat. Found*, 2019 WL 1993552 at *6 ("The claim construction hearing (also known as a *Markman* hearing) is a key milestone after which parties should further narrow their claims . . . Considering the unexplained delay in asserting the new claims, the timing of UVAPF's request—coming before claim construction—does not undo the lack of diligence shown by the seven-month delay."); *Realtime Data, LLC v. Packeteer, Inc.*, 08-CV-144, 2009 WL 2590101, at *5, 8 (E.D. Tex. Aug. 18, 2009) (denying leave to amend post-*Markman*, nine months after serving original infringement contentions). In contrast, the common thread of the case law Sable relies on is that, where the court allowed amendment, *Markman* had not occurred (or, in *Boston Scientific*, the claim was still in the case at *Markman*) and so a second *Markman* was not required. *See* Section IV.A.2, above (discussing *Boston Scientific*, *EMED*, *Corel*, and *ZiLOG*).

---

[5]     Sable miscites *Corel*, 2018 WL 5792323, at *3, on this point. *Corel* was a pre-*Markman* decision (in a district with local rules that call (perhaps counterintuitively) the last pre-*Markman* contentions "Final Contentions"). *Id.* at *2 ("See LPR 3.1-3.2 (describing the process for asserting Final Infringement Contentions and Final Non-infringement Contentions); LPR 4.1 (explaining that **14 days after service of the Final Contentions, the claim construction proceedings begin**). It would be incongruous to deny amendment now, at the final contentions stage of the litigation, only to grant **amendment later based upon a development in the claim construction stage** of the litigation").

### 2.     Cloudflare Would Be Unduly Prejudiced As To Discovery

Sable also remained silent about reviving claims for a substantial amount of discovery that cannot be re-done. For example, Cloudflare has already taken substantial third-party discovery directed to the '593 patent. Cloudflare deposed the sole named inventor of the '593 patent, third party Vishnu Natchu. Sable points to the different inventorship of the '593 patent from the other patents remaining in suit, so Sable cannot dispute that Mr. Natchu is an important witness. Mot. at 9. Cloudflare cannot re-depose Mr. Natchu (and should not be required to even if it could do so), and so allowing Sable to resurrect different claims of the '593 patent now would clearly prejudice Cloudflare. Cloudflare had no reason to question Mr. Natchu on those claims at his deposition. *See, e.g.*, Ex. 8 at 18:13-20:5; 24:14-25:21 (Natchu testifying that Caspian implemented certain features from independent claims in the Apeiro router), 25:22-26:23 (testifying generally about the claim term "badness factor").

Cloudflare has also already deposed the third-party prosecution counsel on the '593 patent—again, Cloudflare cannot (and should not be required to) retake that deposition, and so cannot question prosecution counsel on the dropped claims if Sable is allowed to reassert them.

Similarly, Cloudflare has subpoenaed documents from seven third parties relating to the '593 patent, and the expansion of asserted claims to include claims not in the case when Cloudflare issued those subpoenas would again unduly prejudice Cloudflare. Sable argues that "none of those subpoenas included technical topics specific to individual elements of the '593 claims, such as the elements implicated by the dependent claims at issue in this motion," Mot. at 10-11, but Sable (i) is wrong and (ii) misses the point in any event. Each subpoena sought the production of documents sufficient to show the operation of potential prior-art products. *See, e.g.*, Ex. 9 at 3, 5-6. Given their status as third parties, Cloudflare attempted to streamline the production of documents and the need for depositions based on the claims in the case. Cloudflare did not con-

sider claims 17, 18, 37, and 38 in making these decisions, did not ask any of the third parties to produce documents specific to those claims, and obviously cannot do so now. This is exactly the sort of prejudice that results in denial of a motion to amend to add claims.[6]

### 3.   Cloudflare Would Be Unduly Prejudiced As To The Expanded Scope Of The Case

Sable's mischaracterization of the contours of its case demonstrates prejudice to Cloud-flare. Sable suggests that it "will only have 18 asserted claims" if the Court grants the Motion and the four dropped claims are substituted in for the three current '593 claims, and the number of asserted patents will hold steady at three. Mot. at 1-2. While Sable implies it will drop the current three presently asserted '593 claims if it is allowed to "substitute in" the four dropped claims, Sable has not yet dropped the three current claims (even as it implies it cannot recover damages on them). Mot. at 9. So if Sable were taken at its implied word—that it is "precluded from recovering" on any of the currently asserted '593 claims, and has implicitly dropped those claims from the case, then what Sable's Motion truly asks for is the Court to expand the case from two related patents to include a third, very different patent (a point Sable emphasizes) with additional claims.

