**IN THE UNITED STATES DISTRICT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| Sable Networks, Inc. and<br>Sable IP, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Cloudflare, Inc.,<br><br>    Defendant. | Civil Action No.<br>6:21-cv-00261-ADA-DTG<br><br>JURY TRIAL DEMANDED |

**REPLY IN SUPPORT OF SABLE'S MOTION FOR LEAVE TO**
**AMEND PRELIMINARY INFRINGEMENT CONTENTIONS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 1
I. Cloudflare's Effort to Impose a Heightened "Good Cause" Standard is Unfounded .......... 1
II. An Accurate Portrayal of the Record Demonstrates Good Cause Exists to Amend .......... 2
A. Sable narrowed its claims in accordance with the Court's model order .......... 2
B. Sable Diligently Pursued Amendment .......... 4
III. Cloudflare Dismisses the Importance of Amendment to Reassert the '593 Patent .......... 6
IV. Cloudflare Will Not be Unfairly Prejudiced by Litigating Against the '593 Patent .......... 6
A. An additional Markman hearing is not necessary .......... 7
B. Cloudflare does not identify anything it would have actually done differently in discovery had claims 17, 18, 37, and 38 remained in the case .......... 8
C. Cloudflare ignores the impact of IPR estoppel .......... 9
V. A Continuance Could Cure Any Minimal Prejudice to Cloudflare .......... 10
CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boston Sci. Cor. v. Cook Grp. Inc.*,
   No. 1:17-cv-03448-JRS, Dkt. 449 (S.D. Ind. Aug. 16, 2021) ...................................................7

*California Inst. Of Tech. v. Broadcom Ltd.*,
   25 F.4th 976 (Fed. Cir. 2022) ...................................................................................................9

*Corel Software, LLC v. Microsoft Corp.*,
   2018 WL 5792323 (D. Utah Nov. 5, 2018) ..............................................................................4

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
   No. 2:15-cv-01167-JRG, 2018 WL 6440893 (E.D. Tex. Nov. 16, 2018) .................................4

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
   977 F.3d 1212 (Fed. Cir. 2020) .................................................................................................8

*Imperium (IP) Holdings, Inc. v. Apple, Inc.*,
   920 F. Supp. 2d 747 (E.D. Tex. 2013) ......................................................................................7

*Jawbone Innovs., LLC v. Google LLC*,
   2022 WL 707229 (W.D. Tex. Mar. 8, 2022) .............................................................................3

*Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*,
   2010 WL 11452386 (S.D. Cal. June 25, 2010) .........................................................................5

*Papst Licensing GmbH & Co. v. Apple, Inc.*,
   2020 WL 11613777 (E.D. Tex. July 1, 2020) .......................................................................2, 5

*Realtime Data, LLC v. Packeteer, Inc.*,
   08-CV-144, 2009 WL2590101 (E.D. Tex. Aug. 18, 2009) .......................................................5

*Uniloc USA, Inc. v. Distinctive Devs. Ltd.*,
   2016 WL 11485612 (E.D. Tex. Dec. 13, 2016) ........................................................................6

*Univ. of Va. Pat. Found. v. Gen. Elec. Co.*,
   2019 WL 1993552 (W.D. Va. May 6, 2019) ............................................................................6

**Statutes**

35 U.S.C. § 315(e) ...........................................................................................................................9

# INTRODUCTION

Cloudflare sought the benefit afforded to accused infringers by petitioning the PTAB for *inter partes* review of all claims Sable originally asserted from the '593 Patent, including both the currently asserted independent claims 3, 9, and 29, as well as dependent claims 17, 18, 37, and 38—the claims that Sable seeks to substitute in and reassert via the instant motion. The PTAB ultimately found all asserted claims in the '593 Patent invalid, except for claims 17, 18, 37, and 38. Thus, the IPR process served Cloudflare's purposes in narrowing the case.

