IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| Sable Networks, Inc. and Sable IP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Cloudflare, Inc.,<br><br>Defendant. | **PUBLIC VERSION**<br><br>Civil Action No.<br>6:21-cv-00261-ADA-DTG<br><br>**JURY TRIAL DEMANDED**<br> |

**CLOUDFLARE'S SECOND MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

October 2, 2023

# **TABLE OF CONTENTS**

A.  Sable Did Not Own The Patents When It Filed Suit ............................................................. 1

B.  The *Nunc Pro Tunc* Provision In The August 14, 2008 AIPR Does Not
    Confer Ownership Of The Patent-In-Suit On Sable Networks ........................................... 4

   1.  *Abraxis* Confirms That Sable Lacks Ownership ...................................................... 4
   2.  *In re CTP Innovations* Confirms That Sable Lacks Ownership ............................. 7
   3.  *Argentum Medical* Confirms That Sable Lacks Ownership ................................. 10
   4.  Application Of *Abraxis*, *CTP*, And *Argentum* To The Instant Case ..................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
 625 F.3d 1359 (Fed. Cir. 2010) ............................................................................................ passim

*Argentum Medical, LLC v. Noble Biomaterials*,
 08-CV-1305, 2010 WL 2650493 (M.D. Pa. July 1, 2010) .................................................... passim

*EMA Electromechanics, Inc. v. Siemens Corp.*,
 21-CV-00206, 2022 WL 2759094 (W.D. Tex. July 13, 2022) ..................................................... 11

*Enzo APA & Son, Inc. v. Geapag A.G.*,
 134 F.3d 1090 (Fed. Cir. 1998) ............................................................................................... 9, 11

*Filmtec Corp. v. Allied-Signal Inc.*,
 939 F.2d 1568 (Fed. Cir. 1991) ..................................................................................................... 3

*In re CTP Innovations, LLC*, 14-CV-3884,
 2016 WL 6996738 (D. Md. Nov. 30, 2016) ......................................................................... passim

*Mitchell v. Hawley*,
 83 U.S. 544, 550 (1872) ................................................................................................................ 8

*Pandrol USA, LP v. Airboss Ry. Products, Inc.*,
 320 F.3d 1354, 1367 (Fed. Cir. 2003) ........................................................................................... 1

*Prima Tek II, L.L.C. v. A-Roo Co.*,
 222 F.3d 1372, 1382 (Fed. Cir. 2000) ........................................................................................... 4

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
 917 F. Supp. 305 (D. Del. 1995) ................................................................................................... 9

In addition to the reasons stated in Defendant Cloudflare, Inc.'s prior subject-matter-jurisdiction briefing,[1] the Court should dismiss this case because there is **an ineffective *nunc pro tunc* assignment** in Plaintiffs Sable Networks, Inc. ("Sable Networks") and Sable IP, LLC's ("Sable IP") (collectively, "Sable") purported chain of title to the patents-in-suit such that Sable Networks did not own the patents on the day it sued Cloudflare.

A.  **Sable Did Not Own The Patents When It Filed Suit**

On the day Sable filed suit, Sable Networks did not own the asserted patents. Instead, Mobile Convergence owned the patents, and remains the owner as of today. As such, Sable does not have standing to litigate this case.

The chain of title to the patents-in-suit is as follows:

| Date | Event | Owner Of Patents-In-Suit |
|---|---|---|
| October 11, 2005 | '431 patent issued. *See* ECF No. 1-1 ('431 patent, listing Caspian Networks, Inc. as assignee). | Caspian Networks, Inc. |
| March 14, 2006 | '919 patent issued. *See* ECF No. 1-1 ('919 patent, listing Caspian Networks, Inc. as assignee). | Caspian Networks, Inc. |

---

[1] ECF Nos. 220, 242, 253, 284, 299. While preparing for the upcoming final pre-trial conference, Cloudflare re-reviewed Sable's document production and other discovery materials relating to the assignment history of the asserted patents. In doing so, Cloudflare for the first time recognized the significance of the facts underlying this motion. Cloudflare regrets not moving to dismiss on this specific ground sooner. Sable's chain-of-title interrogatory response (Ex. 1 at 46-48) did not identify the break in the chain of title, hampering Cloudflare's ability to recognize the significance of these facts. In any event, a party may raise standing at any time. *See, e.g., Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003) ("It is well-established that any party, and even the court *sua sponte*, can raise the issue of standing for the first time at any stage of the litigation, including on appeal.").