Sable also wrongly argues that resurrecting the previously dropped claims "should not raise any new invalidity or non-infringement theories." Mot. at 1. Claims 17, 18, 37, and 38 add at least 10 new claim limitations to the case including:

- "provid[ing] an indication of a degree to which the flow is behaving undesirably";

---

[6]    *See, e.g.*, *Realtime Data*, 2012 WL 12903695, at *3 ("Moreover, Defendants will suffer significant prejudice should the Court grant Realtime's Motion. . . . The Court has already held a *Markman* hearing and the addition of three new claims will likely result in the need to construe additional claims terms. Further, Defendants would likely need to search for and assess additional prior art, as well as amend invalidity contentions. It is worth noting that Realtime seeks to add new claims, as opposed to additional products; adding new claims or patents typically results in more significant prejudice to defendants.").

- "determining . . . a penalty to impose on the flow";

- "enforcing the penalty on the flow";

- "determining an increased drop rate to impose . . .";

- "imposing the increased drop rate on the flow such that the information packets belonging to the flow have a higher probability of being dropped . . ."; and

-  "means for" each of the foregoing.

Proof of currently-asserted claims 9 and 29's alleged infringement does <u>not</u> mean that the proposed-claims-to-be-resurrected are also infringed. Each limitation of a claim must be proven. Therefore, Sable's infringement theories will in fact change and require the submission of additional evidence and Cloudflare's invalidity case will need to specifically address at least 10 new limitations.

Such a substantial expansion of claims, patents, and issues—based on the current state of the case if Sable's representations in the Motion are taken as true—is not only unwarranted but unduly prejudicial to Cloudflare.

### 4. Cloudflare Would Be Unduly Prejudiced As To The '593 IPR

If the Court grants the Motion, Sable's choice not to timely request leave to assert claims 17, 18, 37, and 38 in the litigation also would cause undue prejudice to Cloudflare in the '593 IPR. Cloudflare and Sable learned of the PTAB's concerns about the IPR grounds as to claims 17, 18, 37, and 38—on which the final decision ultimately turned—in the PTAB's November 19, 2021 institution decision, which invited the parties to address the issue. Ex. 10 at 3, 39. Had Sable not dropped claims 17, 18, 37, and 38 from the litigation—and kept them out—Cloudflare would have had several options. It could have (i) filed an earlier motion to correct its IPR Petition; or (ii) terminated the IPR with regard to the four claims at issue (such that no estoppel would apply); or (iii) terminated and re-filed the IPR with slight modification; or (iv) filed a new,

corrected IPR petition and moved to join it to the existing IPR. But none of these options would have been reasonable with respect to claims that Sable did not assert in the litigation. As such, Sable's delay and lack of diligence in seeking to resurrect the claims also unduly prejudiced Cloudflare by unfairly limiting its options in the IPR.

### D.   A Continuance Is Available—But Sable Does Not Want One, And It Would Not Cure Cloudflare's Prejudice

Cloudflare notes that some of Sable's cases show that the availability of a continuance to cure prejudice is a factor that the Court may consider, yet Sable fails to address a continuance at all. It is clear that Sable does not want a continuance, and Sable is unable to argue that a continuance would cure the prejudice to Cloudflare from granting the Motion. That is to say, additional time in the case schedule would not change, for example, that Cloudflare cannot redo its past third-party discovery on the '593 patent or that the Court would have to hold a second *Markman*. Accordingly, this factor also counsels in favor of denying the Motion.

## V.   CONCLUSION

For these reasons, the Court should deny the Motion.

Dated: November 18, 2022          Respectfully submitted,

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
ANTHONY M. GARZA
  Texas State Bar No. 24050644
  agarza@ccrglaw.com
C. LUKE NELSON
  Texas State Bar No. 24051107
  lnelson@ccrglaw.com
MITCHELL R. SIBLEY
  Admitted *pro hac vice*
  Texas State Bar No. 24073097
  msibley@ccrglaw.com
JOHN HEUTON
  Admitted *pro hac vice*
  jheuton@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 18, 2022, I served the foregoing by ECF on the following counsel for Plaintiffs:

Dorian S. Berger, Esq.
Daniel P. Hipskind, Esq.
**BERGER & HIPSKIND LLP**
9538 Brighton Way, Ste. 320
Beverly Hills, California 90210
Telephone: (323) 886-3430
Telecopier: (323) 978-5508
dsb@bergerhipskind.com
dph@bergerhipskind.com

Christopher K. Larus, Esq.
John K. Harting, Esq.
Jessica L. Gutierrez, Esq.
Spencer R. Davis-VanNess, Esq.
**ROBINS KAPLAN LLP**
800 LaSalle Ave., Ste. 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Telecopier: (612) 339-4181
clarus@robinskaplan.com
jharting@robinskaplan.com
jgutierrez@robinskaplan.com
sdavis-vanness@robinskaplan.com

Elizabeth L. DeRieux, Esq.
**CAPSHAW DERIEUX, LLP**
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: (903) 845-5770
Telecopier: (903) 236-8787
ederieux@capshawlaw.com

STEVEN CALLAHAN