Within two weeks of the PTAB's Final Written Decision ("FWD"), Sable filed the instant motion, seeking to amend its preliminary infringement contentions to substitute the remaining valid claims for the currently invalidated independent claims. Dkt. 158. As Sable explained in its opening brief, amendment is very important to Sable, Cloudflare will not be prejudiced by the relief Sable seeks, and even if there was some minimal prejudice, it can be cured by a schedule extension, particularly where fact discovery does not close for at least several months.

Nonetheless, and even after getting the benefit of the IPR proceedings, Cloudflare asks this Court to go a step further. Cloudflare asks this Court to severely penalize Sable for agreeing to narrow its case prior to *Markman*, even with the Court's ultimate requirement of narrowing for trial in mind, by effectively granting summary judgment against Sable on the '593 Patent. Cloudflare's arguments are unsupported and should be rejected. Each of the relevant factors supports finding good cause to grant Sable leave to amend.

# ARGUMENT

## I. Cloudflare's Effort to Impose a Heightened "Good Cause" Standard is Unfounded

The parties agree that in order to amend its preliminary contentions to substitute claims 17, 18, 37, and 38 of the '593 Patent, Sable must show good cause. Dkt. 161 at 7 (citing Dkt. 158 at 6). Indeed, Cloudflare agrees that the good cause standard considers: (1) Sable's

1

diligence, (2) the importance of the reasserted claims, and (3) whether Cloudflare will be unfairly prejudiced. *Id*. (internal citations omitted). But in arguing that Sable fails to meet this standard, Cloudflare actually imposes a heightened standard that is wholly irrelevant to the present motion.

More specifically, Cloudflare would also have this Court require a finding that "despite the exercise of diligence, [Sable] cannot reasonably meet the court-mandated deadline." Dkt. 161 at 7 (quoting *Papst Licensing GmbH & Co. v. Apple, Inc.*, 2020 WL 11613777, at *2 (E.D. Tex. July 1, 2020). Not so. Unlike the present motion, *Papst* involved an amendment to ***final*** contentions and was brought nearly six months after the PTAB confirmed the patentability of the at-issue claim. *Papst*, 2020 WL 11613777, at *1-2. Here, Sable seeks to amend its ***preliminary*** contentions, and filed the instant motion six weeks before the deadline to serve final contentions. Accordingly, *Papst's* additional requirement is simply not applicable to the present motion and should be afforded no weight. Applying the correct standard, Sable's motion should be granted.[1]

## II.    An Accurate Portrayal of the Record Demonstrates Good Cause Exists to Amend

### A.    Sable narrowed its claims in accordance with the Court's model order

Cloudflare's opposition brief attempts to create a *de facto* presumption that Sable was not diligent because Sable agreed to a scheduling order that required earlier dropping of asserted claims than would otherwise always be required under this Court's model order. Cloudflare's argument, however, ignores that a Plaintiff in this Court will ***always*** have to narrow claims for trial. *See* Dkt. 27, Appx. A. Sable should not be punished for attempting to streamline issues for trial in good faith, particularly where amendment is sought while still at the preliminary contention stage, months prior to the end of fact discovery, and to assert previously-asserted claims that depend from the invalidated independent claims. Indeed, while Cloudflare cites this

---

[1] Even applying *Papst's* standard, however, good cause would still exist as Sable filed the motion six weeks prior to the deadline for final contentions.

2

Court's decision in *Jawbone* in support of its argument, *Jawbone* actually shows that this Court believes a plaintiff should have the benefit of validity proceedings before having to make a final election of claims to assert at trial. *Jawbone Innovs., LLC v. Google LLC*, 2022 WL 707229, at *2 (W.D. Tex. Mar. 8, 2022). That is the exact relief Sable is seeking.

However, even were this Court to agree with Cloudflare's argument, the record proves that Sable's agreement to the then-operative scheduling order was predicated on obtaining a faster trial date—something that has not come to fruition in any way. As explained by the Court's Patent FAQs, when negotiating the scheduling order Sable could have either proceeded with all originally-asserted 98 claims across four patents, with the tradeoff being a longer case schedule, or Sable could agree to reduce the number of claims to 50 (or less) and receive the benefit of the Court's default schedule that would hold trial one year from the *Markman* hearing. *See* Dkt. 27, JUDGE ALBRIGHT PATENT FAQ.