1

| | | |
|---|---|---|
| September 25, 2006 | Caspian Networks, Inc. assigned the patents-in-suit to Caspian (assignment for the benefit of creditors), LLC ("Caspian ABC").[2]<br><br>*See* Ex. 2 (General Assignment entered into on September 25, 2006 between Caspian Networks, Inc. and Caspian ABC). | Caspian ABC |
| March 28, 2008 | Mobile Convergence[3] *purports* to assign the patents-in-suit to Sable Networks.<br><br>*See* Ex. 4 (Intellectual Property Assignment Agreement entered into as of March 28, 2008 between Sable Networks and Mobile Convergence ("**IPAA**")). | **Caspian ABC**<br><br>As explained below, the purported assignment from Mobile Convergence to Sable Networks was *ineffective* to transfer the patents-in-suit to Sable Networks, as Mobile Convergence could not assign the patents-in-suit to Sable Networks on March 28, 2008, because Caspian ABC did not assign them to Mobile |

---

[2]  Caspian ABC and Mobile Convergence entered into an Asset Purchase Agreement as of November 6, 2006, whereby the parties stated that Caspian ABC "agrees to sell, assign, transfer and convey to Buyer [Mobile Convergence] at the Closing . . . all of Seller's [Caspian ABC's] right, title and interest in and to all of the Required Assets [including the patents-in-suit]." Ex. 3 at § 1.1. The copy of the Asset Purchase Agreement produced by Sable is incomplete, and does not indicate when "Closing" would occur. *Id.* at § 2.2. Regardless, it is well established, including by those cases cited by Sable, that "agrees to" assign language does not constitute an actual assignment—a later written assignment agreement is necessary to effectuate an assignment. *See* ECF Nos. 218 (at 17), 236 (at 8) (Sable citing "agrees to" cases); *see also*, *e.g.*, *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364-65 (Fed. Cir. 2010) ("contracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee"; "contract language stating that a party 'agrees to assign' reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests"). Given this, the (incomplete) Asset Purchase Agreement is irrelevant for standing purposes, as it did not assign the patents-in-suit to Mobile Convergence.

[3]  The parties have an additional (and currently pending) dispute over whether Mobile Convergence Ltd. or Mobile Convergence Company, Ltd. came to own the patents-in-suit. *See, e.g.*, ECF Nos. 253, 278, 284 (Cloudflare asserting that Mobile Convergence Ltd. came to own the patents-in-suit, with Sable asserting that Mobile Convergence Company, Ltd. came to own them). That dispute is immaterial to this motion, because whichever Mobile Convergence entity came to own the patents, Sable would still lack standing. Cloudflare therefore uses "Mobile Convergence" in this motion to refer to either entity.

2

| | | |
|---|---|---|
| | | Convergence until August 14, 2008.[4] |
| August 14, 2008 | Caspian ABC assigned the patents-in-suit to Mobile Convergence. *See* Ex. 5 (Assignment of Intellectual Property Rights ("**AIPR**") between Caspian ABC and Mobile Convergence, executed on August 14, 2008). The AIPR has a purported "effective" date of January 15, 2007, but as noted below, this *nunc pro tunc* provision is **ineffective** to retroactively transfer the patents-in-suit to Mobile Convergence as of January 15, 2007 and thereafter to Sable Networks as of March 28, 2008. | **Mobile Convergence** |
| March 15, 2021 | Sable sues Cloudflare. *See* ECF No. 1 (Compl. for Patent Infringement). | **Mobile Convergence**, not Sable Networks |