Recognizing that no matter what, it would eventually have to reduce the number of asserted claims before trial, Sable opted for the latter approach, with trial originally estimated for January, 2023. Dkt. 41 at 5. For a variety of reasons, including, however, numerous delays by Cloudflare in producing requested and highly relevant discovery, deadlines have been extended multiple times and trial is now estimated for at the earliest, the second half of 2023.[2] Even more, it was **Cloudflare** who requested that Sable reduce the number of asserted claims prior to the *Markman* hearing. Dkt. 23 at 2 ("Plaintiffs—at Defendants' request—have agreed to reduce the number of asserted claims to 45 claims before claim construction exchanges begin[.]").

---

[2] The parties are currently finalizing and expect to file shortly a joint pleading that will seek to extend the case schedule. Sable's current trial proposal is July, 2023. Cloudflare proposes September, 2023.

But again, Cloudflare has not held up its end of the bargain. As this Court is aware, Cloudflare's discovery gamesmanship and its decision to pursue an unfounded transfer motion all the way to the Federal Circuit have significantly delayed the original agreed-upon schedule. *See, e.g.*, Dkt. Nos. 26 (transfer motion); 124 (Rule 72(a) objections); 125 (motion to stay *Markman* hearing); 150 (order granting Sable's motion to compel). As a matter of equity, even were this Court to find Sable made a strategic decision to forgo claims earlier than necessary, Sable should not be punished by not receiving the benefit of the negotiated case schedule while simultaneously bearing the burden of Cloudflare's litigation tactics.

      **B.**      **Sable Diligently Pursued Amendment**

Cloudflare's arguments that Sable should have filed this motion sooner are without merit. First, Cloudflare argues that Sable could have sought to re-assert claims 17, 18, 37, and 38 when Sable further narrowed the asserted claims on March 1, 2022, during the pendency of the IPRs. Dkt. 161 at 9. Cloudflare does not offer any support for this position, but it is wrong. The relevant date for measuring diligence to amend preliminary contentions is when the PTAB issues its final written decision. *See, e.g.*, *Corel Software, LLC v. Microsoft Corp.*, 2018 WL 5792323, at *2 (D. Utah Nov. 5, 2018) (rejecting argument that diligence should be measured from earlier date and finding diligence period was triggered by PTAB's "favorable analysis of [] patentability"); *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:15-cv-01167-JRG, 2018 WL 6440893, at *1–2 (E.D. Tex. Nov. 16, 2018) (finding good cause existed where "the need to assert claim 9 only became apparent after denial of [plaintiff's IPR] rehearing petition").

Beyond that, Cloudflare's cited case law is inapposite to the posture of the present motion. Cloudflare's citations to *Medtronic* and *Realtime Data* stand for the general proposition that an unreasonable delay does not support diligence. Neither case involves a triggering event such as a patent office proceeding, and the delay period is several months longer than that here.

4

*See Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 2010 WL 11452386, at *1-2 (S.D. Cal. June 25, 2010) (denying motion to assert entirely new claims that were known five months earlier, yet were not identified due to an "administrative error"); *Realtime Data, LLC v. Packeteer, Inc.*, 08-CV-144, 2009 WL2590101, at *5 (E.D. Tex. Aug. 18, 2009) (denying motion to amend where plaintiff "fail[ed] to point to a single piece of documentary evidence" justifying a nine-month delay). Cloudflare's attempt to distinguish these cases as all occurring before *Markman* is not relevant to diligence, and indeed Cloudflare **does not contest** that if diligence is properly measured from the time of the FWD, Sable was diligent.[3] Dkt. 161 at 11.