As shown, Mobile Convergence could not convey the patents to Sable Networks on March 28, 2008, as Mobile Convergence did not receive them from Caspian ABC until August 14, 2008. In other words, because Mobile Convergence did not actually own the patents on March 28, 2008, it could not have transferred them to Sable Networks under the March 28, 2008 IPAA. And, because Mobile Convergence never assigned the patents to Sable Networks after August 14, 2008 (i.e., the date Mobile Convergence received them from Caspian ABC under the AIPR), Sable Networks never became the owner of the patents. Thus, on the day Sable filed suit,

---

[4] A purported assignment is a "nullity" if the assignor "had nothing to give." *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991).

3

Sable Networks did not own the patents. Mobile Convergence was (and remains) the owner. As such, Sable lacks standing to prosecute this case.[5]

### B. The *Nunc Pro Tunc* Provision In The August 14, 2008 AIPR Does Not Confer Ownership Of The Patent-In-Suit On Sable Networks

Sable may argue that, given the August 14, 2008 AIPR's *nunc pro tunc* language purporting to transfer the patents from Caspian ABC to Mobile Convergence "effective" as of January 15, 2007, the March 28, 2008 IPAA entered into between Mobile Convergence and Sable Networks effectively transferred the patents to Sable Networks pre-suit. The Court should reject any such argument, as *nunc pro tunc* provisions are ineffective to "retroactively" assign patents. Or, even if *nunc pro tunc* provisions could transfer patent rights "retroactively," the *nunc pro tunc* provision in the August 14, 2008 AIPR is insufficient to confer ownership on Sable, because a subsequent written agreement from Mobile Convergence conveying the patents to Sable would have been necessary (as the authority below shows), and no such agreement exists.

#### 1. *Abraxis* Confirms That Sable Lacks Ownership

The Federal Circuit's decision in *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010), dooms Sable's standing. In *Abraxis*, the Federal Circuit found that a *nunc pro tunc* assignment alone (i.e., in the absence of a subsequent written assignment) could not remedy a break in a chain of title. The court therefore found that the plaintiff (Abraxis Bioscience, Inc. ("Abraxis")) did not own the patent on the day it filed suit (and thus lacked standing) due to a break in the chain of title that a post-suit *nunc pro tunc* assignment could not remedy.[6]

---

[5] Because Sable Networks never came to own the patents-in-suit, it could not exclusively license them to Sable IP (the purported exclusive licensee of the patents). *See, e.g.*, *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000) ("[A]n owner or licensee of a patent cannot convey that which it does not possess.").

[6] Here, Sable does not have any assignment post-dating the August 14, 2008 AIPR, let alone one entered into prior to the filing of this lawsuit.

On April 26, 2006, Abraxis entered into an Asset Purchase Agreement ("APA") with AstraZeneca ("AZ-UK"). *Id.* at 1361. "The APA provides that AZ-UK 'shall or shall cause one or more of its Affiliates to, Transfer to the Purchaser, and the Purchaser shall purchase and accept from the Seller or its Affiliates, as applicable, all of the right, title and interests of the Seller and its Affiliates in' the asserted patents." *Id.* "Following the execution of the APA, AZ-UK and Abraxis executed a written Intellectual Property Assignment Agreement ('IP Assignment Agreement') on June 28, 2006 **purportedly** assigning the asserted patents to Abraxis." *Id.* (emphasis added). "***There was a break in the chain of title, however, because the asserted patents were still owned by Astra L and AZ-AB***, neither of which had assigned the rights in the asserted patents to AZ-UK." *Id.* (emphasis added). On March 15, 2007, Abraxis filed suit. *Id.*