Moreover, Cloudflare's additional cited caselaw is either distinguishable or actually supports Sable's diligence. For example, *Papst* actually underscores Sable's diligence, where in *Papst* the plaintiff did not seek amendment until **six months** after the PTAB issued its final written decision, 18 months after fact discovery closed, 16 months after expert discovery closed, and after dispositive motions had already been filed. *Papst*, 2020 WL 11613777, at *3. While Cloudflare cites *Papst* to argue that the information relied on by Sable to support its motion was previously known, in *Papst* the information that was previously known included the PTAB's reason for **denying institution** on one of the relevant IPRs, as well as the defendants' decision to not include the claim the plaintiff sought to assert in defendants' IPR petitions. *Id*. Sable, on the other hand, only relies on the October 18 FWD. *Uniloc* is also inapposite, as there the plaintiff sought to add an entirely new claim after IPR, where it had only asserted one single claim to begin with and provided no explanation as to why the claim it sought to add was not added

---

[3] Sable fundamentally disagrees with Cloudflare's argument that the present motion will expand the case from two asserted patents to three, Dkt. 161 at 18-19, but Cloudflare's argument effectively concedes that diligence is measured from the issuance of the FWD, as the currently-asserted claims were not invalidated until that time. Thus, there was no need to "expand" the case from two to three patents until that occurred, triggering the diligence period.

5

earlier. *Uniloc USA, Inc. v. Distinctive Devs. Ltd.*, 2016 WL 11485612, at *1-2 (E.D. Tex. Dec. 13, 2016). Here, claims 17, 18, 37, and 38 of the '593 Patent were included in Sable's preliminary contentions—a fact Cloudflare does not dispute—and would not interject any new theories into the case. Indeed, this fact also distinguishes *Virginia Patent*, where that Court's holding was predicated primarily on the fact that the claims the Plaintiff sought to add had never been asserted before and were not part of the PTAB's review. *Univ. of Va. Pat. Found. v. Gen. Elec. Co.*, 2019 WL 1993552, at *5 (W.D. Va. May 6, 2019).

Here, Sable was diligent. This motion was filed approximately two weeks after the FWD.

### III. Cloudflare Dismisses the Importance of Amendment to Reassert the '593 Patent

Cloudflare's brief appears to take the position that claims 17, 18, 37, and 38 "are not important" to Sable simply because the PTAB invalidated the predicate claims from which these claims depend. Dkt. 161 at 13. Again, Sable is wrong. The PTAB invalidated all of the currently asserted claims, but expressly found that "Petitioner has not shown, by a preponderance of the evidence, that the subject matter of claims 17, 18, 37, or 38 would have been obvious over Yung." Dkt. 158-8. Thus, precluding Sable from reasserting claims 17, 18, 37, and 38 would effectively amount to granting summary judgement of non-infringement in Cloudflare's favor. As explained in Sable's opening brief—and unrebutted by Cloudflare—such a result would effectively preclude Sable from recovering damages from Cloudflare's past and ongoing infringement and operate as a deprivation of due process. Dkt. 158 at 8-9 (citing *In re Katz*, 639 F.3d 1303, 1311-12 (Fed. Cir. 2011); *Certusview Techs., LLC v. S&N Locating Servs., LLC*, No. 2:13-cv-346, 2014 WL 4930803, at *5 (E.D. Va. Oct. 1, 2014)). This weighs in Sable's favor.

### IV. Cloudflare Will Not be Unfairly Prejudiced by Litigating Against the '593 Patent

Cloudflare's opposition brief purports to identify a litany of reasons why it contends it will be unfairly prejudiced if this motion is granted. Upon closer inspection, however, each of

those reasons ring hollow. While Sable does not dispute that Cloudflare will have more work to do litigating this case if the '593 Patent remains in the case, as compared to if this motion is denied, that does not mean Cloudflare will be **unfairly** prejudiced. *See Boston Sci. Corp. v. Cook Grp. Inc.*, No. 1:17-cv-03448-JRS, Dkt. 449 at *13 (S.D. Ind. Aug. 16, 2021) (Dkt. 158-14) ("While there is no doubt that permitting Claim 13 to be reasserted will result in additional work for both the parties and the Court—making this case about two patents instead of just one—this is not 'prejudice' in this context."). Beyond that, Cloudflare fails to identify anything it would have done differently in discovery, and generally fails to show it will be unfairly prejudiced.