On the same day (i.e., March 15, 2007), "Astra L and AZ-AB each executed nearly identical assignments of their respective patents to AZ-UK." *Id.* at 1362. "The assignments reference the April 26, 2006 APA and provide that the assignments were executed to allow AZ-UK to 'further convey' the patents to Abraxis." *Id.* "On November 12, 2007, almost eight months after filing suit, AZ-UK, in a separate document entitled 'Intellectual Property Assignment Agreement,' 'confirm[ed] the sale, assignment, conveyance and transfer to Abraxis, for Abraxis' sole and exclusive use and enjoyment, of all of [AZ-UK's] right, title, and interest, in and to' the asserted patents." *Id.*

The district court acknowledged a break in the chain of title, but found that the "intent" of the various Astra-related entities "was sufficient to imply a *nunc pro tunc* assignment based on the relationship between the corporate entities." *Id.* at 1363. The district court then "gave the March 15, 2007, assignments *nunc pro tunc* effect" to "cure the defect in ownership as of the

5

date of filing of Abraxis's complaint." *Id.* The Federal Circuit ***reversed*** and dismissed the case for lack of standing.

The Federal Circuit found that AZ-UK ***could not assign*** the patents to Abraxis "***because it did not possess their titles***." *Id.* at 1365 (emphasis added). The court found that whether the March 15, 2007 assignments from Astra L and AZ-AB to AZ-UK contained *nunc pro tunc* provisions was "***irrelevant***." *Id*. The court continued:

> Even if given retroactive effect, ***the March 15, 2007 assignments do not automatically assign the patents to Abraxis; a subsequent written agreement was necessary***. The only subsequent written agreement between AZ-UK and Abraxis is the November 12, 2007 Intellectual Property Assignment Agreement. This document is a clear recognition by Abraxis that AZ-UK did not hold legal title and therefore could not have transferred the patents without a properly executed assignment. ***It was a futile attempt by the parties to correct a critical error by a nunc pro tunc assignment***. . . .[7]
>
> Even if, as the district court found, the March 15, 2007 agreements were considered to be retroactive, ***title to the asserted patents did not automatically vest in Abraxis upon the March 15, 2007 transfer to AZ-UK because the June 28, 2006 IP Assignment Agree-***

---

[7] The same is true here. Even if the August 14, 2008 AIPR between Caspian ABC and Mobile Convergence is given "retroactive" effect to the purported "effective" date of January 15, 2007, "a subsequent written agreement was necessary" (i.e., a written agreement after August 14, 2008 was necessary) to convey the patents from Mobile Convergence to Sable Networks. *Abraxis*, 625 F.3d at 1365. And, as in *Abraxis*, the *nunc pro tunc* provision in the August 14, 2008 AIPR simply serves to show that the parties to the AIPR recognized that, prior to August 14, 2008, Mobile Convergence did not hold title to the patents-in-suit (and thus could not convey them to Sable Networks under the earlier March 28, 2008 IPAA).

> ***ment did not result in an immediate transfer of "expectant interests" to Abraxis.***[8]

*Id.* at 1365-66 (emphases added).

Because Abraxis "was required to have legal title to the patents on the day it filed the complaint and that requirement can not be met retroactively"—including by the post-suit, November 12, 2007 Intellectual Property Assignment Agreement—"the action must be dismissed." *Id.* at 1366-67. Likewise, in this case Mobile Convergence could not convey the patents-in-suit to Sable Networks on March 28, 2008 because it had not yet received them from Caspian ABC at that time. Accordingly, as in *Abraxis*, Sable cannot proceed with its lawsuit.

    2. <u>*In re CTP Innovations* Confirms That Sable Lacks Ownership</u>

Other courts have reached the same conclusion on facts substantively identical to the ones at issue in this case. In *In re CTP Innovations, LLC*, 14-CV-3884, 2016 WL 6996738 (D. Md. Nov. 30, 2016), the plaintiff (CTP) obtained the patents in a purported assignment from Media Innovations in March 2013. *Id.* at *1. (CTP filed its first lawsuit in June 2013. *Id.* at *3.) Media Innovations purportedly received the patents from R.R. Donnelley in February 2013. *Id.* at *4. But, in February 2013, R.R. Donnelly did not own the patents (Banta Corporation did). *Id.* In May 2013, Banta executed an assignment of rights to R.R. Donnelley "nunc pro tunc" to January