### A.     An additional *Markman* hearing is not necessary

Cloudflare's argument that an additional *Markman* hearing would be needed is flawed and unsupported. First, Cloudflare's contention that eight additional claim terms would require construction ignores this Court's Standing Order Governing Patent Cases, which limits the number of claim terms for construction to ten. Dkt. 27 at 3. This limit was in place during the October *Markman* hearing, and Cloudflare offers no explanation—because none exists—why it would now be entitled to double the scope of claim construction. Similarly, Cloudflare's assertion that all means-plus-function claims must be construed is undercut by the fact that Cloudflare did not assert or otherwise even ask this Court to construe every means-plus-function claim term in the currently asserted claims.

Second, Cloudflare's purported indefiniteness challenges to claims 37 and 38 can be addressed at the summary judgment stage, and do not necessitate another *Markman* hearing.[4] *Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 750 (E.D. Tex. 2013)

---

[4] Cloudflare's opposition brief identifies only claims 31, 32, 37, and 38 as means-plus-function claims that would be challenged as indefinite. Dkt. 161 at 15. Accordingly, claims 17 and 18 would not be challenged as indefinite.

7

(addressing indefiniteness at summary judgment stage). Finally, while this Court is not required to adopt the PTAB's claim construction rulings, the positions taken by Cloudflare certainly can, and should, be highly relevant to this Court's analysis. As Sable noted in its opening brief, in its IPR petition Cloudflare asserted that claims 17 and 18 were subject to their plain and ordinary meaning and did not require construction, and identified function and corresponding structure for claims 37 and 38. Dkt. 158 at 4 (citing Dkt. 158-8 at 8-12). Cloudflare should not be afforded the opportunity to use the claim construction process as both a sword in the IPR, and as a shield in district court. This is especially true given the IPR process now applies the same claim construction standard as this Court. *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1216 (Fed. Cir. 2020) ("Today, in all newly filed IPRs, the Board applies the *Phillips* district-court claim construction standard.") (citing 37 C.F.R. § 42.100(b)).

    **B.**    **Cloudflare does not identify anything it would have actually done differently in discovery had claims 17, 18, 37, and 38 remained in the case**

Cloudflare's assertions about what it ***could*** have done differently during fact discovery, which remains on-going, are vague and unsupported. Much like its thrice-rejected transfer motion, Cloudflare's broad recitation to the record—without saying what it would have actually done different—is not enough to demonstrate unfair prejudice.

Cloudflare first identifies the deposition of Mr. Vishnu Natchu, the inventor of the '593 Patent, as one third-party witness who Cloudflare would need to, but cannot, depose for a second time if claims 17, 18, 37, and 38 are reasserted. However, Cloudflare does not identify a single question, topic, or claim term that Cloudflare would have explored with Mr. Natchu had these claims not been dropped. *See* Dkt. 161 at 17. Tellingly, during his deposition, Cloudflare only asked generally about the technology of the '593 Patent as a whole. The only claim Cloudflare asked about was claim 9 (from which claims 17 and 18 depend), where the questioning was

8

limited to the meaning of the term "flow." *See* Dkt. 161-8 at 14:4-16:12. And rather than ask about any specific passage of the '593 Patent, Cloudflare instead asked generally about one figure when questioning him about his understanding of "badness factor." *Id*. at 26:18-28:3. Cloudflare's actual questioning of Mr. Natchu undermines its assertion of unfair prejudice.

Similarly, Cloudflare's single-sentence argument that it did not have an opportunity to depose prosecution counsel on claims 17, 18, 37, and 38 cannot establish unfair prejudice. Dkt. 161 at 17. Cloudflare actually did depose prosecution counsel, but like Mr. Natchu's deposition, did not ask a single question about any individual claim element, term, or passage from the specification. Ex. 1 at 33:6-60:2. And again, Cloudflare does not identify any topics or questions that it was unable to explore, and it is not this Court's role to guess how Cloudflare is unfairly prejudiced by the current state of the record.