---

[8] Like the June 28, 2006 IP Assignment Agreement in *Abraxis*, the March 28, 2008 IPAA entered into between Mobile Convergence and Sable Networks did <u>not</u> "result in an immediate transfer of 'expectant interests'" to Sable Networks. Instead, the March 28, 2008 IPAA only purported to convey to Sable Networks certain patents allegedly held by Mobile Convergence on March 28, 2008—it did <u>not</u> purport to convey patents Mobile Convergence might receive in the future. *See* Ex. 4, AIPR, § 1 ("***As of the Effective Date of this Assignment***, MCC ***hereby transfers, assigns, conveys and delivers*** to SABLE, free and clear of any liens or encumbrances of any kind which have been created or granted by MCC, ***all of MCC's right, title and interest in the acquired Caspian IPR***, as set forth herein and in the ATL Agreement.") (emphases added), § 2 (Sable Networks accepting "all right, title and interest from MCC in and to the Caspian IPR" "***[a]s of the Effective Date of this Assignment***") (emphasis added), § 5.3 ("Caspian IPR" includes "[a]ll patents ***acquired*** by MCC from Caspian, as set forth in Exhibit A herein.") (emphasis added).

7

2013. *Id.* The question before the court was whether the May 2013 "nunc pro tunc" assignment from Banta to R.R. Donnelly effectively conveyed the patents as of January 2013 to R.R. Donnelly—such that R.R. Donnelly effectively conveyed the patents to Media Innovations in February 2013 (and Media Innovations could have, in turn, effectively conveyed the patents to plaintiff CTP in March 2013).

The court provided the following chart showing the relevant events:

| Date | Event | Rights Owner |
|---|---|---|
| 9/21/1999 | Inventors assign patent rights to Banta Corporation ("Banta") | Banta Corporation |
| In 2007 | R.R. Donnelley acquires Banta (not its assets) | Banta Corporation |
| 2007 – 2013 | Banta operates as a subsidiary of R.R. Donnelley | Banta Corporation |
| 2/12/2013 | R.R. Donnelley (not Banta) executes assignment of rights to Media Innovations, LLC | Banta Corporation |
| 3/5/2013 | Media executes assignment of rights to CTP Innovations, LLC | Banta Corporation |
| 5/24/2013 | Banta executes assignment of rights to R.R. Donnelley nunc pro tunc to 1/3/2013 | R.R. Donnelley & Sons Company |
| 6/14/2013 | CTP files first of suits at issue | R.R. Donnelley & Sons Company |

*Id.* at *4.

The court held that the May 2013 assignment from Banta to R.R. Donnelley rendered R.R. Donnelley the patent owner as of May 2013 (and thereafter). *Id.* The May 2013 "nunc pro tunc" provision (purporting to transfer the patents as of January 2013) was ***not effective*** to transfer the patents "retroactively" to Media Innovations (such that Media Innovations did not effectively transfer the patents to plaintiff CTP in March 2013). *Id.*

Instead, the court found that, because R.R. Donnelley did not actually own the patents in February 2013, it could not have conveyed them to Media Innovations. *Id.* ("R.R. Donnelley did not own the rights it purported to transfer. And '*nemo dat quod non habet*,' i.e., one cannot give what one does not have. *See Mitchell v. Hawley*, 83 U.S. 544, 550 (1872). Hence, Banta contin-

8

ued to own the rights to the Patents in Suit."). The purported assignment from Media Innovations to CTP was likewise ineffective—"since Media had not obtained the rights from R.R. Donnelley, it could not transfer the rights to CTP. Thus, Banta continued to own all rights in the [patents]." *Id.* at 5.