The notion that Cloudflare is unfairly prejudiced with respect to it third-party document subpoenas is likewise misplaced. As Sable argued in its opening brief—a point Cloudflare did not contest—Cloudflare did not draft its prior art subpoenas to address specific individual elements of the '593 claims. Dkt. 158-12. Cloudflare's assertions about what it "could" have done differently are undermined, unsupported, and do not establish unfair prejudice.

### C. Cloudflare ignores the impact of IPR estoppel

Finally, Cloudflare's assertions regarding its invalidity contentions ignore the impact of IPR estoppel, which now applies following the PTAB's FWD. 35 U.S.C. § 315(e); *California Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022). In fact, Cloudflare does not address this issue at all in its responsive brief. *See* Dkt. 161 at 18-20. But either way, in light of IPR estoppel, there will be no unfair prejudice caused by the "expanded scope of the case," as Cloudflare alleges. Cloudflare will not have to amend its invalidity contentions to "specifically address at least 10 new limitations" and develop its invalidity theories of claims 17, 18, 37, and

9

38, as Cloudflare is now estopped from asserting such defenses. Dkt. 161 at 19. And while fact discovery is ongoing, Cloudflare will have ample time to develop whatever non-infringement positions it finds relevant to these four limited, dependent claims.

Nor can Cloudflare's regret regarding actions it took during the IPR, in which it was the petitioner, be attributable to claims 17, 18, 37, and 38 not being in the case. Dkt. 161 at 19-20. The four "options" that Cloudflare identifies following the PTAB's institution decision were always available to Cloudflare. Cloudflare's vague assertion is also undercut by the fact that Cloudflare vociferously defended the completeness and accuracy of its petition in the IPR, and is even appealing the FWD regardless of whether the Court grants Sable's motion. Dkt. 161 at 6.

**V.    A Continuance Could Cure Any Minimal Prejudice to Cloudflare**

Cloudflare's argument that a continuance would not cure any alleged prejudice—and that Sable is unwilling to agree to one—ignores the discussions between the parties during meet-and-confers preceding this motion. Sable has clearly represented that "if the Court were to grant that motion [to amend its preliminary contentions], Sable would agree to Cloudflare's proposed schedule." *See* n. 2, *supra*. To the extent the Court believes Cloudflare will be prejudiced at all, which it will not, such prejudice can be alleviated by such a further extension of the case schedule.

**CONCLUSION**

For the reasons stated above, Sable respectfully requests that the Court grant Sable leave to amend its preliminary infringement contentions to substitute in and reassert claims 17, 18, 37, and 38 of the '593 Patent.

Dated: November 28, 2022

**ROBINS KAPLAN LLP**

By: */s/ John K. Harting*
Christopher K. Larus (MN SB No. 0226828)
(admitted *pro hac vice*)
John K. Harting (MN SB No. 0392234)
(admitted *pro hac vice*)
Jessica L. Gutierrez (MN SB No. 0396359)
(admitted *pro hac vice*)
Austin B. Miller (MN SB No. 0399340)
(admitted *pro hac vice*)
Spencer R. Davis-VanNess (MN SB No. 0402894)
(admitted *pro hac vice*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612)349-8500
Facsimile: (612) 339-4181

**CAPSHAW DERIEUX, LLP**

Elizabeth L. DeRieux (TX Bar No. 05770585)
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-236-9800
Facsimile: 903-236-8787
E-mail: ederieux@capshawlaw.com

**BERGER & HIPSKIND LLP**

Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
9538 Brighton Way, Suite 320
Beverly Hills, California 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Sable Networks, Inc. and Sable IP, LLC*

**Certificate of Service**

I hereby certify that on November 28, 2022, I caused a true and correct copy of the foregoing document to be served via email on counsel of record.

Dated: November 28, 2022                    /s/ *John K. Harting*
                                            John K. Harting