The court explicitly *rejected* the argument that Cloudflare expects Sable to make here:

> CTP contends that Banta's May 24, 2013 execution of a *nunc pro tunc* assignment of the rights to the Patents in Suit to R.R. Donnelley was effective to retroactively close the gaps in the chain of title between R.R. Donnelley and Media and between Media and CTP. Certainly, contracting parties may agree to give retroactive effect to their agreements as between themselves. *American Cyanamid Co. v. Ring*, 286 S.E. 2d 1, 3 (1982).
>
> **However, a nunc pro tunc agreement <u>cannot</u> be used to rewrite history so as to retroactively provide standing to sue for patent infringement**. "[N]unc pro tunc assignments are not sufficient to confer retroactive standing." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). "As a general matter, parties should possess rights before seeking to have them vindicated in court." *Id.* (quoting *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995)).

*Id.* at *5-6 (bold emphasis added).[9]

---

[9] As in *Abraxis*, the *CTP* court noted that "the purportedly retroactive May 24, 2013 assignment from Banta can be viewed as recognizing that the assignee, R.R. Donnelley, did not have legal title to the Patents in Suit when it purportedly assigned those rights to Media." *Id.* at *6. The court also considered, and <u>rejected</u>, the argument that "the assignments from R.R. Donnelley to Media and from Media to CTP were for an 'expectant interest' and, thereby, title was transferred automatically upon the ultimate transfer of ownership from Banta to R.R. Donnelley." *CTP*, 2016 WL 6996738, at *7. The court found that "the language of the assignments at issue is clear present-tense language based on the assignor's already owning title—not based upon expecting to acquire title in the future"—e.g., the assignment provided that "Assignor hereby sells, transfers, assigns and sets over to Assignee all rights, title and interest . . . in and to the Patents." *Id.* at *7. This language is substantively identical to the language in the March 28, 2008 IPAA (*see* n.8 above), such that the IPAA could not convey future patents acquired by Mobile Convergence to Sable.

      3.      <u>*Argentum Medical* Confirms That Sable Lacks Ownership</u>

In *Argentum Medical, LLC v. Noble Biomaterials*, 08-CV-1305, 2010 WL 2650493 (M.D. Pa. July 1, 2010), the court similarly held that a pre-suit *nunc pro tunc* assignment could not retroactively transfer a patent to an entity that had purportedly received the patent. In *Argentum*, the patent-at-issue named Bart Flick as its inventor and Argentum International, LLC ("International") as the assignee. *Id.* at *1, 5. On February 25, 2001, International assigned the patent to Argentum Research, Inc. ("Research"). *Id.* at *5. On March 28, 2001, International "attempted to assign" its rights to the plaintiff, Argentum Medical, LLC ("Argentum Medical"). *Id.* "However, at that time, International had already relinquished its rights in [patent] to Research and, therefore, had nothing to validly convey to [Argentum] Medical." *Id.*

"In an attempt to remedy this situation, Research and International entered into a *nunc pro tunc* assignment on February 15, 2005, that would date back to February 25, 2001, and transfer the intellectual property rights from Research back to International." *Id.* The court found the attempt to "retroactively" assign the patent via a *nunc pro tunc* provision **invalid**:

> *Nunc pro tunc* is defined as "[h]aving legal effect through a court's inherent power." *Black's Law Dictionary* 1174 (9th Ed. 2009) (emphasis added). ***Parties to a contract, however, do not have the power to enter into nunc pro tunc agreements that operate to reach back in time and affect the rights of parties. Allowing this would undermine fundamental principles of contract law and conveyance of property***. One could simply avoid an unfavorable contract by entering into a later contract *nunc pro tunc* with a third party that dated back to some time before the unfavorable contract was entered into, thereby stripping the original contract of its legal force. Moreover, applying this doctrine to the transfer of property would leave transactions unsettled and lacking in finality. Such a result is unworkable.
>
> ***This Court see[s] no reason why such an agreement would be valid***, and Plaintiff has not pointed to any case that has allowed *nunc pro tunc* conveyances, assignments, or transfers of real or intellectual property. Therefore, at the time International entered into its license agreement with Argentum Medical, it had already con-

10

> veyed its interest in the '153 patent to Research. ***Argentum Medical, therefore, was never assigned any rights in the '153 patent by International because International had no rights to convey on March 28, 2001***. As such, Plaintiff Argentum Medical did not have title to the '153 patent at the time of the alleged infringement and lacks standing to bring this suit.

*Id.* at *5 (emphases added).

### 4. Application Of *Abraxis*, *CTP*, And *Argentum* To The Instant Case

*Abraxis*, *CTP*, and *Argentum* make clear that Mobile Convergence, not Sable Networks, owned the patents-in-suit on the day Sable sued Cloudflare (and that Mobile Convergence still owns the patents). Mobile Convergence attempted to convey the patents to Sable Networks on March 28, 2008 (in the IPAA), but Mobile Convergence did not own them then (Caspian ABC did). Mobile Convergence only came to own the patents later—i.e., on August 14, 2008—when Caspian ABC assigned the patents to Mobile Convergence (in the AIPR). But Mobile Convergence never assigned the patents to Sable Networks after August 14, 2008, so Sable Networks never came to own the patents.

Additionally, it is well established that the *nunc pro tunc* provision in the August 14, 2008 AIPR entered into between Mobile Convergence and Caspian ABC did ***not*** work to "retroactively" assign the patents to Sable Networks under the March 28, 2008 IPAA. Instead, Mobile Convergence had nothing to give Sable Networks on March 28, 2008, and never thereafter assigned the patents to Sable Networks. Sable Networks owns nothing, and Sable Networks could not exclusively assign anything to Sable IP. The break in Sable's chain of title defeats standing, and Sable cannot cure its lack of ownership post-suit.[10]

---

[10] *See also Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("nunc pro tunc assignments are not sufficient to confer retroactive standing"); *EMA Electromechanics, Inc. v. Siemens Corp.*, 21-CV-00206, 2022 WL 2759094, at *11 (W.D. Tex. July 13, 2022) ("This defect, leaving EMA without Article III standing when it filed suit, cannot be cured by a *nunc pro tunc* agreement retroactively assigning that patent from EMA S.A. to EMA.").

11

\* \* \* \* \*

For these reasons, the Court should grant this motion and dismiss the case for lack of subject-matter jurisdiction.

Dated: October 2, 2023

Respectfully submitted,

/s/ Steven Callahan

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
ANTHONY M. GARZA
  Texas State Bar No. 24050644
  agarza@ccrglaw.com
C. LUKE NELSON
  Texas State Bar No. 24051107
  lnelson@ccrglaw.com
MITCHELL R. SIBLEY
  Admitted *pro hac vice*
  Texas State Bar No. 24073097
  msibley@ccrglaw.com
JOHN HEUTON
  Admitted *pro hac vice*
  jheuton@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 2, 2023, I served the foregoing by ECF and e-mail on the following counsel for Plaintiffs:

| | |
|---|---|
| Dorian S. Berger, Esq.<br>Daniel P. Hipskind, Esq.<br>**BERGER & HIPSKIND LLP**<br>9538 Brighton Way, Ste. 320<br>Beverly Hills, California 90210<br>Telephone: (323) 886-3430<br>Telecopier: (323) 978-5508<br>dsb@bergerhipskind.com<br>dph@bergerhipskind.com | Elizabeth L. DeRieux, Esq.<br>**CAPSHAW DERIEUX, LLP**<br>114 E. Commerce Ave.<br>Gladewater, Texas 75647<br>Telephone: (903) 845-5770<br>Telecopier: (903) 236-8787<br>ederieux@capshawlaw.com |

Christopher K. Larus, Esq.
John K. Harting, Esq.
Jessica L. Gutierrez, Esq.
**ROBINS KAPLAN LLP**
800 LaSalle Ave., Ste. 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Telecopier: (612) 339-4181
clarus@robinskaplan.com
jharting@robinskaplan.com
jgutierrez@robinskaplan.com

/s/ Steven Callahan
STEVEN CALLAHAN

14